UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL LEHRMAN and LINNEA SAGE, on behalf of themselves and all others similarly situated,<br><br>                      Plaintiffs,<br><br>          v.<br><br>LOVO, INC.,<br><br>                   Defendant. | Case No. 24-cv-03770 (JPO) |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS .......................................................................................2

ARGUMENT ............................................................................................................5

I.       LEGAL STANDARD ....................................................................................5

II.     New York Civil Rights Law Claim Should Be Dismissed .........................6

       1.     Plaintiffs' Section 51 Allegations are Not Within the Statute of Limitations ......................................................................................7

       2.     No Plausible Allegations that Plaintiffs' Recordings Were Improperly Used .................................................................................8

       3.     No Plausible Allegations that Any Advertising Occurred "Within This State" .......................................................................................10

       4.     Alleged Use of Voices Was Under a Fictitious Name ...............................11

       5.     Voices Not Plausibly Alleged as Used for Advertising or Trade .............11

III.    Claims for Violation N.Y. GBL § 349 and § 350 Should Be Dismissed .........................12

       1.     Plaintiffs do not Adequately Allege Consumer-Oriented Behavior .........13

       2.     Plaintiffs Do Not Adequately Allege That They are Consumers Or That Any Consumer Was Deceived ...........................................................14

       3.     Plaintiffs Do Not Adequately Allege Conduct Which Occurred In New York ......................................................................................14

       4.     Plaintiffs' Allegations Are Not Within the Statute of Limitations ............15

       5.     Plaintiffs Do Not Allege A Cognizable Injury ..........................................15

IV.    Lanham Act Unfair Competition and False Affiliation Claim Should Be Dismissed ..........................................................................................................16

V.     Lanham Act False Advertising Claim (15 U.S.C. § 1125(a)) Should Be Dismissed ........17

VI.    Unjust Enrichment Claim Should Be Dismissed .............................................19

VII.   Tortious Interference with "Advantageous Business Relationship" Claim Should Be Dismissed .......................................................................................21

VIII.  Fraud Claim Should Be Dismissed ....................................................................23

CONCLUSION.........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adeghe v. Procter & Gamble Co.*,
2024 WL 22061 (S.D.N.Y. 2024)............................................................20

*Alce v. Wise Foods, Inc.*,
2018 WL 1737750 (S.D.N.Y. 2018)..........................................................20

*Allen v. Nat'l Video, Inc.*,
610 F. Supp. 612 (S.D.N.Y. 1985) ...........................................................10

*AM Gen. LLC v. Activision Blizzard, Inc.*,
450 F. Supp. 3d 467 (S.D.N.Y. 2020).......................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................5

*Aubrey v. New Sch.*,
624 F. Supp. 3d 403 (S.D.N.Y. 2022).......................................................21

*Avalos v. IAC/Interactivecorp.*,
2014 WL 5493242 (S.D.N.Y. 2014)..........................................................18

*Baldeo v. Airbnb, Inc.*,
2023 WL 7689652 (S.D.N.Y. 2023)..........................................................15

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
2003 WL 23018888 (S.D.N.Y. 2003).........................................................21

*Barbash v. STX Fin., LLC*,
2020 WL 6586155 (S.D.N.Y. 2020)............................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................5

*Bendit v. Canva, Inc.*,
2023 WL 5391413 (S.D.N.Y. 2023)......................................................6, 10

*Binder v. Premium Brands Opco LLC*,
2024 WL 2978506 (S.D.N.Y. 2024)..........................................................12

*Bondar v. LASplash Cosmetics*,
2012 WL 6150859 (S.D.N.Y. 2012)..........................................................17

*Booth v. Colgate-Palmolive Co.*,
  362 F. Supp. 343 (S.D.N.Y. 1973) ........................................................16

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
  98 F.3d 13 (2d Cir. 1996)........................................................................23

*Brownell v. Starbucks Coffee Co.*,
  681 F. Supp. 3d 27 (N.D.N.Y. 2023) .....................................................16

*Camelot SI, LLC v. ThreeSixty Brands Group LLC*,
  632 F. Supp. 3d 471 (S.D.N.Y. 2022).............................................16, 17

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182 (2004) ...............................................................................23

*CDC Newburgh Inc. v. STM Bags, LLC*,
  692 F. Supp. 3d 205 (S.D.N.Y. 2023) .....................................................17

*Cerasani v. Sony Corp.*,
  991 F. Supp. 343 (S.D.N.Y.1998) .....................................................11, 12

*Chamilia, LLC v. Pandora Jewelry, LLC*,
  2007 WL 2781246 (S.D.N.Y. 2007) .......................................................19

*Cooksey v. Global Grind Digital*,
  2016 WL 5108199 (S.D.N.Y. 2016) .........................................................7

*Corsello v. Verizon N.Y.*,
  Inc., 18 N.Y.3d 777, 790 (N.Y. 2012) ...................................................20

*Cuccioli v. Jekyl & Hyde Neue Metropol Bremen Theater Produktion GMBH &
  Co.*,
  150 F. Supp. 2d 566 (S.D.N.Y. 2001) ....................................................10

*Dorris v. Danone Waters of America*,
  2024 WL 112843 (S.D.N.Y. 2024)..........................................................15

*Duran v. Henkel of Am., Inc.*,
  450 F. Supp. 3d 337 (S.D.N.Y. 2020).....................................................16

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002).......................................................................19

*Fischer v. Forrest*,
  2017 WL 128705 (S.D.N.Y. 2017)........................................................7, 8

*Freedom Mortgage Corporation v. Tschernia*,
  2021 WL 1163807 (S.D.N.Y. 2021)........................................................23

*G.K.A. Beverage Corp. v. Honickman*,
    55 F.3d 762 (2d Cir.1995).................................................................................23

*Ganske v. Mensch*,
    480 F. Supp. 3d 542 (S.D.N.Y. 2020)................................................................22

*Gen. Partner Glenn Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)..............................................................................6

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (N.Y. 2012) ...............................................................................20

*Gilleo v. J.M. Smucker Co.*,
    2021 WL 4341056 (S.D.N.Y. 2021).............................................................19, 25

*Globe Cotyarn Pvt. Ltd. v. Next Creations Holdings LLC*,
    2020 WL 4586892 (S.D.N.Y. 2020)...................................................................19

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (N.Y. 2002) ...............................................................................15

*Halim v. KIND LLC*,
    2023 WL 8810277 (S.D.N.Y. 2023)....................................................................15

*Hanft Byrne Raboy & Partners, Inc. v. Matsushita Elec. Corp. of America*,
    2001 WL 456346 (S.D.N.Y. 2001).....................................................................23

*Hawkins v. Coca-Cola Co.*,
    654 F. Supp. 3d 290 (S.D.N.Y. 2023).................................................................13

*Inspired Cap., LLC v. Conde Nast*,
    803 F. App'x 436 (2d Cir. 2020)........................................................................24

*Izquierdo v. Panera Bread Co.*,
    450 F. Supp. 3d 453 (S.D.N.Y. 2020).................................................................13

*Kimmel v. State*,
    29 N.Y.3d 386, 80 N.E.3d 370 (N.Y. 2017) .......................................................10

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006)..............................................................................21

*United States ex rel. Ladas v. Exelis, Inc.*,
    824 F.3d 16 (2d Cir. 2016).................................................................................6

*Lerman v. Flynt Distrib. Co., Inc.*,
    745 F.2d 123 (2d Cir.1984)................................................................................11

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)..................................................................................24

*Lewis v. R.L. Vallee, Inc.*,
2024 WL 1739608 (N.D.N.Y. 2024) ......................................................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014)....................................................................................17, 18

*Lomaglio Assoc., Inc., v. LBK Mktg. Corp.*,
892 F. Supp. 89 (S.D.N.Y.1995) ...........................................................................23

*Mahoney v. Endo Health Sols., Inc.*,
2016 WL 3951185 (S.D.N.Y. 2016) .......................................................................20

*Manchanda v. Educ. Credit Mgmt. Corp.*,
2022 WL 137885 (S.D.N.Y. 2022)...................................................................13, 14

*Messenger v. Gruner Jahr Printing and Pub.*,
208 F.3d 1222 (2d Cir. 2000)............................................................................6, 11

*Monroe Staffing Services, LLC v. Whitaker*,
2023 WL 4285292 (S.D.N.Y. 2023) .......................................................................13

*Morales v. Apple, Inc.*,
2023 WL 5579929 (S.D.N.Y. 2023) .......................................................................25

*Myskina v. Condé Nast Publ'ns, Inc.*,
386 F. Supp. 2d 409 (S.D.N.Y.2005).....................................................................20

*Navatar Grp., Inc. v. DealCloud, Inc.*,
2023 WL 1797266 (S.D.N.Y. 2023) .......................................................................19

*New York Univ. v. Cont'l Ins. Co.*,
87 N.Y.2d 308 (N.Y. 1995) ...................................................................................13

*New York Univ. v. Factory Mut. Ins. Co.*,
374 F. Supp. 3d 315 (S.D.N.Y. 2019)....................................................................10

*Oliveira v. Frito-Lay, Inc.*,
251 F.3d 56 (2d Cir. 2001).....................................................................................16

*Pearce v. Manhattan Ensemble Theater, Inc.*,
2009 WL 3152127 (S.D.N.Y. 2009).......................................................................10

*PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*,
629 F. Supp. 3d 116 (S.D.N.Y. 2022)....................................................................18

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
  19 F Supp 2d 157 (S.D.N.Y.1998) ...................................................23

*Plavin v. Grp. Health Inc.*,
  35 N.Y.3d 1 (N.Y. 2020) ...........................................................13

*Ratermann v. Pierre Fabre USA, Inc.*,
  651 F. Supp. 3d 657 (S.D.N.Y. 2023)...............................................12

*Reyes v. Upfield US Inc.*,
  694 F. Supp. 3d 408 (S.D.N.Y. 2023)...........................................15, 16

*Richards v. Multinex Co. Ltd.*,
  2024 WL 3041330 (2d Cir. 2024)....................................................7

*Sandoval v. Uphold HQ Inc.*,
  2024 WL 1313826 (S.D.N.Y. 2024)..................................................20

*Sheiner v. Supervalu Inc.*,
  2024 WL 2803030 (S.D.N.Y. 2024)..................................................20

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994).........................................................6

*Silvester v. Selene Fin., LP*,
  2021 WL 861080 (S.D.N.Y. 2021)....................................................24

*Singh v. City of New York*,
  40 N.Y.3d 138, 217 N.E.3d 1 (N.Y. 2023) ..........................................14

*SmartStream Techs., Inc. v. Chambadal*,
  2018 WL 1870488 (S.D.N.Y. 2018)....................................................6

*Sony Corp. v. Fujifilm Holdings Corp.*,
  2017 WL 4342126 (S.D.N.Y. 2017)...................................................10

*Souza v. Exotic Island Enterprises, Inc.*,
  68 F.4th 99 (2d Cir. 2023) .........................................................17

*Speedfit LLC v. LifeCore Fitness, Inc.*,
  2023 WL 199595 (S.D.N.Y. 2023)....................................................15

*Stuntman v. Chem. Bank*,
  95 N.Y.2d 24 (N.Y. 2000) ..........................................................14

*Tarazi v. Truehope, Inc.*,
  2017 WL 59527665 (S.D.N.Y. 2017)..................................................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................3, 4

*Tesfay v. HanesBrands Inc.*,
    2019 WL 6879179 (S.D.N.Y. 2019)...........................................................12

*Trombetta v. Novocin*,
    414 F. Supp. 3d 625 (S.D.N.Y. 2019)........................................................7, 8

*Trustpilot Damages LLC v. Trustpilot, Inc.*,
    2021 WL 2667029 (S.D.N.Y. 2021)...........................................................14

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021)..............................................6, 24, 25

*Univ. of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp.*,
    22 A.D.2d 452 (1st Dept. 1965), *aff'd*, 15 N.Y.2d 940 (N.Y. 1965)............9

*Vazquez v. Walmart, Inc.*,
    2023 WL 8257999 (S.D.N.Y. 2023) (Oetken, J.) ......................................13

*Wargo v. Hillshire Brands Co.*,
    599 F. Supp. 3d 164 (S.D.N.Y. 2022).........................................................25

*Wilson v. Veritas Consulting Grp. Inc.*,
    2022 WL 4227145 (S.D.N.Y. 2022) .............................................................6

*Wojtowicz v. Delacorte Press*,
    43 N.Y.2d 858 (N.Y. 1978) .......................................................................11

*Wurtzburger v. Kentucky Fried Chicken*,
    2017 WL 6416296 (S.D.N.Y. 2017)...........................................................13

*Yantha v. Omni Childhood Ctr., Inc.*,
    2013 WL 5327516 (E.D.N.Y. 2013)...........................................................12

*Yellow Book Sales & Distribution Co. v. Hillside Van Lines, Inc.*,
    98 A.D.3d 663 (2d Dept. 2012) ..................................................................13

*Zoll v. Jordache Enters., Inc.*,
    2002 WL 31873461 (S.D.N.Y. 2002).........................................................20

*Zoll v. Jordache Enters. Inc.*,
    2003 WL 1964054 (S.D.N.Y. 2003)...........................................................11

**Statutes**

Lanham Act, 15 U.S.C. § 1125 ...................................................................................2, 16, 17

N.Y. Civ. Rights Law § 50 .............................................................................. *passim*

N.Y. Civ. Rights Law § 50-f ...............................................................................9, 10

N.Y. Civ. Rights Law § 51 .............................................................................. *passim*

N.Y. Gen. Bus. L. § 349 ................................................................................. *passim*

N.Y. Gen. Bus. L. § 350 .................................................................................12, 13, 15

**Other Authorities**

Fed. R. Civ. P. 9 .........................................................................................1, 6, 24, 25

Fed. R. Civ. P. 12(b)(6) .....................................................................................1, 5

N.Y. C.P.L.R. § 214(2) ........................................................................................15

N.Y. C.P.L.R. § 215(3) .........................................................................................7

Defendant LOVO, INC. ("Defendant" or "Lovo") submits this Memorandum of Law in support of Defendant's Motion to Dismiss ("Motion") the Class Action Complaint (cited hereafter as "Cplt." or "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

Plaintiffs in their 37-page, 159-paragraph Complaint tell a tale filled with pathos and the woes of artificial intelligence, and their concerns about the impact of artificial intelligence on a particular industry.  However, their story and concern, has no real connection to Lovo and its interaction with Plaintiffs and simply fails in stating an actionable claim.  Shorn of its broader societal concerns (which are mainly irrelevant to the claims), Plaintiffs' claims in the Complaint are simply that they each Plaintiff independently agreed in an online marketplace with anonymous individuals (who they now believe were representing Lovo) to make some limited recordings only vaguely described by the complaint, in return for payment of $400 and $1200 and they were told that these recordings would be used for research and/or would not be used externally.  There is no allegation that these recordings were made publicly available; there is no allegation that the recordings were not used for research.  Rather, at a later point in time, Plaintiffs each allege that they heard recordings with voices that sounded to them like their voices saying things different than those stated in the recordings made and uploaded to Fiverr.  They also claim that "AI-generated" or voices available on the Lovo website with fictitious names sounded to them like their voices.  But, there is no allegation that the actual recordings previously uploaded to Fiverr appeared on the Lovo website or in any advertisement.  Thus, the conclusory allegation that somewhere on the Lovo website Lovo represented that it had agreements with actors providing permission is not plausibly alleged as actually false.  Plaintiffs' allegations do not constitute any wrongdoing or misstatements by Lovo.

As more fully described below, Plaintiffs' claims should be dismissed for the following

reasons.  Generally, Plaintiffs' allegations of wrongdoing are often threadbare conclusory recitations of the elements of the claims and clearly insufficient.  Specifically: (1) Plaintiffs' claims for violations of sections 50 and 51 of the New York Civil Rights Law fail because Plaintiffs have not plausibly alleged (a) misconduct within the statute of limitations; (b) that their voice recordings were used improperly at all (this statute does not prohibit the use of digital replicas of living persons); (c) that any violation occurred in New York state; (d) that any use of their voices was attached to their name; and (e) that their voices were used for purposes of advertising or a trade.  (2)  Plaintiffs' claims for violations of GBL §349 and §350 because they have not plausibly alleged (a) consumer-oriented behavior; (b) that they are consumers; (c) that the alleged misconduct occurred in New York; (d)  misconduct within the statute of limitations; and (e) a cognizable injury.  (3)  Plaintiffs' claims for violations of the Lanham Act should be dismissed because (a) there is no trademark for these voices or voices generally; (b) there is no claim for endorsement by a voice that is fictitious; (c) Plaintiffs lack standing to bring the false advertising claim; (d) there is no claim for false affiliation because Plaintiffs' names are not used; and (e) there are no adequately alleged misrepresentations in connection with advertising.  (4)  Plaintiffs' claim for unjust enrichment is preempted by the New York Civil Rights Law, duplicative of other claims, and barred because there is an allegation of a binding agreement.  (5) Plaintiffs' claim for tortious interference simply does not adequately allege the elements of the claim including knowledge, intent, and injury.  (6) Plaintiffs' claim for fraud is nothing more than a dressed-up claim for breach of contract (which would also fail) lacking the specificity necessary for a fraud claim.  Thus, the entire Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

Solely for purposes of this motion, we accept as true the Complaint's allegations.  This Statement of Facts is also based on documents incorporated into the complaint by reference.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint…[and] documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

LOVO is a technology company with proprietary software driven by artificial intelligence (AI) that allows LOVO's clients to create and edit voice-overs (Cplt. ¶1). LOVO sells a text-to-speech subscription service that allows its clients – typically companies – to generate voice-over narrations (Cplt. ¶16). It uses "its AI-driven software known as 'Generator' or 'Genny,' and generates a professional-quality voice-over based on certain criteria. For example, LOVO customers can choose between – and designate their preference for – male or female voices, regional accents, and older or younger-sounding voices" (*id.*). Plaintiffs claim that, somewhere on its website at some time, LOVO said that it has agreements with actors allowing LOVO to utilize those actors' voices and compensating them for that use (*id.* ¶24). Lovo's technology "turns written text into speech, providing you with a wealth of human-like voices to bring your content to life" (*id.* ¶62 (screen shot)). Lovo further explains that "Thanks to recent advancements in speech synthesis technology, these new human-like voices are almost indistinguishable from natural speech. Genny by LOVO Al also includes voice editing functions, allowing you to alter the emphasis, pronunciation, cadence, and speed of a voice to ensure that it feels right for the particular content you're creating and the audience you want to reach." (*id.*). LOVO's Genny "was trained using data from thousands of voices" (*id.* ¶¶89, 71). Thus, the voices that Genny creates are "AI-generated" and not recordings of anything previously said by anyone (*e.g.,* Cplt. ¶¶43, 79). These AI-generated voices are also called "clones" (*id.* ¶82).

Plaintiffs allege that Mr. Lehrman ("Lehrman") in May 2020 was "contacted via the Fiverr website to provide voice over narrative services." (Cplt. ¶28). Fiverr.com is a website that

"connects freelancers with clients looking for digital and creative services". (*id.* ¶29).  Plaintiffs claim that Lehrman communicated with "someone who can now only be identified as 'User25199087'" (*id.*).  During the course of these communications and after Lehrman was already looking at "scripts", "User25199087" told Lehrman that (a) "Your voiceover will be used for academic research purposes only (*id.* ¶32); (b) "The scripts will not be used for anything else" (*id.* ¶34); and (c) "The script and your finished file will be used for research purposes only." (*id.* ¶36).  Lehrman delivered the requested voice files via Fiverr and was paid $1,200 (*id.* ¶37).  Lehrman does not allege whether he delivered the requested voice files before or after he was told about the "academic research".  Several years later, Plaintiffs claim that "Mr. Lehrman learned that User25199087 was an employee of Defendant LOVO, and the company that reached out to and hired Mr. Lehrman was LOVO" (*id.* ¶39).

Lehrman claims that "iNTECH, a YouTube channel (now called Military News) with more than 336,000 subscribers, had created and was promoting videos about Russian military equipment that used Plaintiff Lehrman's AI-generated voice" (Cplt. ¶43) and that his voice was "being used on podcast episode of 'Deadline Strike Talk'" (Id. ¶46).  But, Lehrman acknowledges he never made these recordings and that the recording used was "AI-generated" (*id.* ¶¶36, 47).  He also claims that (a) his voice was used to promote Lovo's "Genny Service" (*id.* ¶58); (b) his voice was used "as part of the subscription service under the stage name 'Kyle Snow'" (*id.* ¶¶ 59, 60); and (c) Lovo had an article on its website entitled "5 Best Practices For Perfect Audio Advertising" that purportedly "featured Mr. Lehrman's voice" as Kyle Snow and promoted Kyle Snow's voice (*id.* ¶¶ 61, 63).  Lehrman does not claim that he made any of these recordings or that they were the scripts he uploaded, rather what he is calling his voice is an AI generated synthetic voice that he believes sounds like his voice (*id.* ¶60).  Lehrman also claims

Lovo's use of his voice "threatened" his "relationship with SAG-AFTRA" but alleges no instance of any such actual issue with SAG-AFTRA (*id.* ¶65).

The other Plaintiff Ms. Sage ("Sage") alleges that on October 29, 2019, she "was offered a job on the Fiverr website to produce test scripts for radio ads" (Cplt. ¶49). She claims that prior to accepting the job, she received a message "from 'tomlsg' at [the] anonymous company offering the job" telling her these "test scripts" would not be "disclosed externally" (*id.* ¶50). Sage believes that "'tomlsg' was Lovo co-founder Tom Lee" (*id.* ¶53). Sage claims that she later discovered "that LOVO had been using, manipulating, and editing her voice in promotional materials for Defendant LOVO for many years, including but not limited to, in a five-minute investor presentation at the Berkeley SkyDeck Demo Day Spring 2020 event" (posted on YouTube) (*id.* ¶54). Sage also claims that her voice "was marketed by Lovo as part of its subscription business . . . under the name 'Sally Coleman'" (*id.* ¶55). Sage does not claim that either the investor presentation or the voice of Sally Colman are the same as the radio ads she made for the Fiverr job from 2018; she also does not claim that Lovo used an actual recording of her voice for Genny or the investor presentation. Instead, what she is calling her voice is an AI generated synthetic voice that she believes sounds like her voice (Cplt. ¶67).

**ARGUMENT**

## I.    LEGAL STANDARD

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[A] plaintiff's obligation . . . requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twohig v. Shop-Rite Supermarkets, Inc.,* 519 F. Supp. 3d 154, 159-60 (S.D.N.Y. 2021) (internal quotations and citations omitted). "[A] court may consider the full text of documents that are quoted in or attached to the [complaint], or that the [plaintiff] either possessed or knew about and relied upon in bringing the claims." *SmartStream Techs., Inc. v. Chambadal*, 2018 WL 1870488, *3 (S.D.N.Y. 2018). "Where a document is referenced in a complaint, 'the documents control and this Court need not accept as true the allegations in the amended complaint.'" *Gen. Partner Glenn Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (citation omitted).

Claims "alleging fraud or mistake, [require] a party [to] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016). "[A] complaint making such allegations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127–28 (2d Cir. 1994) (affirming dismissal of fraud claims) (internal citation marks omitted).

## II.    New York Civil Rights Law Claim Should Be Dismissed

N.Y.C.R.L. § 51 ("Section 51") creates a private cause of action for certain statutory violations of N.Y.C.R.L. § 50 ("Section 50"). Section 51 provides a limited private right of action for violations of Section 50 if the alleged violation has the following elements: "(1) the use of [plaintiff's] name, portrait, picture, or voice, (2) within the state of New York, (3) for purposes of advertising or trade, (4) without [plaintiff's] written consent." *Bendit v. Canva, Inc.,* 2023 WL 5391413, *8 (S.D.N.Y. 2023) (citing *Wilson v. Veritas Consulting Grp. Inc*., 2022 WL 4227145, *2 (S.D.N.Y. 2022)). The Second Circuit has "underscored that this statute [Section 51] is to be narrowly construed." *Messenger v. Gruner Jahr Printing and Pub.,* 208 F.3d 1222,

1225 (2d Cir. 2000).  The Statue of Limitations for a Section 51 violation is one year.  As more fully explained below, Plaintiffs have not adequately alleged the requisite elements for Section 50 and Section 51 claims in a timely fashion.  Thus, this claim should be dismissed.

1.    **Plaintiffs' Section 51 Allegations are Not Within the Statute of Limitations**

Actions under Sections 50 and 51 must be commenced within the 1-year statute of limitations per CPLR §215(3).  *See Richards v. Multinex Co. Ltd.,* 2024 WL 3041330, *1 (2d Cir. 2024).  This means that the action must be brought within one year from the date "the publishing event giving rise to plaintiff's right of privacy claims first occurred." *Trombetta v. Novocin,* 414 F. Supp. 3d 625, 635 (S.D.N.Y. 2019) (citation omitted).  The "applicable Statute of Limitations runs from the date of . . . publication" although that publication "consists of thousands of copies widely distributed". *Fischer v. Forrest*, 2017 WL 128705, *14 (S.D.N.Y. 2017) (citations omitted).  "This rule applies to publications on the Internet" meaning that the publication is the date the information is first posted on the internet and "continuous access . . . via hyperlinks to a website" is irrelevant and does not alter the date of initial publication. *Id.* (citations omitted); *see also Cooksey v. Global Grind Digital*, 2016 WL 5108199, *5 (S.D.N.Y. 2016) ("'Under New York's single publication rule, it is irrelevant, for statute of limitation purposes, that a story remains online after its publication.'").

Here, the Complaint is dated May 16, 2024.  Thus, to be timely, the Sections 50 and 51 claims must have accrued after May 16, 2023.  But, the Complaint does not allege any such timely violation of Sections 50 and 51.  First, as discussed more fully below, there is no allegation that the recordings made by Lehrman and Sage were actually used or published in any advertisement anywhere at all.  Second, to the extent there are allegations related to the synthetic AI-generated voices, Plaintiffs make no allegation about when such material was initially placed online at all.  Third, to the extent dates exist in the Complaint, they are both too old and/or do not

relate to any actions by Lovo, and/or relate to when Lehrman or Sage discovered such synthetic or AI-generated voices, which is irrelevant. *See, e.g., Trombetta,* 414 F. Supp. 3d at 633 n.5 ("no basis" to use a "discovery rule to extend the statute of limitations" for Section 51).

Thus, in the Complaint, Plaintiffs allege that (a) "on or about April 6, 2022, Plaintiffs learned" about a YouTube video published by "iNTECH" (Cplt. ¶43); and (b) "a five-minute investor presentation at the Berkeley SkyDeck Demo Day Spring 2020 event" used Sage's voice in 2020 (*id.* ¶54). These were both plainly publicly available prior to 2023. Plaintiffs further allege that Defendant used the synthetic AI-generated voices on Genny (*id.* ¶¶58, 66-67, 71) and also in article titled "5 Best Practices for Perfect Audio Advertising" (*id.* ¶¶61-62) but there is no allegation of when either of these were first placed on any website and the Complaint implies that this was significantly prior to 2023. The continued presence on a website does not alter the calculation for the statute of limitations. *Fischer,* 2017 WL 128705, at *15 (allegation that material "remained 'continuously' online" not sufficient). The only specific allegation from 2023 is that "on or about June 13, 2023, Mr. Lehrman heard his voice being used on a podcast episode of 'Deadline Strike Talk'" (Cplt. ¶46) but this allegation is not about any action taken by Lovo. Thus, Plaintiffs' Section 51 claims are untimely and should be dismissed.

**2.      No Plausible Allegations that Plaintiffs' Recordings Were Improperly Used**

Plaintiffs allege that Lehrman made certain recorded voiceover scripts for Lovo and Sage made certain recorded radio ads for Lovo (Cplt. ¶¶37; 49). Plaintiffs do not allege anywhere that any of these recordings were subsequently published or used as an advertisement or for trade. Plaintiffs do not allege that they made or provided any other recordings to Lovo. Thus, there is no allegation that Lovo used Plaintiffs' actual voices in violation of Section 51 at all.

Instead, Plaintiffs allege that Lovo used "synthetic" or "AI-generated" or "clones" of their voices (*e.g.,* Cplt. ¶¶17, 26, 43, 79). There is no case applying Section 51 to any such

8

transformed version of a voice or anything else.  Section 51 does not prohibit any such usage.

Moreover, "[t]he legislative intent underlying §§ 50 and 51 'underscore[s] that the statute is to be

narrowly construed'"  *Barbash v. STX Fin., LLC*, 2020 WL 6586155, *2 (S.D.N.Y.  2020)

(citation omitted) (dismissing Section 51 claim since only alleged use of likeness and character).

        In 2021, New York amended Section 50 to include § 50-f (N.Y. Civ. Rights Law § 50-f,

"Section 50-f") which provides a right of privacy for deceased persons since the rest of Sections

50 and 51 only protects "living person[s]".  *Univ. of Notre Dame Du Lac v. Twentieth Century-*

*Fox Film Corp.*, 22 A.D.2d 452, 455 (1ˢᵗ Dept. 1965), *aff'd*, 15 N.Y.2d 940 (N.Y. 1965)

. The Legislature included in the new Section 50-f protection for deceased persons

against a "digital replica" (this is not protected for living persons), and which is defined as:

> [A] newly created, original, computer-generated, electronic performance by an
> individual in a separate and newly created, original expressive sound recording or
> audiovisual work in which the individual did not actually perform, that is so
> realistic that a reasonable observer would believe it is a performance by the
> individual being portrayed and no other individual. A digital replica does not
> include the electronic reproduction, computer generated or other digital remastering
> of an expressive sound recording or audiovisual work consisting of an individual's
> original or recorded performance, nor the making or duplication of another
> recording that consists entirely of the independent fixation of other sounds, even if
> such sounds imitate or simulate the voice of the individual.

        N.Y. Civ. Rights Law § 50-f (McKinney's).  The fact that there was a need to specifically

include digital replicas in Section 50-f is strong evidence that digital replicas are not covered by

the other Sections 50 and 51 (for living persons).  This is both logical and was the

contemporaneous understanding. *See, e.g.,* Judith B. Bass, *New York's New Right of Publicity*

*Law: Protecting Performers and Producers*, N.Y. St. B.J., 35 May/June 2021 ("Digital replicas

of live performers are not included in the law's protections").

        In addition, the same logic is supported by the canon of statutory construction of

"Expressio unius est exclusio alterius . . .  providing that 'the expression of one thing is the

exclusion of the other.'" *Sony Corp. v. Fujifilm Holdings Corp*., 2017 WL 4342126, *7 (S.D.N.Y. 2017); *see also New York Univ. v. Factory Mut. Ins. Co.,* 374 F. Supp. 3d 315, 323 (S.D.N.Y. 2019) ("New York law recognizes the expressio unius canon of contract construction."); *Kimmel v. State*, 29 N.Y.3d 386, 394, 80 N.E.3d 370, 375 (N.Y. 2017). Here, that canon of construction supports the logical inference that the need to specifically and explicitly include digital replicas in Section 50-f was because it was not otherwise included in the protections for living people in Sections 50 and 51. Plaintiffs' claim should be dismissed for not adequately alleging that Lovo improperly used their actual voices for anything. *See, e.g., Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 621 (S.D.N.Y. 1985) ("Merely suggesting certain characteristics of the plaintiff, without literally using his or her name, portrait, or picture, is not actionable under [Section 50 and 51].").

    **3.**     **No Plausible Allegations that Any Advertising Occurred "Within This State"**

    Even if the allegations were timely, and the alleged use of a Plaintiffs' voice, Plaintiffs' Section 51 claims also fail because Plaintiffs have not alleged that Lovo used any voice for any advertising in the State of New York. It is not sufficient to state a claim under Section 51 to merely note that advertisement is available on the internet. *See, e.g., Bendit v. Canva, Inc.*, 2023 WL 5391413, *8 (S.D.N.Y. 2023) (Complaint "alleges only that they were 'published and republished ... in numerous advertisements and websites throughout the world.' . . . This is plainly insufficient."); *see also Pearce v. Manhattan Ensemble Theater, Inc.,* 2009 WL 3152127, *9 n.9 (S.D.N.Y. 2009) ( "The mere accessibility of a website within New York does not give rise to a claim under NYCRL § 51") (citing *Cuccioli v. Jekyl & Hyde Neue Metropol Bremen Theater Produktion GMBH & Co.,* 150 F. Supp. 2d 566, 575-577 (S.D.N.Y. 2001)). Plaintiffs' claims should be dismissed because they do not adequately allege that Lovo improperly used Plaintiffs' voices within New York.

### 4.    Alleged Use of Voices Was Under a Fictitious Name

Independently, Plaintiffs' Section 51 claim should also be dismissed since there is no allegation that the voices allegedly generated and used by Lovo were identified as belonging to Lehrman or Sage (*e.g.,* Cplt. ¶¶59, 66).  "A § 51 plaintiff must allege the improper use of that individual's 'name, portrait, picture or voice,' and courts have repeatedly dismissed claims premised on the use of a fictitious rather than actual name." *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 356 (S.D.N.Y.1998) (dismissing Section 51 claim depicting plaintiff with a fictitious name in a movie "even assuming [that the plaintiff was] identifiable"); *see also Wojtowicz v. Delacorte Press*, 43 N.Y.2d 858, 860 (N.Y. 1978) (affirming dismissal of Section 51 claim because although plaintiffs were depicted with fictitious names although they were "portrayed ... in sufficiently detailed accuracy . . . to result in their effective identification").  Thus, here, where Plaintiffs have not alleged that Plaintiffs' names were used in conjunction with any use of the AI-generated or clone voices, the Section 51 claim should be dismissed.

### 5.    Voices Not Plausibly Alleged as Used for Advertising or Trade

Independently, the Section 51 claim fails because it does not adequately allege that the Lovo used any voices "for advertising purposes, or for the purposes of trade" as required by the statute.  The Second Circuit has "underscored that this statute [Section 51] is to be narrowly construed".  *Messenger,* 208 F.3d at 125.  Courts have defined use "for the purposes of trade" as use which "would draw trade to the firm" or "use for the purpose of making profit." *Zoll v. Jordache Enters. Inc.,* 2003 WL 1964054, *16 (S.D.N.Y. 2003).  "To be a use for advertising purposes, 'the use must appear in or as part of an advertisement or solicitation for patronage.'" *Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 130 (2d Cir.1984) (citation omitted).  The fact that the use "is spurred by a profit motive or included to encourage sales or distribution . . . is a necessary, but hardly a sufficient, ingredient in determining the existence of a trade purpose."

11

*Cerasani,* 991 F. Supp. at 357.

Here, Plaintiffs allegations are clearly inadequate.  First, Plaintiffs allege alleged use by "iNTECH" (Cplt. ¶43) and a podcast called "Deadline Strike Talk" (*id.* ¶46).  Neither these "uses" are even alleged to have been by Lovo.  Thus, these are insufficient. *See, e.g., Tesfay v. HanesBrands Inc.,* 2019 WL 6879179, *6 (S.D.N.Y. 2019) (dismissing claim because complaint "failed to allege that [defendant] made use of her image"); *see also Ratermann v. Pierre Fabre USA, Inc.,* 651 F. Supp. 3d 657, 671 (S.D.N.Y. 2023) (same).  Plaintiffs also allege the use of Plaintiffs' voices in a "five-minute investor presentation" (Cplt. ¶54), on Lovo's website as possible voices to be used (Kyle Snow and Sally Coleman) (*id.* ¶¶58-59), and as one of "The 5 Best Male Voices for Text to Speech (*id.* ¶¶61-62).  These are also insufficient.  First, advertisement/trade does not include attracting investors since this activity does not involve selling a product or service.  Second, a website itself is not an advertisement.  Third, most fundamentally, Plaintiffs have not alleged that Lovo used any voices "in a manner that 'conveys or reasonably suggests the subject's *endorsement* of the publication in question." *Lewis v. R.L. Vallee, Inc.,* 2024 WL 1739608, *4 (N.D.N.Y. 2024) ("the statute applies only in cases where the defendant uses the plaintiff's identity in a manner that conveys or reasonably suggests the subject's endorsement of the publication in question") (quoting *Yantha v. Omni Childhood Ctr., Inc.*, 2013 WL 5327516, *9 (E.D.N.Y.  2013).  Plaintiffs have not so alleged here.  In fact, they have alleged that Lovo did not connect the voices to Lehrman or Sage at all.

## III.    Claims for Violation N.Y. GBL § 349 and § 350 Should Be Dismissed

To state a claim under either N.Y. Gen. Bus. L. § 349 or § 350, "a plaintiff must plead facts to show that (1) the challenged transaction was consumer-oriented; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct."  *Binder v. Premium Brands Opco LLC,* 2024 WL

2978506, *5 (S.D.N.Y. 2024) (quoting *Izquierdo v. Panera Bread Co.,* 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020)); *see also Wurtzburger v. Kentucky Fried Chicken*, 2017 WL 6416296, *2 (S.D.N.Y. 2017) ("A claim of false advertising under GBL § 350 must meet all of the same elements as a claim under GBL § 349."); *Vazquez v. Walmart, Inc.*, 2023 WL 8257999, *2 (S.D.N.Y. 2023) (same - dismissing claims) (Oetken, J.).  Plaintiffs make the same allegations for both claims; they have failed to adequately allege either claim.

### 1.    Plaintiffs do not Adequately Allege Consumer-Oriented Behavior

 "A defendant engages in consumer-oriented activity if [the company's] actions cause any consumer injury or harm to the public interest." *Hawkins v. Coca-Cola Co*., 654 F. Supp. 3d 290, 300 (S.D.N.Y. 2023) (alteration in original); *see also Plavin v. Grp. Health Inc.,* 35 N.Y.3d 1, 10 (N.Y. 2020) (a plaintiff suing under § 349 must "demonstrate that the acts or practices have a broader impact on consumers at large") (quotation omitted).  "Accordingly, private contractual disputes which are unique to the parties do not fall within the ambit of the statute." *Yellow Book Sales & Distribution Co. v. Hillside Van Lines, Inc.*, 98 A.D.3d 663, 665 (2d Dept. 2012); *New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 321 (N.Y. 1995) (private contract dispute "which is unique to these parties, not conduct which affects the consuming public at large.").

Here, too, Plaintiffs' allegations of consumer-oriented conduct is that Lovo "misrepresented to Plaintiffs what their voices would be used for" (Cplt. ¶107).  This is clearly conduct that relates to an alleged private contract and not an allegation impacting the consuming public at large.  *See, e.g., Monroe Staffing Services, LLC v. Whitaker,* 2023 WL 4285292, *11 (S.D.N.Y. 2023) (dismissing as claim was essentially a private contract dispute which did not affect "consuming public at large"); *see also Manchanda v. Educ. Credit Mgmt. Corp.,* 2022 WL 137885, *3-4 (S.D.N.Y. 2022) (same).  Plaintiffs try to salvage these claims by alleging that Lovo made deceptive "misrepresentations and omissions to consumers by publishing and

disseminating misleading information" that Plaintiffs and others had consented to the use of their voices (Cplt. ¶¶108-109, 119). But, Plaintiffs were not themselves deceived by any such misrepresentation and are not seeking damages for any such alleged deceiving statements and is not the act about which they are complaining. Thus, this cannot sustain a claim for violations of GBL 349 or 350. *See, e.g., Trustpilot Damages LLC v. Trustpilot, Inc.*, 2021 WL 2667029, *6 (S.D.N.Y. 2021) ("[t]he challenged *act* must be consumer-oriented to sustain a section 349 claim") (emphasis added) (internal quotation marks omitted) (citing *Stuntman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000)); *see also Manchanda v. Educ. Credit Mgmt. Corp.,* 2022 WL 137885, *3-4 (S.D.N.Y. 2022) (same). Plus, this claim is vague and conclusory, as not specifically stating exactly where or when such statement was made or what was said.

## 2. Plaintiffs Do Not Adequately Allege That They are Consumers Or That Any Consumer Was Deceived

"Section 349 is directed at wrongs against the consuming public which have a broad impact on consumers at large". *Singh v. City of New York*, 40 N.Y.3d 138, 148, 217 N.E.3d 1, 7 (N.Y. 2023). "Although we have recognized that professionals and business entities can qualify as 'consumers' if the products or services purchased are consumer goods or their equivalent . . ., that is not the case here." *Id.* Here, Plaintiffs allege that they are voice-over actors (Cplt. ¶¶3-4). They allege that they were deceived by communications over Fiverr purportedly hiring them to record some scripts (*id.* ¶¶49, 60). Plaintiffs were not consumers at all, and they did not purchase anything (and certainly no consumer goods). Rather, Plaintiffs allege that they were independent contractors hired for a particular task. It was in entering their private contracts for these tasks that they claim they were deceived. This is not sufficient to allege violations of GBL 349 and 350. Thus, these claims should be dismissed.

## 3. Plaintiffs Do Not Adequately Allege Conduct Which Occurred In New York

The text of GBL §349 proscribes the commission of actionable commercial deception by "the conduct of any business, trade or commerce or in the furnishing of any service *in this state*[.]" GBL §349(a) (emphasis added).  This phrase "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York[,]" and so held "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324–25 (N.Y. 2002); *Dorris v. Danone Waters of America,* 2024 WL 112843, *3 (S.D.N.Y. 2024) ("Thus, to state a claim under either section [GBL 349 or 350], 'the transaction in which the consumer is deceived must occur in New York'"); *Halim v. KIND LLC,* 2023 WL 8810277, *3 (S.D.N.Y. 2023) (same).  Here, as described above (*supra* p. 10), there is no allegation of any wrongdoing in New York, or that Plaintiffs were deceived in New York.  Thus, the GBL 349 and 350 claims must be dismissed.

### 4.    Plaintiffs' Allegations Are Not Within the Statute of Limitations

Claims brought under GBL § 349 and § 350 are subject to a three-year statute of limitations.  N.Y. C.P.L.R. § 214(2); *see Baldeo v. Airbnb, Inc.,* 2023 WL 7689652, *5 (S.D.N.Y. 2023).  "[S]uch claims accrue when the injury is first sustained" *(id.)* or "when all of the factual circumstances necessary to establish a right of action have occurred, so that plaintiff would be entitled to relief".  *Speedfit LLC v. LifeCore Fitness, Inc.,* 2023 WL 199595, *4 (S.D.N.Y. 2023).  Plaintiffs' only allegation about a misrepresentation to them was that Defendant "misrepresented to Plaintiffs what their voices would be used for" (Cplt. ¶107).  These misrepresentations are alleged to have occurred in October 2019 and May 2020 (*id.* ¶¶29, 49).  Plaintiffs were injured then, which was more than three years prior to this action.

### 5.    Plaintiffs Do Not Allege A Cognizable Injury

 "An actual injury claim under [§§] 349 and 350 typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive

the full value of her purchase." *Reyes v. Upfield US Inc.*, 694 F. Supp. 3d 408, 420 (S.D.N.Y.

2023) (citation omitted); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y.

2020) (same).  As noted above, Plaintiffs do not allege that (a) they are consumers; (b) that they

purchased a product; and (c) they did not receive full value of their purchase.  Thus, their claims

pursuant to GBL 349 and 350 must be dismissed.  *Reyes,* 694 F. Supp. 3d at 420; *Duran,* 450 F.

Supp. 3d at 346; *Brownell v. Starbucks Coffee Co.*, 681 F. Supp. 3d 27, 37 (N.D.N.Y. 2023).

## IV.    Lanham Act Unfair Competition and False Affiliation Claim Should Be Dismissed

Plaintiffs' claim for "Unfair Competition and False Affiliation in Violation of Section 43

of the Lanham Act, 15 U.S.C. § 1125(a)" should be dismissed.  There is no single claim called

"unfair competition and false affiliation".  Thus, again, it is unclear what claim Plaintiffs are

making.  However, "[t]o state a claim under the Lanham Act for trademark infringement, unfair

competition, and false designation of origin, a plaintiff must establish that: (1) [plaintiff] owns a

valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in

commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause

consumers confusion as to the origin or sponsorship of the defendant's goods." *Camelot SI, LLC

v. ThreeSixty Brands Group LLC,* 632 F. Supp. 3d 471, 480 (S.D.N.Y. 2022) (citation omitted);

*see also AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 486 (S.D.N.Y. 2020).  It

is also clear that there is no "specific [f]ederal cause of action for unfair competition". *Camelot,*

632 F. Supp. 3d at 480.  Thus, it requires a pleading of an "ownership interest" in a mark. *Id.*

Here, Plaintiffs' allegations fail to meet this standard.  They have not even alleged that they

own a valid mark entitled to protection under the Lanham Act for their voices.  Nor could they do

so since a voice alone is not something for which there can be protection under the Lanham Act.

*See, e.g., Booth v. Colgate-Palmolive Co.,* 362 F. Supp. 343, 349 (S.D.N.Y. 1973) (dismissing

Lanham Act claim, *inter alia*, because "voice alone" cannot serve as a trademark); *cf. Oliveira v.*

*Frito-Lay, Inc.*, 251 F.3d 56, 62 (2d Cir. 2001) (trademark law does not even extend to provide "a performing artist a trademark or service mark in her signature performance."). Thus, there is nothing to protect; nothing which may have been used without consent and nothing which could create any confusion. *Camelot,* 632 F. Supp. 3d at 482.

Additionally, even if a voice could be protected, there can be no claim for endorsement or affiliation of a voice that is anonymous or fictitious (as Plaintiffs allege here). *See, e.g., Bondar v. LASplash Cosmetics,* 2012 WL 6150859, \*7 (S.D.N.Y. 2012) ("the misappropriation of a completely anonymous face could not form the basis for a false endorsement claim, because consumers would not infer that an unknown model was 'endorsing' a product").

## V. Lanham Act False Advertising Claim (15 U.S.C. § 1125(a)) Should Be Dismissed

"To plead a claim for False Advertising under the Lanham Act, Plaintiff must allege standing, which is an element of the cause of action under the statute. Plaintiff must also allege: (1) a false or misleading statement; (2) in connection with commercial advertising or promotion that (3) was material; (4) was made in interstate commerce; and (5) damaged or will likely damage the plaintiff." *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 231 (S.D.N.Y. 2023) (internal quotation marks and citations omitted).

The Supreme Court has explained that standing under the Lanham Act means that "a plaintiff must plead . . . an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014). The Second Circuit held that to have standing for a false advertising claim for lost income, a plaintiff "should have been paid had Defendants operated through legal channels and paid her for her appearance in their advertisements" is insufficient because "[i]t does not constitute 'reputational' injury, nor does it flow 'from the deception wrought by the defendant's advertising,' nor is there any reason to believe that it

17

would cause consumers . . . 'to withhold trade from the plaintiff.'" *Souza v. Exotic Island Enterprises, Inc.,* 68 F.4th 99, 119–20 (2d Cir. 2023) (quoting *Lexmark*, 134 S.Ct. at 1391).

Here, Plaintiffs have sought as damages for this claim "all profits, gains, and advantages obtained during the execution" of this improper conduct (Cplt. ¶143). This clearly does not meet the standard for standing, as it is neither reputational nor does it flow from any deception. The Complaint nowhere pleads that either Plaintiff was individually identified, or identifiable, and rather rests on the notion that their identities were "stolen" (Cplt. ¶1), and "misappropriated" under a "stage name" such as "Kyle Snow" or Sally Coleman." (Cplt. ¶¶59, 66); *i.e.*, not ever properly identifying either Plaintiff. This cannot suffice for "business reputation" damage pleading as there is no direct link to the *actual* reputation of either Plaintiff, who are never alleged to have been linked to "their" alleged voice by Defendant. As for economic injury, Plaintiffs nowhere plead plausibly that Plaintiffs have lost any job, offer, or opportunity due to the actions of Defendant, and instead, pin their case on the abstract notion that "[t]he voice-over industry is estimated to generate more than $2 billion annually in the United States" (Cplt. ¶10), that "[v]oice-vers" are "integral to various industries," (Cplt. ¶11), and "[t]raditionaly, actors are hired to read scripts" (Cplt. ¶12). This is not a specific pleading of a loss to Plaintiffs. Thus, Plaintiffs claim should be dismissed for lack of standing. *See, e.g., PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, 629 F. Supp. 3d 116, 132 (S.D.N.Y. 2022) (no standing since pleading of plaintiff's diverting resources not adequate to allege "commercial harm"); *Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, *5 (S.D.N.Y. 2014) (no standing as speculative pleadings not directly linking causal connection or economic damage).

Nor have Plaintiffs plausibly alleged a material false or misleading statement in connection with advertising. The Second Circuit has explained that "contested representations

[must be] part of any organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry" is required. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56–58 (2d Cir. 2002) ("twenty-seven oral statements regarding plaintiff's products in a marketplace of thousands of customers" insufficient "to satisfy the requirement that representations be disseminated widely."). Here, Plaintiffs core allegation of falsity are the two statements in 2019/2020 limiting use of their recordings to either academic research or to non-external use (no other allegedly false statements to Plaintiffs). As previously noted, there is no plausible allegation that these were false. But, even if false, these are clearly not widely disseminated within the industry. The only other alleged false statement is the claim that the Lovo website allegedly said somewhere at some time that Lovo "has agreements with actors allowing LOVO to utilize those actors' voices and compensating them appropriately for that use" (Cplt. ¶24). While Plaintiffs try to transform this into many alleged misrepresentations (*id.* ¶138), the allegation that it is false is unsupported and conclusory. But, even if false, it remains a single isolated statement allegedly located somewhere on the website and not widely disseminated. This is clearly insufficient. *See, e.g.*, *Chamilia, LLC v. Pandora Jewelry, LLC*, 2007 WL 2781246, *9 (S.D.N.Y. 2007) (six statements not "part of an organized campaign to penetrate the relevant market"); *Globe Cotyarn Pvt. Ltd. v. Next Creations Holdings LLC*, 2020 WL 4586892, *4–5 (S.D.N.Y. 2020) (same; statements to "15 to 25" importers); *Navatar Grp., Inc. v. DealCloud, Inc.*, 2023 WL 1797266, *3 (S.D.N.Y. 2023). Nor is it plausible that these alleged actions would cause Plaintiffs "millions of dollars" in damages (Cplt. ¶121).

## VI.   Unjust Enrichment Claim Should Be Dismissed

"A claim for unjust enrichment under New York State law requires that Plaintiffs plead: 1) that the defendant benefitted; 2) at plaintiff's expense[;] and 3) that equity and good conscience require restitution." *Gilleo v. J.M. Smucker Co.*, 2021 WL 4341056, *9 (S.D.N.Y.

2021) (internal quotation marks omitted).  Unjust enrichment "lies as a quasi-contract claim" that "contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.'" *Georgia Malone & Co. v. Rieder,* 19 N.Y.3d 511, 516 (N.Y. 2012) (citation omitted).  "Unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y.*, Inc., 18 N.Y.3d 777, 790 (N.Y. 2012).  Rather, it "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.,* 2016 WL 3951185, *11 (S.D.N.Y. 2016).  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.*  Courts will routinely dismiss an unjust enrichment claim that "simply duplicates, or replaces, a conventional contract or tort claim."  *Sheiner v. Supervalu Inc.,* 2024 WL 2803030, *8 (S.D.N.Y. 2024) (quotation omitted).

Plaintiffs' claim for unjust enrichment should be dismissed for many reasons.  First, the claim is preempted by the pleading of Sections 50 and 51 of the New York Civil Rights Law. *See, e.g., Tarazi v. Truehope, Inc.,* 2017 WL 59527665, *15 (S.D.N.Y. 2017) ("the New York Civil Rights Law subsumes unjust enrichment claims for the unauthorized use of an image or likeness"); *see also Myskina v. Condé Nast Publ'ns, Inc.*, 386 F. Supp. 2d 409, 420 (S.D.N.Y.2005) ("unjust enrichment claims for unauthorized use of an image or likeness are subsumed by Sections 50 and 51."); *Zoll v. Jordache Enters., Inc.,* 2002 WL 31873461, *16 (S.D.N.Y. 2002) (same).  Second, the unjust enrichment claim is duplicative of Plaintiff's other claims.  *See, e.g., Sandoval v. Uphold HQ Inc.*, 2024 WL 1313826, *11 (S.D.N.Y. 2024) (dismissing unjust enrichment claim); *Adeghe v. Procter & Gamble Co.,* 2024 WL 22061, *7 (S.D.N.Y. 2024) (dismissing unjust enrichment claim as duplicative of other claims); *Alce v.*

*Wise Foods, Inc*., 2018 WL 1737750, \*12 (S.D.N.Y. 2018) (dismissing unjust enrichment claim as duplicative of GBL §§ 349 and 350 claims). Third, Plaintiffs have alleged an agreement with Lovo via Fiverr; therefore, there can be no unjust enrichment claim. *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888, \*17 (S.D.N.Y. 2003) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract") (internal citation omitted); *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 424 (S.D.N.Y. 2022) ("the relationship between the Parties is contractual in nature, meaning any unjust enrichment claim is precluded as duplicative").

## VII.    Tortious Interference with "Advantageous Business Relationship" Claim Should Be Dismissed

Plaintiffs' claim for "Tortious Interference with Advantageous Business Relationship" should be dismissed. It is unclear if Plaintiffs intend to allege a claim for tortious interference with a contract or tortious interference with prospective business advantage. On that basis alone, this claim should be dismissed. However, Plaintiffs have not adequately alleged either claim.

"[T]o state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp*., 449 F.3d 388, 400 (2d Cir. 2006). "[T]he elements of tortious interference with contract are (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom." *Id.* at 401-402 (citations omitted).

Plaintiffs' allegations for this claim appear to relate to the alleged relationship between

Plaintiffs and the Screen Actors Guild – American Federation of Television and Radio Artists ("SAG-AFTRA") (Cplt. ¶¶23-25, 65, 150-153).  Plaintiffs mention both a contract (*id.* ¶65) and a business relationship (*id.* ¶150).  Plaintiffs' claim of tortious interference is, at best, conclusory and also deficient in other respects.  Plaintiffs have failed to adequately allege either tortious interference claim for at least the following reasons.

First, Plaintiffs have failed to allege at all that the contract was breached or that the relationship with SAG-AFTRA was impacted.  There is no allegation that SAG-AFTRA has taken any negative action against or raised any issue with Plaintiffs.  Second, Plaintiffs, in a conclusory fashion, allege that Lovo knew about Plaintiffs' contracts and/or relationship with SAG-AFTRA (*id.* ¶¶151, 65).  But, this is not just conclusory, it is not plausible.  Plaintiffs allege that their relationship with Lovo consisted of a few text messages on Fiverr (an online marketplace) where Plaintiffs did not know the identity of the person or entity with whom they were communicating.  They created a few recordings and were paid respectively $1200 and $400 (*id.* ¶¶37, 52).  There is no allegation that either Plaintiff used their names in these communications or that Lovo knew who either of them were.  It is, thus, not plausible to believe that Defendant not only knew their identities but knew about any contract or business arrangement they had with SAG-AFTRA.  Third, Plaintiffs similarly allege in a conclusory and implausible fashion that Defendant asked two anonymous individuals to record some scripts in 2019/2020 and/or alleged use of their voices was (a) intended to either cause a breach of Plaintiffs' contract or interfere with Plaintiffs' business relationship; and (b) was with malice.  Fourth, Plaintiffs also have alleged damages from this breach of contract or of a relationship in a conclusory fashion.  There is no specific allegation of harm related to SAG-AFTRA.  Plaintiffs provide nothing more than a formulaic recitation of these elements; thus, the claim should be

dismissed.  *See, e.g., Ganske v. Mensch*, 480 F. Supp. 3d 542, 557 (S.D.N.Y. 2020) ("Plaintiff

has not plausibly pled that Defendant intended to induce a breach of Plaintiff's employment

contract with the AP").  Fifth, Plaintiffs have not alleged the specific contract clause allegedly

breached.  Finally, Plaintiffs did not allege that Lovo's alleged conduct was directed towards

SAG-AFTRA as required.  *See, e.g., G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762, 768 (2d

Cir.1995) (dismissing claim as defendants' actions not directed at non-plaintiff party); *Piccoli*

*A/S v. Calvin Klein Jeanswear Co.,* 19 F Supp 2d 157, 167–168 (S.D.N.Y.1998) ("alleged

conduct concededly was not directed towards any third party with whom Piccoli had an existing

or prospective business relationship"); *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004)

(same).  For each of these reasons, Plaintiffs' claim for tortious interference should be dismissed.

## VIII.    Fraud Claim Should Be Dismissed

Plaintiffs' fraud claim should be dismissed because, as alleged, the "fraud" was nothing

more than an alleged misrepresentation of a future intent not to perform a contract.  Here,

Plaintiffs allege that Lovo made a contract with each of them, part of which was a limitation of

use on certain recordings.  Plaintiffs then allege that it was Lovo's intent not to honor that

contractual commitment.  But, "New York law does not recognize a claim for fraud if the only

alleged misrepresentation is of a future intent to perform under a contract." *Freedom Mortgage*

*Corporation v. Tschernia,* 2021 WL 1163807, *6 (S.D.N.Y. 2021); *See also*

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 19 (2d Cir. 1996)

("intentionally-false statements ... indicating [an] intent to perform under [a] contract ... [are] not

sufficient to support a claim of fraud under New York law"); *Lomaglio Assoc., Inc., v. LBK*

*Mktg. Corp.,* 892 F. Supp. 89, 94 (S.D.N.Y.1995) ("New York law "preclude[s] fraud actions

where the 'only fraud charged relates to a breach of contract.'") (quotation omitted).  "'[A]

contract action cannot be converted to one for fraud merely by alleging that the contracting party

did not intend to meet its contractual obligations.'" *Hanft Byrne Raboy & Partners, Inc. v. Matsushita Elec. Corp. of America,* 2001 WL 456346, *5 (S.D.N.Y. 2001).  This is true even if Plaintiffs, like here, choose not to bring a breach of contract claim.

Additionally, Plaintiffs' fraud claim is subject to the heightened Rule 9 pleading standard (*see supra* p. 6).  For a fraud claim, a plaintiff must identify in the complaint "the who, what, when, where, and how: the first paragraph of any newspaper story." *Silvester v. Selene Fin., LP,* 2021 WL 861080, *2 (S.D.N.Y. 2021) (quotation omitted).  "Rule 9(b) also requires plaintiffs to 'allege facts that give rise to a strong inference of fraudulent intent.'" *Twohig v. Shop-Rite Supermarkerts, Inc.,* 519 F. Supp. 3d 154, 166 (S.D.N.Y 2021) (quoting *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006)).  Plaintiffs' claim does not satisfy this requirement.

 Plaintiffs' allegations of fraud are sparse.  Plaintiffs allege the fraud to them consisted of the alleged misrepresentations made to the two of them in 2019/2020 in Fiverr about the use of voice recordings made by Plaintiffs (Cplt. ¶¶154-156).  They provide a conclusory allegation that (a) Lovo knew that Plaintiffs' "voice recordings would be used for promotion of Lovo's services and as available voice options on the Lovo website" (*id.*); (b) "intended to defraud Plaintiffs" (*id.* ¶157); (c) Plaintiffs "reasonably relied" on alleged misrepresentations (*id.* ¶158); and (d) Plaintiffs were damaged by these misrepresentations" (*id.* ¶159).  These bare recitations of the elements would not suffice for a regular pleading and is certainly insufficient for a claim of fraud.  *See, e.g.*, *Inspired Cap., LLC v. Conde Nast*, 803 F. App'x 436, 440 (2d Cir. 2020) (dismissing fraud claim).  Moreover, as explained herein, some of these allegations are contradicted by or made implausible by other allegations in the Complaint.

As noted above, Plaintiffs do not actually allege anywhere that the particular recordings made and uploaded to Fiverr were ever reproduced anywhere.  Plaintiffs acknowledge that the

AI-generated voices are different than the recordings they previously made.  Thus, the claim that there was a material misrepresentation is not plausible.  Plaintiffs' allegation of reliance is perfunctory.  Neither Lehrman nor Sage allege that they accepted the offer to make the recordings for money in reliance on the message about usage.  In fact, there is no allegation that Lehrman even uploaded the files after receiving the message about usage.  Also, there are no alleged facts from which one could reasonably infer intent to defraud as there is no specific allegation that the particular recordings were intended to be used other than as promised.  Nor do they adequately allege that they would have been paid more money for some other use of their recordings.  Thus, these allegations are too threadbare to meet the particularity standard under Rule 9.  *See, e.g., Morales v. Apple, Inc.,* 2023 WL 5579929, *4 (S.D.N.Y. 2023) (dismissing for insufficient allegations of fraudulent intent); *Wargo v. Hillshire Brands Co*., 599 F. Supp. 3d 164, 178 (S.D.N.Y. 2022) (finding the allegation "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers" inadequately pled fraudulent intent); *Twohig*, 519 F. Supp. 3d at 166 (S.D.N.Y. 2021) ("Plaintiffs' fraud claim is separately dismissed because it fails to plead facts that give rise to a strong inference of fraudulent intent."); *Gilleo v. J.M. Smucker Co.*, 2021 WL 4341056, *9 (S.D.N.Y.  2021) (dismissing fraud claims).

## CONCLUSION

For the foregoing reasons, Defendant respectfully asks this court to grant Defendant's Motion to Dismiss the Complaint in its entirety with prejudice.

Dated: July 29, 2024                                    RIMÔN, P.C.
       New York, New York

                                          By:     */s/Michael S. Lazaroff*
                                                  Michael S. Lazaroff
                                                  100 Park Avenue, 16th Floor
                                                  New York, New York 10017

646-738-4151
michael.lazaroff@rimonlaw.com

David E. Case
800 Oak Grove Avenue, Suite 250
Menlo Park, California 94025
408-512-2239
david.case@rimonlaw.com

William W. Bergesch
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479 – 6300
william.bergesch@rimonlaw.com

*Attorneys for Defendant Lovo, Inc.*