UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAUL LEHRMAN and LINNEA SAGE, on behalf of themselves and all others similarly situated, and JOHN DOE and others similarly situated,

                        Plaintiffs,

        v.

LOVO, INC.,
                Defendant.

No. 1:24-cv-03770 (JPO)

---

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS THE AMENDED CLASS ACTION
COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS .............................................................................................3

ARGUMENT ..................................................................................................................6

I.      Legal Standard ..................................................................................................6

II.     All Claims By "John Doe" Should Be Dismissed .........................................7

III.    New York Civil Rights Law Claim Should Be Dismissed.............................8

      1.      Plaintiffs' Section 50/51 Allegations Are Not Within the Statute of Limitations ..................................................................................8

      2.      No Plausible Allegations that Plaintiffs' Recordings Were Improperly Used .......................................................................10

      3.      No Plausible Allegations that Any Advertising Occurred "Within This State"...............................................................................12

      4.      Alleged Use of Voices Was Under a Fictitious Name.............................12

      5.      Voices Not Plausibly Alleged as Used for Advertising or Trade .............13

IV.     Claims for Violation N.Y. GBL § 349 and § 350 Should Be Dismissed .........................14

      1.      Plaintiffs Do Not Adequately Allege Consumer-Oriented Behavior ........14

      2.      Plaintiffs Do Not Allege They Are Consumers or Any Consumer Was Deceived ...........................................................16

      3.      Plaintiffs Do Not Adequately Allege Conduct Which Occurred in New York ...........................................................................16

      4.      Plaintiffs' Allegations Are Not Within the Statute of Limitations ............16

      5.      Plaintiffs Do Not Allege a Cognizable Injury...........................................17

V.      Lanham Act Unfair Competition and False Affiliation Claim Should Be Dismissed ...................................................................................................17

VI.     Lanham Act False Advertising Claim (15 U.S.C. § 1125(a)) Should Be Dismissed ........18

VII.    Unjust Enrichment Claims Should Be Dismissed .........................................21

VIII.   Conversion Claim Should Be Dismissed........................................................22

IX.     Fraud Claim Should Be Dismissed .................................................................23

X.      Breach of Contract Claim Should Be Dismissed ............................................25

XI.     All Copyright Infringement Related Claims Should be Dismissed ..................28

      1.     Lovo Had the Right to Use the Recordings Per the Fiverr Terms of Service................................................................................................28

      2.     Plaintiffs Failed to Register All Copyrights Prior to Commencing this Action.............................................................................................29

      3.     Claims Related to 2020 Uses Are Barred by the Statute of Limitations..........................................................................................30

      4.     Direct Infringement Claims Fail ....................................................30

      5.     "Contributory" Infringement Claim Should Be Dismissed ......................34

XII.    Unfair Competition Claim Should Be Dismissed ............................................35

CONCLUSION....................................................................................................35

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020)......................................................................................30

*Alce v. Wise Foods, Inc.*,
   2018 WL 1737750 (S.D.N.Y. 2018).......................................................................22

*Allen v. Nat'l Video, Inc.*,
   610 F. Supp. 612 (S.D.N.Y. 1985) .........................................................................12

*Annabi v. New York University*,
   2023 WL 6393422 (S.D.N.Y. 2023).......................................................................26

*Arista Recs., LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010).............................................................................30, 34

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................6

*Aubrey v. New Sch.*,
   624 F. Supp. 3d 403 (S.D.N.Y. 2022).....................................................................22

*Avalos v. IAC/Interactivecorp.*,
   2014 WL 5493242 (S.D.N.Y. 2014).......................................................................20

*Avon Prod., Inc. v. S.C. Johnson & Son, Inc.*,
   984 F. Supp. 768 (S.D.N.Y. 1997) .........................................................................35

*Baldeo v. Airbnb, Inc.*,
   2023 WL 7689652 (S.D.N.Y. 2023).......................................................................17

*Barbash v. STX Fin., LLC*,
   2020 WL 6586155 (S.D.N.Y. 2020).......................................................................10

*BCRS1, LLC v. Unger*,
   2021 WL 3667094 (E.D.N.Y. 2021)........................................................................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................6

*Bendit v. Canva, Inc.*,
2023 WL 5391413 (S.D.N.Y. 2023)..................................................................8, 12

*Binder v. Premium Brands Opco LLC*,
2024 WL 2978506 (S.D.N.Y. 2024).......................................................................14

*Bondar v. LASplash Cosmetics*,
2012 WL 6150859 (S.D.N.Y. 2012).......................................................................18

*Booth v. Colgate-Palmolive Co.*,
362 F. Supp. 343 (S.D.N.Y. 1973) .........................................................................18

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
98 F.3d 13 (2d Cir. 1996)........................................................................................24

*Brought to Life Music, Inc. v. MCA Records, Inc.*,
2003 WL 2986561 (S.D.N.Y. 2003)..................................................................32, 34

*Brown v. Twitter, Automattic Inc.*,
2021 WL 3887611 (S.D.N.Y. 2021).......................................................................22

*Business Casual Holdings, LLC v. YouTube, LLC*,
2022 WL 8375962022 (S.D.N.Y. 2021).................................................................29

*Camelot SI, LLC v. ThreeSixty Brands Group LLC*,
632 F. Supp. 3d 471 (S.D.N.Y. 2022).....................................................................18

*Carruthers v. Flaum*,
450 F. Supp. 2d 288 (S.D.N.Y. 2006).....................................................................28

*CDC Newburgh Inc. v. STM Bags, LLC*,
692 F. Supp. 3d 205 (S.D.N.Y. 2023).....................................................................19

*Cerasani v. Sony Corp.*,
991 F. Supp. 343 (S.D.N.Y. 1998) .........................................................................13

*Chamilia, LLC v. Pandora Jewelry, LLC*,
2007 WL 2781246 (S.D.N.Y. 2007).......................................................................20

*Cole v. John Wiley & Sons, Inc.*,
2012 WL 3133520 (S.D.N.Y. 2012).......................................................................31

iv

*Cooksey v. Global Grind Digital*,
   2016 WL 5108199 (S.D.N.Y. 2016) ..................................................................9

*Corsello v. Verizon N.Y.*,
   Inc., 18 N.Y.3d 777, 790 (N.Y. 2012) ............................................................21

*Dorris v. Danone Waters of America*,
   711 F.Supp.3d 179 (S.D.N.Y. 2024) ..............................................................16

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020) ............................................................17

*Facenda v. N.F.L. Films, Inc.*,
   542 F.3d 1007 (3d Cir. 2008) .........................................................................33

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
   314 F.3d 48 (2d Cir. 2002) .............................................................................20

*Faulkner v. National Geographic Enterprises Inc.*,
   409 F.3d 26 (2d Cir. 2005) .............................................................................34

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
   499 U.S. 340 (1991) ........................................................................................30

*Fischer v. Forrest*,
   2017 WL 128705 (S.D.N.Y. 2017) ........................................................8, 9, 10

*Fischkoff v. Iovance Biotherapeutics, Inc.*,
   339 F. Supp. 3d 408 (S.D.N.Y. 2018) ............................................................23

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   586 U.S. 296 (2019) ..................................................................................27, 29

*Freedom Mortgage Corporation v. Tschernia*,
   2021 WL 1163807 (S.D.N.Y. 2021) ...............................................................24

*Frost & Miller, LLP v. Heaven's Way Investment Trust, et. al.*,
   2024 WL4648015 (S.D.N.Y. 2024) ................................................................23

*Georgia Malone & Co. v. Rieder*,
   19 N.Y.3d 511 (N.Y. 2012) ............................................................................21

*Gilleo v. J.M. Smucker Co.*,
　2021 WL 4341056 (S.D.N.Y. 2021) .................................................................. 21, 25

*Globe Cotyarn Pvt. Ltd. v. Next Creations Holdings LLC*,
　2020 WL 4586892 (S.D.N.Y. 2020) .......................................................................... 20

*Goshen v. Mut. Life Ins. Co. of New York*,
　98 N.Y.2d 314 (N.Y. 2002) ....................................................................................... 16

*Halim v. KIND LLC*,
　707 F. Supp. 3d 439 (S.D.N.Y. 2023) ....................................................................... 16

*Hanft Byrne Raboy & Partners, Inc. v. Matsushita Elec. Corp. of America*,
　2001 WL 456346 (S.D.N.Y. 2001) ........................................................................... 24

*Hawkins v. Coca-Cola Co.*,
　654 F. Supp. 3d 290 (S.D.N.Y. 2023) ....................................................................... 14

*Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*,
　2011 WL 6600267 (S.D.N.Y. 2011) (dismissed) ..................................................... 35

*Hyo Jung v. Chorus Music Studio, Inc.*,
　2014 WL 4493795 (S.D.N.Y. 2014) ......................................................................... 23

*Iantosca v. Elie Tahari, Ltd.*,
　2020 WL 5603538 (S.D.N.Y. 2020) ......................................................................... 29

*Inspired Cap., LLC v. Conde Nast*,
　803 F. App'x 436 (2d Cir. 2020) .............................................................................. 24

*ISS Facility Services, Inc. v. Fedcap Rehabilitation Services, Inc.*,
　2021 WL 2784550 (S.D.N.Y. 2021) ......................................................................... 27

*In re Jackson*,
　972 F.3d 25 (2d Cir. 2020) ....................................................................................... 33

*Johnson v. Nextel Commc'ns, Inc.*,
　660 F.3d 131 (2d Cir.2011) ....................................................................................... 26

*KatiRoll Co. v. Kati Junction, Inc.*,
　33 F. Supp. 3d 359 (S.D.N.Y. 2014) ......................................................................... 35

*Kimmel v. State*,
   29 N.Y.3d 386 (N.Y. 2017) ...................................................................................11

*United States ex rel. Ladas v. Exelis, Inc.*,
   824 F.3d 16 (2d Cir. 2016)....................................................................................7

*Lerman v. Flynt Distrib. Co., Inc.*,
   745 F.2d 123 (2d Cir.1984)..................................................................................13

*Lewis v. R.L. Vallee, Inc.*,
   2024 WL 1739608 (N.D.N.Y. 2024) ...................................................................14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014)........................................................................................19

*Livnat v. Lavi*,
   1998 WL 43221 (S.D.N.Y. 1998)........................................................................34

*Lomaglio Assoc., Inc., v. LBK Mktg. Corp.*,
   892 F. Supp. 89 (S.D.N.Y.1995) .........................................................................24

*Mahnke v. Munchkin Prod., Inc.*,
   2001 WL 637378 (S.D.N.Y. 2001).......................................................................32

*Mahoney v. Endo Health Sols., Inc.*,
   2016 WL 3951185 (S.D.N.Y. 2016)......................................................................21

*Malibu Media, LLC v. Doe*,
   2019 WL 1454317 (S.D.N.Y. 2019)......................................................................29

*Manchanda v. Educ. Credit Mgmt. Corp.*,
   2022 WL 137885 (S.D.N.Y. 2022)........................................................................15

*Maxwell v. N.W. Ayer, Inc.*,
   605 N.Y.S.2d 174, 176 (N.Y. Sup. Ct. 1993) .......................................................23

*McClure v. Williams*,
   2024 WL 4336777 (E.D.N.Y. 2024)......................................................................22

*Melendez v. Sirius XM Radio, Inc.*,
   50 F.4th 294 (2d Cir. 2022) ................................................................................33

*Messenger v. Gruner Jahr Printing and Pub.*,
208 F.3d 122 (2d Cir. 2000)........................................................................8

*Mills Pond Grp. LLC v. Town of Smithtown, New York*,
2024 WL 4504679 (E.D.N.Y. 2024)............................................................7

*Monroe Staffing Services, LLC v. Whitaker*,
2023 WL 4285292 (S.D.N.Y. 2023)..........................................................15

*Morales v. Apple, Inc.*,
2023 WL 5579929 (S.D.N.Y. 2023)..........................................................25

*Mourabit v. Klein*,
393 F. Supp. 3d 353 (S.D.N.Y. 2019)........................................................28

*Myskina v. Condé Nast Publ'ns, Inc.*,
386 F. Supp. 2d 409 (S.D.N.Y.2005).........................................................21

*Navatar Grp., Inc. v. DealCloud, Inc.*,
2023 WL 1797266 (S.D.N.Y. 2023)..........................................................21

*New York Univ. v. Cont'l Ins. Co.*,
87 N.Y.2d 308 (N.Y. 1995) ......................................................................15

*New York Univ. v. Factory Mut. Ins. Co.*,
374 F. Supp. 3d 315 (S.D.N.Y. 2019)........................................................11

*Novick v. AXA Network, LLC*,
714 F. App'x 22 (2d Cir. 2017).................................................................23

*Oliveira v. Frito-Lay, Inc.*,
251 F.3d 56 (2d Cir. 2001)........................................................................18

*Palmer Kane LLC v. Scholastic Corp.*,
2014 WL 1303135 ....................................................................................32

*Pearce v. Manhattan Ensemble Theater, Inc.*,
2009 WL 3152127 (S.D.N.Y. 2009)..........................................................12

*PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*,
629 F. Supp. 3d 116 (S.D.N.Y. 2022)........................................................20

viii

*Pickett v. Migos Touring, Inc.*,
  420 F. Supp. 3d 197 (S.D.N.Y. 2019)................................................................29

*Plavin v. Grp. Health Inc.*,
  35 N.Y.3d 1 (N.Y. 2020) ....................................................................................14

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014)...............................................................................30

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004)...............................................................................26

*Reyes v. Upfield US Inc.*,
  694 F. Supp. 3d 408 (S.D.N.Y. 2023)................................................................17

*Richards v. Multinex Co. Ltd.*,
  2024 WL 3041330 (2d Cir. 2024)........................................................................8

*Richards v. Warner Music Grp.*,
  2024 WL 4307994 (S.D.N.Y. 2024)....................................................................33

*Sandoval v. Uphold HQ Inc.*,
  2024 WL 1313826 (S.D.N.Y. 2024)....................................................................21

*Scroggins v. Scroggins*,
  2017 WL 1047356 (S.D.N.Y. 2017)..............................................................22, 32

*Sheiner v. Supervalu Inc.*,
  2024 WL 2803030 (S.D.N.Y. 2024)....................................................................21

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994)..................................................................................7

*Silverman Ptnrs., L.P. v. First Bank*,
  687 F. Supp. 2d 269 (E.D.N.Y. 2010) .......................................................7, 13, 26

*Silvester v. Selene Fin., LP*,
  2021 WL 861080 (S.D.N.Y. 2021).......................................................................24

*Singh v. City of New York*,
  40 N.Y.3d 138, 217 N.E.3d 1 (N.Y. 2023) ..........................................................16

*SmartStream Techs., Inc. v. Chambadal*,
  2018 WL 1870488 (S.D.N.Y. 2018)...................................................................................6

*Smith v. Hogan*,
  794 F.3d 249 (2d Cir. 2015)...........................................................................................6

*Sony Corp. v. Fujifilm Holdings Corp.*,
  2017 WL 4342126 (S.D.N.Y. 2017)..............................................................................11

*Souza v. Exotic Island Enterprises, Inc.*,
  68 F.4th 99 (2d Cir. 2023) ............................................................................................19

*SpeedFit LLC v. LifeCore Fitness, Inc.*,
  2023 WL 199595 (S.D.N.Y. 2023).................................................................................17

*Spinelli v. Nat'l Football League*,
  903 F.3d 185 (2d Cir. 2018)...........................................................................................34

*Spinelli v. Nat'l Football League*,
  96 F. Supp. 3d 81 (S.D.N.Y. 2015) ..............................................................................29

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  2015 WL 5579872 (E.D.N.Y. 2015)...............................................................................7

*Tarazi v. Truehope, Inc.*,
  2017 WL 5957665 (S.D.N.Y. 2017)..............................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................................................3

*Tesfay v. HanesBrands Inc.*,
  2019 WL 6879179 (S.D.N.Y. 2019)..............................................................................13

*Thomas v. Twitter Corporate*,
  2023 WL 8452200 (S.D.N.Y. 2023)..............................................................................22

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016)............................................................................................6

*Trombetta v. Novocin*,
  414 F. Supp. 3d 625 (S.D.N.Y. 2019)..........................................................................8, 9

*Trustpilot Damages LLC v. Trustpilot, Inc.*,
    2021 WL 2667029 (S.D.N.Y. 2021)......................................................................15

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
    2021 WL 535217 (E.D.N.Y. 2021)......................................................................23

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021)........................................................6, 24, 25

*Univ. of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp.*,
    22 A.D.2d 452 (1ˢᵗ Dept. 1965), *aff'd*, 15 N.Y.2d 940 (N.Y. 1965)........................11

*Vazquez v. Walmart, Inc.*,
    704 F.Supp.3d 417 (S.D.N.Y. 2023)....................................................................14

*Vekaria v. Mthree Corporate Consulting, Ltd.*,
    2024 WL 4337542 (S.D.N.Y. 2024)....................................................................23

*Vioni v. Am. Cap. Strategies Ltd.*,
    2009 WL 174937 (S.D.N.Y. 2009)......................................................................28

*Wallace v. Health Quest Systems, Inc.*,
    2021 WL 1109727 (S.D.N.Y. 2021)....................................................................17

*Wargo v. Hillshire Brands Co.*,
    599 F. Supp. 3d 164 (S.D.N.Y. 2022)..................................................................25

*White v. Automatic Data Processing, Inc.*,
    2023 WL 3222397 (S.D.N.Y. 2023)......................................................................9

*Wilson v. Veritas Consulting Grp. Inc.*,
    2022 WL 4227145, *2 (S.D.N.Y. 2022)................................................................8

*Wojtowicz v. Delacorte Press*,
    43 N.Y.2d 858 (N.Y. 1978) ...............................................................................13

*Yang v. Mic Network, Inc.*,
    405 F. Supp. 3d 537 (S.D.N.Y. 2019)..................................................................33

*Yellow Book Sales & Distribution Co. v. Hillside Van Lines, Inc.*,
    98 A.D.3d 663 (2d Dept. 2012) ..........................................................................15

*Zoll v. Jordache Enters., Inc.,*
  2002 WL 31873461 (S.D.N.Y. 2002)........................................................13, 14, 23

**Statutes**

15 U.S.C. § 1125 (Lanham Act § 43) ...........................................................17, 18, 19, 35

17 U.S.C. § 106...........................................................................................................31, 33, 34

17 U.S.C. §114............................................................................................................31, 33, 34

17 U.S.C. §411(a) ..................................................................................................................29

17 U.S.C. §507(b) ..................................................................................................................30

N.Y. Civ. Rights Law § 50 ........................................................................................... *passim*

N.Y. Civ. Rights Law § 50-f.............................................................................................10, 11

N.Y. Civ. Rights Law § 51 ........................................................................................... *passim*

N.Y. Gen. Bus. Law § 349.....................................................................................14, 15, 16, 35

N.Y. Gen. Bus. Law § 350.....................................................................................14, 15, 16, 35

N.Y. Gen. Oblig. Law § 5-701...............................................................................................27

**Rules and Regulations**

Fed. R. Civ. Proc. 9(b) ......................................................................................1, 7, 24, 25

Fed. R. Civ. Proc. 10(a) ......................................................................................................8

Fed. R. Civ. Proc. 12(b)(1) .................................................................................................1

Fed. R. Civ. Proc. 15 ..........................................................................................................9

N.Y. C.P.L.R. § 214(2) .....................................................................................................17

N.Y. C.P.L.R. § 215(3) .......................................................................................................8

**Other Authorities**

Judith B. Bass, *New York's New Right of Publicity Law: Protecting Performers and Producers*, N.Y. St. B.J., 35 May/June 2021...................................................................11

Defendant LOVO, INC. ("Defendant" or "Lovo") submits this Memorandum of Law in support of Defendant's Motion to Dismiss ("Motion") the Amended Class Action Complaint ("Cplt." or "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b).

## PRELIMINARY STATEMENT

Plaintiffs use a kitchen-sink approach to their amended complaint by adding eight causes of action and 159 paragraphs (doubling its size) to see if something will stick if they use enough verbs, adjectives, legal terms, irrelevant facts, and conclusory allegations. But, with all the bluster, there are very few new relevant facts, nothing which cures the problems with the Original Complaint, and nothing that plausibly states a cause of action. Plaintiffs continue to try to tell a tale filled with pathos and the woes of artificial intelligence, and concerns about the impact of artificial intelligence on a particular industry. However, their story and concern do not relate to Lovo's interactions with named Plaintiffs and fails to state an actionable claim despite their desperate attempt to do so. Plaintiffs were so desperate they improperly added an anonymous or hypothetical plaintiff to try to create new claims and failed to tell the Court that Fiverr terms of service provide copyright licenses to Buyers on the Fiverr platform (like Lovo).

However, shorn of its broader societal concerns, Plaintiffs' claims still boil down to the claim that each of the two specifically named Plaintiffs independently agreed in an online marketplace with anonymous individuals to make and sell some sound recordings of scripts provided by the anonymous individuals for $400 and $1200. They were also told in informal Fiverr communications in response to questions that these recordings would be used for research and/or would not be used externally. There is only one allegation that part of one of the many recordings was ever made publicly available or not used for research (and that one fails also). Rather, at a later time, Plaintiffs allege they heard AI-generated voices that sounded to them like

1

their voices saying things they had never said.  Plaintiffs' new claim they registered copyrights for sound recordings are also unavailing, particularly given the Fiverr license.  Plaintiffs' claims do not state any wrongdoing by Lovo.

Plaintiffs' claims should be dismissed generally as all claims are threadbare with bare insufficient recitations of the elements of the claims.  Also, each claim fails for the many reasons discussed in detail below including primarily that (a) the claims for violations of N.Y.C.R.L. § § 50 and 51 fail because they are untimely, this statute does not prohibit use of digital replicas or Lovo's use of the recordings, and Lovo did not use Plaintiffs' names; (b) the claims for violations of GBL §349 and §350 fail since Plaintiffs have not plausibly alleged consumer-oriented behavior, that they are consumers, and a cognizable injury (c)  the claims for violations of the Lanham Act should be dismissed because there is no alleged trademark, there cannot be a claim for a fictitious voice, and Plaintiffs lack standing; (d) the claim for unjust enrichment is preempted by the New York Civil Rights Law, duplicative of other claims, and barred by the contract claim; (e) the claim for conversion fails since voices cannot be converted, Plaintiffs never owned or possessed the cloned voices, and Plaintiffs did not allege the alteration or loss of ownership of the recordings; (f) the claim for fraud is just a dressed-up claim for breach of contract lacking the specificity necessary for a fraud claim; (g) the claim for breach of contract fails because there is no plausible allegation of a binding contract or a breach; (h) the claims related to copyright infringement fail since Lovo has a license via the Fiverr Terms of Service, Plaintiffs did not register the copyrights prior to the Original Complaint, there is no plausible allegations of infringement, including that using recordings to train AI and create cloned voices cannot be infringing; and (i) Plaintiffs have not plausibly alleged unfair competition. The entire Complaint should be dismissed with prejudice.

**STATEMENT OF FACTS**

Solely for purposes of this motion, Lovo accepts as true the Complaint's allegations as supplemented by documents incorporated or referenced in the Complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) (courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Lovo is a technology company with proprietary software driven by artificial intelligence ("AI") that allows clients to create and edit voice-overs (Cplt. ¶5). Lovo sells a text-to-speech service that allows its clients to generate voice-over narrations (*id.* ¶21). It uses "its AI-driven software known as 'Generator' or 'Genny,' and generates a professional-quality voice-over based on certain criteria. . . . customers can choose between . . . male or female voices, regional accents, and older or younger-sounding voices" (*id.*). Lovo's technology "turns written text into speech, providing you with a wealth of human-like voices to bring your content to life" (*id.* ¶124 (screen shot)). "These new human-like voices are almost indistinguishable from natural speech. Genny by LOVO AI also includes voice editing functions, allowing you to alter the emphasis, pronunciation, cadence, and speed of a voice." (*id.*). Genny "was trained using data from thousands of voices and thousands of hours of recordings" (*id.* ¶157). Thus, the voices Genny creates are "AI-generated" and not recordings of anything actually said by anyone (*e.g., id.* ¶¶147, 254). These AI-generated voices are also called "clones" (*id.* ¶23, 26, 302). Plaintiffs further claim "CEO Lee . . . represented that [Lovo] get[s] strict permission from actors to create voice clones" (*id.* ¶71). Plaintiffs also vaguely allege Lovo has said the same somewhere (*id.*).

Plaintiffs plead about two specifically named Plaintiffs, Mr. Lehrman ("Lehrman") and Ms. Sage ("Sage"), and one improper either anonymous or hypothetical Plaintiff "John Doe". Plaintiffs allege Lehrman in May 2020 was "contacted via the Fiverr website by someone

identified as User25199087" to sell voice recordings (*id.* ¶45).  Fiverr.com ("Fiverr") is a website that "connects freelancers with clients looking for digital and creative services" (*id.* ¶44).  Plaintiffs claim Lehrman communicated with  "User25199087" via Fiverr without knowing his identity (*id.* ¶45).  After Lehrman was already "working through" – i.e., recording – the "scripts" (*id.* ¶50), "User25199087" told Lehrman informally via Fiverr (a) "Your voiceover will be used for academic research purposes only (*id.* ¶49); (b) "The scripts will not be used for anything else" (*id.* ¶51); and (c) "The script and your finished file will be used for research purposes only." (*id.* ¶53).  Lehrman delivered the recordings via Fiverr and was paid $1,200 (*id.* ¶¶54-55).  Fiverr's contemporaneous Terms of Service provided Lovo with intellectual property rights (Berg. Ex. 4-5).[1]  In the Original Complaint ("OC"), Plaintiffs alleged that, only later, in 2022, did Lehrman learn "User25199087 was an employee of Defendant LOVO, and the company that . . . hired Mr. Lehrman was LOVO" (OC ¶39, 45).  Plaintiffs allege Lehrman made 104 recordings of scripts provided by User25199087 (Cplt. ¶¶54-55).  Plaintiffs allege Lehrman registered copyrights for these recordings and received certificates on August 16 and August 26, 2024 (*id.* ¶56).  The Copyright Office shows the recordings were registered as sound recordings (Berg. Ex. 1-2).

In the OC, Plaintiffs  alleged that, in 2022, Plaintiffs learned that a YouTube channel had created videos "that used Plaintiff Lehrman's AI-generated voice" (OC ¶43).  In the Complaint, Plaintiffs allege Lehrman's voice was being used by an "AI bot" on a podcast (Cplt. ¶¶63-64).  But, Plaintiffs acknowledge Lehrman never recorded these; they were either "AI-generated" or from an "AI bot" (OC ¶47; Cplt. ¶64).  Plaintiffs also claim (a) Lehrman's voice was used to promote Lovo's "Genny Service" (*id.* ¶106); (b) his voice was used "as part of the subscription

---

[1] Declaration of William Bergesch ("Berg.") with, *inter alia,* exhibits with screenshots of the registration information.

service under the stage name 'Kyle Snow'" (*id.* ¶¶ 108); and (c) Lovo had an article on its website that "featured" and "promoted Mr. Lehrman's voice" as Kyle Snow (*id.* ¶ 123).  Plaintiffs do not allege (a) these were recordings Lehrman sold to Lovo; rather, "his voice" is an AI generated voice that sounds like his voice (*id.* ¶141); or (b) that Lehrman signed a written contract with Lovo.

Plaintiffs also allege on October 29, 2019, Sage "received a message on the Fiverr platform from 'tomlsg' offering her a contract to produce and record test scripts for radio ads" (*id.* ¶76). Plaintiffs further allege Sage received a message "from 'tomlsg' at [the] anonymous company offering the job" telling her these "test scripts" would not be "disclosed externally" and "will only be consumed internally, so will not require rights of any sort" (*id.* ¶78).  Plaintiffs allege Sage "accepted the job" and was paid $400 (*id.* ¶79, 81).  Plaintiffs claim "'tomlsg' was Lovo co-founder Tom Lee" but do not allege any basis for this (*id.* ¶82).  Plaintiffs do not allege Sage signed a written contract with Lovo.  Plaintiffs claim Sage later discovered "that LOVO had been using, manipulating, and editing her voice in multiple promotional and commercial ways, for many years, without her permission" (*id.* ¶85).  Plaintiffs allege (a) "in 2020, Lovo used both a recording of her actual voice – the copyrighted audio sample she provided to Lovo in the October 2019 – and a cloned version of her voice with the identical content . . . to raise money from investors . . . . at the Berkeley SkyDeck Demo Day Spring 2020 event"; and (b) Lovo "posted the presentation publicly to YouTube" (*id.* ¶¶86-87); (c) "Charlie Choi also played Ms. Sage's recordings at the 2020 CES Tech Conference" (*id.* ¶92); and (d) "Lovo made a cloned version of Ms. Sage's voice available to Lovo subscribers under the name 'Sally Coleman'" (*id.* ¶93).  Plaintiffs, thus, acknowledge the Sally Coleman voice is AI generated and not Sage's actual recorded voice. Plaintiffs allege Sage registered the audio file she sold to Lovo with the Copyright Office and

received a registration number for "10 audio tracks" with a registration date of June 18, 2024 (*id.* ¶83). The Copyright Office shows the tracks were registered as sound recordings (Berg. Ex. 3). Plaintiffs also allege another either anonymous or hypothetical Plaintiff, John Doe, who "is a consumer who used the LOVO service" (*id.* ¶8). Plaintiff do not allege any detail about where John Doe resides, when he used Lovo, how he used it, or how he may have been damaged.

The Original Complaint in this action was filed on May 16, 2024 (ECF 1). Defendant filed a motion to dismiss on July 29 (ECF 16-17). In response, on August 7, Plaintiffs requested to file an amended complaint (ECF 18). The Court granted that request (ECF 20). Plaintiffs filed the Complaint on September 25 in accordance with Case Management Plan (ECF 22).

## ARGUMENT

### I.    Legal Standard

A complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Plausible" allegations allow the court to reasonably infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" fail. *Twohig v. Shop-Rite Supermarkets, Inc.,* 519 F. Supp. 3d 154, 159-60 (S.D.N.Y. 2021) (quotations omitted). "[A] court may consider the full text of documents that are quoted in or attached to the [complaint], or that the [plaintiff] either possessed or knew about . . . in bringing the claims." *SmartStream Techs., Inc. v. Chambadal*, 2018 WL 1870488, *3 (S.D.N.Y. 2018). A document referenced in a complaint "control[s] and this Court need not accept as true the allegations" in the complaint. *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (citation omitted). But, affidavits/declarations supplementing pleadings cannot be considered at all as they are not "legal instruments." *See, e.g., Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015). Thus,

the Court cannot consider Plaintiffs' filed unsworn declarations (ECF 22-1; Cplt. ¶¶74, 104).

"[F]raud or mistake" claims must be pled with particularity. Fed. R. Civ. P. 9(b); *see United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016). Plaintiff must "'(1) specify" the fraudulent statements, "(2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127–28 (2d Cir. 1994) (dismissing fraud claims). The Rule 9(b) standard applies to torts premised on fraud, such as "breach of fiduciary duty, conversion, and unjust enrichment[.]" *Silverman Ptnrs., L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010).

## II.    All Claims By "John Doe" Should Be Dismissed

The Complaint has four claims (GBL §349 (4th), GBL §350 (5th), Unjust Enrichment (6th) and Fraud (9th)) on behalf of a "John Doe". The name John Doe is mentioned only six times in the Complaint's enumerated text (Cplt. ¶¶4, 8, 212, 219, 221, 258), most referencing "John Doe Plaintiff" (*id.* ¶¶4, 212, 219). The only more specific allegation is that John Doe "is a consumer who used the LOVO service" (*id.* ¶8). All other "John Doe" allegations are conclusory or plural. There is no allegation of any other specific action or even where he lives. It is unclear if "John Doe" is a hypothetical or an actual anonymous person. Either way is improper.

His claims all fail. ***First***, if "John Doe" is used as a "placeholder" for a hypothetical plaintiff who does not exist, the Court should dismiss all claims by John Doe for not adequately alleging a Plaintiff with Article III Standing as is required "to establish jurisdiction over" any claim (even in a class action). *See, e.g., Stoltz v. Fage Dairy Processing Indus., S.A.,* 2015 WL 5579872, *12-*13 (E.D.N.Y. 2015) (dismissing claims on behalf of John Doe or Jane Doe); *see also Mills Pond Grp. LLC v. Town of Smithtown, New York*, 2024 WL 4504679, *4 (E.D.N.Y. 2024) (hypothetical plaintiffs lacked standing and courts cannot give advisory opinions). ***Second,*** if John

Doe is a real person, then Plaintiffs have violated Fed. Rule of Civ. Proc. 10(a) by not naming him (without permission from the Court to do this) and the claims by John Doe should be dismissed. **Third,** independently, all allegations about "John Doe" are conclusory with no specific detail providing a basis for jurisdiction or any claim. Thus, all John Doe claims should be dismissed.

## III.    New York Civil Rights Law Claim Should Be Dismissed

N.Y.C.R.L. § 51 ("Section 51") creates a limited private cause of action for certain statutory violations of N.Y.C.R.L. § 50 ("Section 50") if the alleged violations have the following elements: "(1) the use of [plaintiff's] name, portrait, picture, or voice, (2) within the state of New York, (3) for purposes of advertising or trade, (4) without [plaintiff's] written consent." *Bendit v. Canva, Inc.,* 2023 WL 5391413, *8 (S.D.N.Y. 2023) (citing *Wilson v. Veritas Consulting Grp. Inc.,* 2022 WL 4227145, *2 (S.D.N.Y. 2022)). The Second Circuit has "underscored that [Section 51] is to be narrowly construed." *Messenger v. Gruner Jahr Printing and Pub.,* 208 F.3d 122, 125 (2d Cir. 2000). The Statue of Limitations for a Section 51 violation is one year. The claim should be dismissed as Plaintiffs have not plausibly alleged a timely Section 50/51 claim.

### 1.    Plaintiffs' Section 50/51 Allegations Are Not Within the Statute of Limitations

There is a 1-year statute of limitations for Sections 50 and 51 per CPLR §215(3). *See Richards v. Multinex Co. Ltd.,* 2024 WL 3041330, *1 (2d Cir. 2024). An action must be brought within one year from the date "the publishing event giving rise to plaintiff's right of privacy claims first occurred." *Trombetta v. Novocin,* 414 F. Supp. 3d 625, 633 (S.D.N.Y. 2019). The "applicable Statute of Limitations runs from the date of . . . publication" even if the publication "consists of thousands of copies widely distributed". *Fischer v. Forrest*, 2017 WL 128705, *14 (S.D.N.Y. 2017) (citations omitted). "This rule applies to publications on the Internet" meaning the publication is the date the information is first posted on the internet and "continuous access . . .

via hyperlinks to a website" does not alter the date of initial publication. *Id.* (citations omitted); *see also Cooksey v. Global Grind Digital*, 2016 WL 5108199, *5 (S.D.N.Y. 2016) ("'it is irrelevant, for statute of limitation purposes that a story remains online after its publication.'").

Here, the Original Complaint is dated May 16, 2024 and the Complaint is dated September 25, 2024. Thus, to be timely, the Sections 50/51 claims need to have accrued after September 25, 2023, or, if they "relate back" to the OC per F.R.C.P. 15, after May 16, 2023. *See, e.g., White v. Automatic Data Processing, Inc.,* 2023 WL 3222397, *3 (S.D.N.Y. 2023). But, Plaintiffs do not allege any such timely violation of Sections 50/51. **First**, as discussed herein, there is no allegation the actual audio recordings made by Lehrman and Sage were actually used or published in any advertisement or in a way which violates this statute at all; the only one alleged use of part of one of the actual Sage recordings is alleged for 2020 (Berkeley SkyDeck Demo Day event) (Cplt. ¶¶86-87). **Second**, Plaintiffs make no allegations about when the synthetic AI-generated voices or clones were initially placed online. **Third**, to the extent the Complaint has other dates, they are too old and/or do not relate to any Lovo actions, and/or are when Lehrman or Sage discovered a use, which is irrelevant. *See, e.g., Trombetta,* 414 F. Supp. 3d at 633 n.5 ("no basis" to use a "discovery rule to extend [Section 51] statute of limitations").

Thus, for example, Plaintiffs allege (a) "in 2020", Lovo used Sage's voice ("both a recording of her actual voice. . . . and a cloned version of her voice") at the "Berkeley SkyDeck Demo Day Spring 2020 event" (Cplt. ¶¶86-87); and (b) "Charlie Choi also played Ms. Sage's recordings at the 2020 CES Tech Conference" (*id.* ¶92). These were both publicly available prior to 2023. Plaintiffs also claim Defendant used the synthetic AI-generated voices on Genny (*id.* ¶¶106, 108, 141) and in an article titled "5 Best Practices for Perfect Audio Advertising" (*id.* ¶123).

But, there is no allegation of when these were first placed on a website although impliedly it was significantly prior to 2023. Continued presence on a website does not affect accrual of the statute of limitations. *Fischer*, 2017 WL 128705, at *15 (claim material "remained 'continuously' online" insufficient). The only specific allegation from 2023 is "[o]n July 11, 2023", Lehrman and Sage "were listening to . . . [a] podcast . . . . it was a conversation with 'Poe,' an AI bot. It became immediately clear that the voice of Poe was, in fact, Mr. Lehrman's voice." (Cplt. ¶¶ 63-64). But, this allegation is not about any Lovo action. While Plaintiffs imply the 2023 date was when they first learned about Lovo's use of their voices, discovery is irrelevant for this statute. In any event, in the OC, Plaintiffs alleged they first learned about Lovo's use of their voice in 2022 (OC ¶¶43-44). The Court need not credit the contrary allegation in the Complaint, even if this issue were relevant. Thus, Plaintiffs' Section 51 claim is untimely and should be dismissed.

## 2. No Plausible Allegations that Plaintiffs' Recordings Were Improperly Used

Plaintiffs allege that in 2019 Lehrman recorded 104 of Lovo scripts and Sage recorded certain of Lovo's ads and sold the recordings to Lovo (Cplt. ¶¶45-55, 76-81). Plaintiffs do not allege any of these actual recordings were subsequently published or used for purposes of an advertisement or for trade; Plaintiffs sole allegation of use of a small part of one of Sage's actual voice recordings was not for an advertisement/trade but as part of a 2020 presentation to potential investors to compare it to an AI-generated voice (*id.* ¶¶86-87)). Thus, there is no allegation Lovo used Plaintiffs' actual voices in violation of Section 51 at all. Instead, Plaintiffs allege Lovo used "synthetic", "AI-generated," or "clones" of their voices (*e.g., id.* ¶¶72, 88, 93, 254). No case applies Section 51 to any such transformed voice; nor does Section 51 prohibit it. *See Barbash v. STX Fin., LLC*, 2020 WL 6586155, *2 (S.D.N.Y. 2020) (only alleged use of likeness of character).

In 2021, New York amended Section 50 to include § 50-f (N.Y. Civ. Rights Law § 50-f,

"Section 50-f") which provides a right of privacy for deceased persons since the rest of Sections

50 and 51 only protects "living person[s]".  *Univ. of Notre Dame Du Lac v. Twentieth Century-*

*Fox Film Corp.*, 22 A.D.2d 452, 455 (1st Dept. 1965), *aff'd*, 15 N.Y.2d 940 (N.Y. 1965).

The Legislature included in the new Section 50-f protection for deceased persons against a

"digital replica" (this is not protected for living persons), and which is defined as:

> [A] newly created, original, computer-generated, electronic performance . . . in a
> separate and newly created, original expressive sound recording . . . in which the
> individual did not actually perform, that is so realistic that a reasonable observer
> would believe it is a performance by the individual being portrayed and no other
> individual. A digital replica does not include the electronic reproduction, computer
> generated or other digital remastering of an expressive sound recording . . .
> consisting of an individual's original or recorded performance, nor the making or
> duplication of another recording that consists entirely of the independent fixation
> of other sounds, even if such sounds imitate or simulate the voice of the individual.

N.Y. Civ. Rights Law § 50-f (McKinney's).  The specific inclusion of digital replicas in Section

50-f is strong evidence that digital replicas are not otherwise covered by Sections 50 and 51 (for

living persons).  This is logical and was the contemporaneous understanding. *See* Judith B. Bass,

*New York's New Right of Publicity Law: Protecting Performers and Producers*, N.Y. St. B.J., 35

May/June 2021 ("Digital replicas of live performers are not included in the law's protections").

In addition, the same logic is supported by the statutory construction canon of "Expressio

unius est exclusio alterius . . .  providing that 'the expression of one thing is the exclusion of the

other.'"  *Sony Corp. v. Fujifilm Holdings Corp*., 2017 WL 4342126, *7 (S.D.N.Y. 2017); *see also*

*New York Univ. v. Factory Mut. Ins. Co.,* 374 F. Supp. 3d 315, 323 (S.D.N.Y. 2019) ("New York

law recognizes the expressio unius canon of contract construction."); *Kimmel v. State*, 29 N.Y.3d

386, 394 (N.Y. 2017).  Here, that canon supports the conclusion that digital replicas were included

in Section 50-f since they were not otherwise protected by Sections 50/51.  Plaintiffs' claim should

11

be dismissed for not adequately alleging Lovo improperly used their actual voices.  *See, e.g., Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 621 (S.D.N.Y. 1985) (suggesting "characteristics of the plaintiff" without using his "name, portrait, or picture, is not actionable").

### 3.   No Plausible Allegations that Any Advertising Occurred "Within This State"

Plaintiffs' Section 51 claim also fails independently as Plaintiffs have not adequately alleged Lovo used any recording for advertising or trade in the New York State.  It is not sufficient to merely note that advertisement is available on the internet.  *See, e.g., Bendit,* 2023 WL 5391413, *8 (insufficient to allege "only that they were 'published and republished ... in numerous advertisements and websites throughout the world.'"); *see also Pearce v. Manhattan Ensemble Theater, Inc.,* 2009 WL 3152127, *9 n.9 (S.D.N.Y. 2009) ("mere accessibility" of website in New York insufficient for Section 51) (citation omitted).  This claim should be dismissed.

The Complaint does have a bare conclusory allegation that the use of the voices of Lehrman and Sage was for the "purposes of trade in New York", but this is insufficient, as are allegations that (a) the agreement to provide the recordings was "conducted" in New York (Cplt. ¶173); (b) consumers of Lovo generally are "located in New York" (*id.* ¶175); (c) New York is popular "for content creation and for individuals and small businesses that need voice-over work" (*id.*); and (d) "Lovo did not exclude New York from its advertising." (*id.* ¶176).  These allegations do not plausibly allege use in New York required by Section 51.  Plaintiffs' claim should be dismissed.

### 4.   Alleged Use of Voices Was Under a Fictitious Name

Independently, Plaintiffs' Section 51 claim should also be dismissed as there is no allegation the voices allegedly generated or used by Lovo were identified as belonging to Lehrman or Sage (*e.g.,* Cplt. ¶¶93, 108-110).  "A § 51 plaintiff must allege the improper use of that individual's 'name, portrait, picture or voice,' and courts have repeatedly dismissed claims

premised on the use of a fictitious rather than actual name." *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 356 (S.D.N.Y. 1998) (dismissing Section 51 claim depicting plaintiff with a fictitious name even if plaintiff was "identifiable"); *see also Wojtowicz v. Delacorte Press*, 43 N.Y.2d 858, 860 (N.Y. 1978) (dismissed as plaintiffs depicted with fictitious names although they were portrayed with enough detail "to result in their effective identification").  Thus, the claim should be dismissed as there is no allegation Plaintiffs' names were used with the AI-generated voices or voices.

### 5.    Voices Not Plausibly Alleged as Used for Advertising or Trade

The claim also fails as it does not plausibly allege Lovo used any voices "for advertising purposes or for the purposes of trade" as required by Section 51.  Use "for the purposes of trade" means use that "would draw trade to the firm" or "for the purpose of making profit."  *Zoll v. Jordache Enters., Inc.*, 2002 WL 31873461, *16 (S.D.N.Y. 2002).  "'[T]he use must appear in or as part of an advertisement or solicitation for patronage.'"  *Lerman v. Flynt Distrib. Co., Inc*., 745 F.2d 123, 130 (2d Cir.1984) (citation omitted).  The use being "spurred by a profit motive or included to encourage sales or distribution . . . is a necessary, but hardly a sufficient, ingredient in determining the existence of a trade purpose."  *Cerasani,* 991 F. Supp. at 357.

Here, Plaintiffs allegations clearly fail.  Plaintiffs allege use by a podcast (*id.* ¶63-68), but this "use" is not even alleged to have been by Lovo.  *See, e.g., Tesfay v. HanesBrands Inc.,* 2019 WL 6879179, *6 (S.D.N.Y. 2019) (dismissal since complaint "failed to allege that [defendant] made use of her image").  Then, Plaintiffs allege use of Plaintiffs' voices (a) in an "investor presentation" at a "2020 SkyDeck Demo Day" (*id.* ¶¶89-90, 98-99, 289); (b) on Lovo's website as possible voices (Kyle Snow and Sally Coleman) (Cplt. ¶¶121-122); (c) as one of "The 5 Best Male Voices for Text to Speech (*id.* ¶124); as part of "Lovo Love Your Voice" (*id.* ¶291); and (d) at a 2020 CES Tech Conference (*id.* ¶92).  But, these also fail.  ***First***, advertisement/trade purposes

does not include attracting investors as it does not involve selling a product or service and attracting investment capital is different than making "profit." *See Zoll* 2003 WL 1964054 at *16. **Second**, a website itself is not an advertisement. **Third**, Plaintiffs have not alleged the voices were used "in a manner that 'conveys or reasonably suggests the subject's endorsement of the publication in question." *Lewis v. R.L. Vallee, Inc.,* 2024 WL 1739608, *4 (N.D.N.Y. 2024) ("statute applies only . . . where the defendant uses the plaintiff's identity in a manner that conveys or reasonably suggests the subject's endorsement of the publication in question") (quote omitted). Here, Plaintiffs have alleged the clone voices are not linked to Lehrman or Sage at all.

## IV.    Claims for Violation N.Y. GBL § 349 and § 350 Should Be Dismissed

Plaintiffs allege four separate claims for violations of N.Y. GBL § 349 and § 350 ("GBL 349" and "GBL 350"), two on behalf of Lehrman and Sage (Cplt. ¶¶184-210) and two on behalf of John Doe (*id.* ¶¶211-230). All these claims fail for the same reasons. To state a claim under GBL 349 or 350, "a plaintiff must plead facts to show that (1) the challenged transaction was consumer-oriented; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Binder v. Premium Brands Opco LLC,* 2024 WL 2978506, *5 (S.D.N.Y. 2024) (quoting *Izquierdo v. Panera Bread Co.,* 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020)); *see also Vazquez v. Walmart, Inc.*, 704 F. Supp. 3d 417, 423 (S.D.N.Y. 2023) (GBL 349 and GBL 350 claims have same elements). Plaintiffs have failed to adequately allege these claims.

### 1.    Plaintiffs Do Not Adequately Allege Consumer-Oriented Behavior

"A defendant engages in consumer-oriented activity if [the company's] actions cause any consumer injury or harm to the public interest." *Hawkins v. Coca-Cola Co*., 654 F. Supp. 3d 290, 300 (S.D.N.Y. 2023) (alteration in original); *see also Plavin v. Grp. Health Inc.,* 35 N.Y.3d 1, 9

(N.Y. 2020) (a plaintiff suing under § 349 must "demonstrate that the acts or practices have a broader impact on consumers at large") (quotation omitted). "Accordingly, private contractual disputes which are unique to the parties do not fall within the ambit of the statute." *Yellow Book Sales & Distribution Co. v. Hillside Van Lines, Inc.*, 98 A.D.3d 663, 665 (2d Dept. 2012); *New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 321 (N.Y. 1995) (private contract dispute "which is unique to these parties, not conduct which affects the consuming public at large.").

Here, Plaintiffs' allegations of consumer-oriented conduct for Lehrman and Sage are essentially that Lovo "misled and harmed" or "misrepresented" to Lehrman and Sage "the purposes for which their voices would be used" (Cplt. ¶188). This is clearly conduct relating to an alleged private contract and not the consuming public at large.  *See, e.g., Monroe Staffing Services, LLC v. Whitaker,* 2023 WL 4285292, *11 (S.D.N.Y. 2023) (claim was essentially a private contract dispute which did not affect "consuming public at large"); *see also Manchanda v. Educ. Credit Mgmt. Corp.,* 2022 WL 137885, *3-4 (S.D.N.Y. 2022) (same).  Plaintiffs try to salvage these claims by alleging Lovo made deceptive "misrepresentations and omissions to consumers by publishing and disseminating misleading information" that Plaintiffs had consented to the use of their voices (Cplt. ¶189).  But, Plaintiffs were not themselves deceived by any such alleged misrepresentations, are not seeking damages for them, and the statements are not the alleged wrongdoing "act". Thus, these allegations do not state a GBL 349 or 350 claim.  *See, e.g., Trustpilot Damages LLC v. Trustpilot, Inc*., 2021 WL 2667029, *6 (S.D.N.Y.  2021) ("act must be consumer-oriented to sustain a section 349 claim") (citation omitted).  Plaintiffs also allege misrepresentations about rights obtained by others for AI-generated voices (Cplt. ¶201) and in a newsletter (*id.* ¶203).  But, there is no allegation any Plaintiff saw or were misled by these.

### 2.  Plaintiffs Do Not Allege They Are Consumers or Any Consumer Was Deceived

"Section 349 is directed at wrongs against the consuming public which have a broad impact on consumers at large".  *Singh v. City of New York*, 40 N.Y.3d 138, 148, 217 N.E.3d 1, 7 (N.Y. 2023).  Although "professionals and business entities can qualify as 'consumers' if the products or services purchased are consumer goods or their equivalent . . ., that is not the case here."  *Id.* Here, Plaintiffs allege Lehrman and Sage are voice-over actors deceived or mislead by statements made to them on Fiverr when they were asked on Fiverr to make and sell recordings from prepared scripts (Cplt. ¶¶4, 45, 76, 188).  Plaintiffs were not consumers, and did not purchase anything. Rather, Plaintiffs allege they were deceived when *selling*, not *consuming*.  Plaintiffs' other allegations relate to websites, YouTube videos, and newsletters (*id.* ¶¶189, 199-203) and do not contain an allegation that Lehrman, Sage or John Doe saw and were misled by these purported misstatements.  These allegations are not sufficient to allege violations of GBL 349/350.

### 3.  Plaintiffs Do Not Adequately Allege Conduct Which Occurred in New York

GBL §349 prohibits actionable commercial deception by "the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]" GBL §349(a).  This phrase "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York[,]" and so held "the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324–25 (N.Y. 2002); *Dorris v. Danone Waters of America,* 711 F. Supp. 3d 179, 187 (S.D.N.Y. 2024) ("'the transaction in which the consumer is deceived must occur in New York'"); *Halim v. KIND LLC,* 707 F. Supp. 3d 439, 443 (S.D.N.Y. 2023) (same).  Here, there is no non-conclusory allegation of any deception by Lovo  of Plaintiffs in New York.  Thus, the GBL 349 and 350 claims must be dismissed.

### 4.  Plaintiffs' Allegations Are Not Within the Statute of Limitations

GBL 349 and 350 claims have a three-year statute of limitations.  N.Y. C.P.L.R. § 214(2).

Claims accrue "when the injury is first sustained" (*Baldeo v. Airbnb, Inc.,* 2023 WL 7689652, *5

(S.D.N.Y. 2023)) or "when all of the factual circumstances necessary to establish a right of action

have occurred".  *SpeedFit LLC v. LifeCore Fitness, Inc.,* 2023 WL 199595, *4 (S.D.N.Y. 2023).

Plaintiffs' only non-conclusory allegation about a misrepresentation by Lovo to any Plaintiff was

that Lovo told Lehrman and Sage "their voices would be used only for academic research purposes

and/or not for public use."  (Cplt. ¶¶188, 44-55, 76-82, 86).  These alleged misrepresentations

occurred in 2019 and 2020 (*id.*), which is more than three years prior to the filing of the Original

Complaint.  Thus, these claims are barred by the statute of limitations.

### 5.    Plaintiffs Do Not Allege a Cognizable Injury

 "An actual injury claim under [§§] 349 and 350 typically requires a plaintiff to allege that,

on account of a materially misleading practice, she purchased a product and did not receive the

full value of her purchase."  *Reyes v. Upfield US Inc*., 694 F. Supp. 3d 408, 420 (S.D.N.Y. 2023)

(citation omitted); *Duran v. Henkel of Am., Inc*., 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (same).

Plaintiffs do not allege they (a) are consumers; (b) purchased a product; and (c) did not receive

full value of their purchase.  *Reyes,* 694 F. Supp. 3d at 420; *Duran,* 450 F. Supp. 3d at 346.  Also,

Plaintiffs' alleged harm to John Doe are his exposure "to legal action for using LOVO-generated

voices of actors who did not give" permission to use their voices (Cplt. ¶219, 229).  But, "a 'threat

of harm is insufficient to impose liability against a defendant in a tort context.'"  *Wallace v. Health

Quest Systems, Inc.,* 2021 WL 1109727, *7 (S.D.N.Y. 2021).  These claims should be dismissed.

### V.    Lanham Act Unfair Competition and False Affiliation Claim Should Be Dismissed

Plaintiffs' claim (6th Cause of Action) for "Unfair Competition and False Affiliation"

violating "Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)" should be dismissed.  There is no

claim called "unfair competition and false affiliation".  But, "a claim under the Lanham Act for trademark infringement, unfair competition, and false designation of origin" requires that: (1) [plaintiff] owns a valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods" and there is no "specific [f]ederal cause of action for unfair competition".  *Camelot SI, LLC v. ThreeSixty Brands Group LLC,* 632 F. Supp. 3d 471, 480-81 (S.D.N.Y. 2022) (citation omitted). It requires an "ownership interest" in a mark.  *Camelot,* 632 F. Supp. 3d at 482.

Here, Plaintiffs' allegations fail.  They have not even alleged they own a valid mark entitled to protection under the Lanham Act for their voices.  Nor could they do so since a voice alone is not something to which can be protected under the Lanham Act.  *See, e.g., Booth v. Colgate-Palmolive Co.,* 362 F. Supp. 343, 349 (S.D.N.Y. 1973) (dismissing Lanham Act claim; "voice alone" cannot serve as a trademark); *cf. Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 62 (2d Cir. 2001) (trademark does not even provide "a performing artist a trademark or service mark in her signature performance.").  Thus, there is nothing to protect; nothing which may have been used without consent and which could create any confusion.  *Camelot,* 632 F. Supp. 3d at 482.  Also, in any event, there can be no claim for endorsement or affiliation of a voice that is anonymous or fictitious (like here). *See, e.g., Bondar v. LASplash Cosmetics,* 2012 WL 6150859, *7 (S.D.N.Y. 2012) ("the misappropriation of a completely anonymous face could not form the basis for a false endorsement claim, because consumers would not infer that an unknown model was 'endorsing' a product").

## VI.    Lanham Act False Advertising Claim (15 U.S.C. § 1125(a)) Should Be Dismissed

"To plead a claim for False Advertising under the Lanham Act, Plaintiff must allege standing, which is an element of the cause of action under the statute.  Plaintiff must also allege:

(1) a false or misleading statement; (2) in connection with commercial advertising or promotion that (3) was material; (4) was made in interstate commerce; and (5) damaged or will likely damage the plaintiff." *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 231 (S.D.N.Y. 2023).

The Supreme Court explains that Lanham Act standing means "a plaintiff must plead . . . an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014). A plaintiff who pleads they "should have been paid had Defendants operated through legal channels and paid her for her appearance in their advertisements" does not have standing for a false advertising claim as "[i]t does not constitute 'reputational' injury, nor does it flow 'from the deception wrought by the defendant's advertising,' nor is there any reason to believe that it would cause consumers . . . 'to withhold trade from the plaintiff.'" *Souza v. Exotic Island Enterprises, Inc.,* 68 F.4th 99, 119–20 (2d Cir. 2023) (quotation omitted).

Here, Plaintiffs have sought "all profits, gains, and advantages obtained during the execution" of this conduct as damages (Cplt. ¶250). This fails as it is neither reputational nor does it flow from any deception. Plaintiffs do not allege either Plaintiff was individually identified, or identifiable, and rather allege their identities were "stolen" (*id.* ¶4), and "misappropriated" under a "pseudonym" such as "Kyle Snow" or "Sally Coleman." (*id.* ¶¶24 108, 133, 93). This cannot suffice for "business reputation" damage as there is no alleged direct link to the *actual* reputation or name of either Plaintiff. Plaintiffs also have not plausibly alleged that Plaintiffs have lost any specific job, offer, or opportunity due to Defendant's actions, and instead, claim "[t]he voice-over industry is estimated to generate more than $2 billion annually in the United States" (*id.* ¶10), "[v]oice-overs" are "integral to various industries," (*id.* ¶11), and "[t]raditionally, actors are hired

to read scripts" (*id.* ¶12). This is not a specific pleading of a loss to Plaintiffs; Plaintiffs' claim should be dismissed for lack of standing. *See, e.g., PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, 629 F. Supp. 3d 116, 132 (S.D.N.Y. 2022) (allegation of diverting resources not "commercial harm"); *Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, *5 (S.D.N.Y. 2014) (no standing; speculative pleadings with no direct causal connection to harm or economic damages).

Nor have Plaintiffs plausibly alleged a material false or misleading statement in connection with advertising. The Second Circuit has explained "contested representations [must be] part of any organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry" is required. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56–58 (2d Cir. 2002) ("twenty-seven oral statements regarding plaintiff's products in a marketplace of thousands of customers" insufficient). Here, Plaintiffs core allegation of falsity are the several statements allegedly communicated directly to Lehrman and Sage via Fiverr in 2019/2020, regarding the ultimate use of their recordings (no other allegedly false statements to Plaintiffs) (Cplt. ¶¶45-55; 77-81). As previously noted, there remains no plausible allegation these were false. But, even if false, these are clearly not widely disseminated within the industry. The only other alleged false statement is the claim that on Lovo's website, Lovo states when users use Genny to generate synthetic voices, "they are purchasing the 'commercial rights' to use the cloned voices" (*id.* ¶¶36 n.8, 224-226). The allegation this statement is false is unsupported and conclusory (as described herein). But, even if false, it remains a single isolated statement allegedly at one location on the website and not widely disseminated. This is clearly insufficient. *See, e.g.*, *Chamilia, LLC v. Pandora Jewelry, LLC*, 2007 WL 2781246, *9 (S.D.N.Y. 2007) (six statements not "part of an organized campaign to penetrate the relevant market"); *Globe Cotyarn Pvt. Ltd. v.*

*Next Creations Holdings LLC*, 2020 WL 4586892, *4–5 (S.D.N.Y. 2020) (same; statements to "15 to 25" importers); *Navatar Grp., Inc. v. DealCloud, Inc.*, 2023 WL 1797266, *3 (S.D.N.Y. 2023).

**VII.    Unjust Enrichment Claims Should Be Dismissed**

An unjust enrichment claim "requires that Plaintiffs plead: 1) that the defendant benefitted; 2) at plaintiff's expense[;] and 3) that equity and good conscience require restitution." *Gilleo v. J.M. Smucker Co.*, 2021 WL 4341056, *9 (S.D.N.Y. 2021) (quotation omitted).  Unjust enrichment is "a quasi-contract claim" that "contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.'" *Georgia Malone & Co. v. Rieder,* 19 N.Y.3d 511, 516 (N.Y. 2012) (citation omitted).  "Unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y.*, Inc., 18 N.Y.3d 777, 790 (N.Y. 2012); it "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort". *Mahoney v. Endo Health Sols., Inc.,* 2016 WL 3951185, *11 (S.D.N.Y. 2016).  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.*  Courts will dismiss an unjust enrichment claim that "simply duplicates, or replaces, a conventional contract or tort claim." *Sheiner v. Supervalu Inc.,* 2024 WL 2803030, *8 (S.D.N.Y. 2024) (quotation omitted).

Plaintiffs' claim for unjust enrichment should be dismissed for many reasons.  ***First***, the claim is preempted by the pleading of Sections 50 and 51 of the New York Civil Rights Law. *See, e.g., Tarazi v. Truehope, Inc.,* 2017 WL 5957665, *15 (S.D.N.Y. 2017) ("the New York Civil Rights Law subsumes unjust enrichment claims for the unauthorized use of an image or likeness"); *see also Myskina v. Condé Nast Publ'ns, Inc*., 386 F. Supp. 2d 409, 420 (S.D.N.Y.2005) (same).  ***Second***, the unjust enrichment claim is duplicative of Plaintiffs' other claims.  *See, e.g., Sandoval v. Uphold HQ Inc.*, 2024 WL 1313826, *11 (S.D.N.Y. 2024) (dismissing unjust enrichment claim);

*Alce v. Wise Foods, Inc*., 2018 WL 1737750, *12 (S.D.N.Y. 2018) (unjust enrichment claim duplicative of GBL 349 and 350). **Third**, Plaintiffs have alleged an agreement with Lovo precluding an unjust enrichment claim. *See, e.g., Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 424 (S.D.N.Y. 2022) ("any" unjust enrichment claim "precluded as duplicative" of contract claim).

## VIII.    Conversion Claim Should Be Dismissed

Plaintiffs' claim for common law conversion (10th Cause of Action) of "their voice" allegedly by "cloning and then selling Plaintiffs' voices – as Kyle Snow, Sally Coleman" and other "pseudonyms" (*id.* ¶¶263-264) should be dismissed.  To plead a conversion claim, a plaintiff must allege "'[i] the property subject to conversion is a specific identifiable thing; [ii] plaintiff had ownership, possession[,] or control over the property before its conversion; and [iii] defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'"  *Brown v. Twitter, Automattic Inc.,* 2021 WL 3887611, *9 (S.D.N.Y. 2021) (quotation omitted).  Plaintiffs' conclusory claim for conversion fails.

**First**, there can be no such thing as conversion of a "voice", since voice is not a specific identifiable tangible thing.   Courts consistently dismiss conversion claims for similar non-specifically identifiable or tangible things.  *See, e.g., McClure v. Williams,* 2024 WL 4336777, *4 n.7 (E.D.N.Y. 2024) (no conversion as "plaintiff's parental rights are not a form of tangible or intangible property"); *Thomas v. Twitter Corporate,* 2023 WL 8452200, *5 (S.D.N.Y. 2023) ("tweeting does not create any 'thing'" for conversion); *BCRS1, LLC v. Unger,* 2021 WL 3667094, *9 (E.D.N.Y. 2021) (intellectual property not a "specific identifiable thing"); *Scroggins v. Scroggins,* 2017 WL 1047356, *9 (S.D.N.Y. 2017) (no conversion for copyrighted material).

**Second**, there is no adequate allegation Plaintiffs owned or ever possessed the Genny-generated voices of Kyle Snow or Sally Coleman.  Plaintiffs allege these are not their voices at all

but new AI-generated voices that were never owned or possessed by Plaintiffs.

**Third**, "the sole remedy for a plaintiff who claims that his or her ... name has been used without his or her consent is an action pursuant to §§ 50 and 51 of the Civil Rights Law." *Zoll*, 2002 WL 31873461, *16 (dismissing claims) (quoting *Maxwell v. N.W. Ayer, Inc.*, 605 N.Y.S.2d 174, 176 (N.Y. Sup. Ct. 1993)). "[C]ommon law claims' of conversion 'based on an unauthorized use of an attribute of identity,' . . . 'do[ ] not exist, other than under the Civil Rights Law.'" *Frost & Miller, LLP v. Heaven's Way Investment Trust, et. al.*, 2024 WL 4648015, *4 (S.D.N.Y. 2024).

**Fourth**, Plaintiffs do not allege Lovo exercised unauthorized dominion over Plaintiffs' voice "to the alteration of its condition or to the exclusion of the plaintiff's rights." *See, e.g., Fischkoff v. Iovance Biotherapeutics, Inc.,* 339 F. Supp. 3d 408, 414–15 (S.D.N.Y. 2018) (copying of electronic files not alleged to alter files or exclude from use); *Turret Labs USA, Inc. v. CargoSprint, LLC*, 2021 WL 535217, *6 (E.D.N.Y. 2021) (same for software); *see also Hyo Jung v. Chorus Music Studio, Inc.*, 2014 WL 4493795, *8 (S.D.N.Y. 2014) (no allegation "that at any point in time they did not have access to the information at issue"). The claim should be dismissed as no allegation Plaintiffs could not use or lost ownership of their voices or recordings.

**Finally**, the conversion claim should be dismissed as it is duplicative of and based on the same facts as the contract claim. A "claim for conversion cannot 'merely restate[ ] its cause of action to recover damages for breach of contract' without 'alleg[ing] a separate taking.'" *Vekaria v. Mthree Corporate Consulting, Ltd.,* 2024 WL 4337542, *16 (S.D.N.Y. 2024) (conversion claim dismissed); *see also Novick v. AXA Network, LLC*, 714 F. App'x 22, 24 (2d Cir. 2017).

## IX.    Fraud Claim Should Be Dismissed

Plaintiffs' fraud claim should be dismissed because the alleged "fraud" was an alleged misrepresentation of a future intent not to perform a contract. Here, Plaintiffs allege Lovo made a

contract with each of them but intended not to honor that contract. But, there is no "claim for fraud if the only alleged misrepresentation is of a future intent to perform under a contract." *Freedom Mortgage Corporation v. Tschernia,* 2021 WL 1163807, *6 (S.D.N.Y. 2021); *see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 19 (2d Cir. 1996) ("intentionally-false statements ... indicating intent to perform under [a] contract" are not fraud); *Lomaglio Assoc., Inc., v. LBK Mktg. Corp.,* 892 F. Supp. 89, 94 (S.D.N.Y.1995) (no fraud where allegation "relates to a breach of contract.'"); *Hanft Byrne Raboy & Partners, Inc. v. Matsushita Elec. Corp. of America,* 2001 WL 456346, *5 (S.D.N.Y. 2001) (same). This is true even if the contract claim should also be dismissed. *Id.* at *5-7 (both fraud and contract claims dismissed).

Also, Plaintiffs' fraud claim must meet the heightened Rule 9 standard requiring a plaintiff to allege "the who, what, when, where, and how" *Silvester v. Selene Fin., LP,* 2021 WL 861080, *2 (S.D.N.Y. 2021) (quotation omitted). Plaintiff must "'allege facts that give rise to a strong inference of fraudulent intent.'" *Twohig,* 519 F. Supp. 3d at 166 (quotation omitted). Plaintiffs do not meet this standard. Plaintiffs' allegations of fraud are sparse. Plaintiffs allege the fraud consisted of the alleged misrepresentations made to them in 2019/2020 on Fiverr about the use of their recordings (Cplt. ¶¶45-54, 77-80, 267-68). They allege that (a) Lovo knew the "voice recordings would be used for promotion of Lovo's services and as available voice options" on the website (*id.* ¶268); (b) "intended to defraud the Voice Actor Plaintiffs" (*id.* ¶270); (c) Plaintiffs "reasonably relied" on alleged misrepresentations (*id.* ¶271); and (d) Plaintiffs "were damaged by these misrepresentations" (*id.* ¶272). These bare recitations of the elements are insufficient. *See Inspired Cap., LLC v. Conde Nast*, 803 F. App'x 436, 440 (2d Cir. 2020) (dismissing fraud claim). Some of the allegations also are contradicted by or made implausible by other allegations.

As noted herein, Plaintiffs do not actually plausibly allege the particular recordings made and uploaded to Fiverr were ever used publicly other than in one 2020 investor presentation (but that is not part of the fraud claim as Sage did not learn of it until later (*id.* ¶¶ 85-87)).  Plaintiffs acknowledge the AI-generated voices or clones that are the basis for the fraud claim are *not* the recordings they previously made.  Also, there is no claim Plaintiffs were told their recordings would not be used internally for training AI.  The material misrepresentation claim is not plausible.

Plaintiffs' allegation of reliance is also perfunctory and flawed as the allegations (the communications) show no reliance.  Nor are there alleged facts from which one could reasonably infer intent to defraud as there is no specific allegation the recordings were ever intended to be used other than as discussed.  Nor do Plaintiffs adequately allege they would have been paid more for some other use of their recordings (Plaintiffs allege they did not even know what speech synthesis was in 2019/2020 (Cplt. ¶57)).  These allegations are too threadbare to meet the Rule 9 standard.  *See, e.g., Morales v. Apple, Inc.,* 2023 WL 5579929, *4 (S.D.N.Y. 2023) (insufficient fraudulent intent allegations); *Wargo v. Hillshire Brands Co*., 599 F. Supp. 3d 164, 178 (S.D.N.Y. 2022) (inadequate to claim defendant "knew its statements were neither true nor accurate and misled consumers"); *Twohig,* 519 F. Supp. 3d at 166 (did not "plead facts that give rise to a strong inference of fraudulent intent."); *Gilleo,* 2021 WL 4341056, *9 (fraud dismissed).

## X.    Breach of Contract Claim Should Be Dismissed

Plaintiffs claim for breach of contract on behalf of Lehrman and Sage (12th Cause of Action) should be dismissed.  Importantly, Plaintiffs do not plead there is a signed written agreement or an oral agreement between Lovo and Lehrman or Lovo and Sage.  Instead, Plaintiffs allege "Lehrman and Sage each had a contract with Defendant by virtue of their agreements to supply audio recordings to Defendant LOVO" (Cplt. ¶275).

For a breach of contract claim, Plaintiff must plead plausible facts to support (1) the existence of an agreement, (2) plaintiffs' performance, (3) defendant's failure to perform, and (4) damages resulting thereby. *Johnson v. Nextel Commc'ns, Inc*., 660 F.3d 131, 142 (2d Cir.2011). The existence of an agreement depends upon allegations demonstrating, *inter alia*, the parties' mutual assent to terms of such agreement. *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 427 (2d Cir. 2004) ("mutual assent is essential to the formation of a contract" and no contract "if there was no assent or acceptance."); *see also Annabi v. New York University,* 2023 WL 6393422, *6 (S.D.N.Y. 2023) ("enforceable contract" requires "'an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound' . . . . Mutual assent is manifested in 'a meeting of the minds.'")(citations omitted). Plaintiffs have not alleged a breach of contract claim for any Plaintiff.

*First*, there is no plausible allegation of a binding contract between Lehrman and Lovo with an offer, acceptance, consideration, mutual assent, and an intent to be bound. The alleged "agreement" with Lehrman based on an "inquiry" made to Lehrman about providing "voice recordings for 'research purposes'" on the "Fiverr website by . . . User25199087" (*id.* ¶¶45-46). Plaintiffs allege there were additional "communications" "via Fiverr" related to how User25199087 would use the audio recordings, including a statement by User25199087 that the recordings "will be used for research purposes only" (*id.* ¶¶47-50). These paragraphs do not plausibly describe terms of an offer and unambiguous acceptance of terms between Lovo and Lehrman; Lehrman did not even have any idea of the identity of User25199087. The inquiry is only described as providing "voice recordings for research purposes" without anything else (like payment or other terms) and no allegation of acceptance of any agreement (or payment) or even the purpose or mutual assent or intent to be bound. Thus, these communications do not plausibly

allege a binding contract.  *See, e.g., ISS Facility Services, Inc. v. Fedcap Rehabilitation Services, Inc.,* 2021 WL 2784550, *6 (S.D.N.Y. 2021) ("email communications make implausible" an agreement "over sufficiently definite terms to constitute an enforceable contract here").

*Second*, there also is no plausible allegation of a binding contract between Sage and Lovo with an offer, acceptance, consideration, mutual assent, and an intent to be bound.  Plaintiffs allege Sage also "received a message on the Fiverr platform from 'tomlsg' offering her a contract to produce and record test scripts for radio ads" (*id.* ¶76).  But, there is no other allegation about any "contract".  Rather, Plaintiffs allege Sage asked tomlsg about the use of the recordings and was told via Fiverr they are "test scripts for radio ads" and will "not be disclosed externally" and "will not require rights of any sort" (*id.* ¶78).  At that time, Sage did not know the identity of "tomlsg".  Plaintiffs further allege "Sage accepted the job" but Plaintiffs do not allege what were all the material terms (including whether any money would be paid), or acceptance, or mutual assent or intent to be bound.  These communications do not plausibly allege a binding contract.

*Third*, even if there is an allegation of a contract, there is no allegation that use of the recordings was a part of the "contract".  Plaintiffs allege question about use of the recordings for both Lehrman and Sage were communicated after the offer but not that it was part of the offer; nor is it alleged to have been part of any acceptance.  Thus, usage was not part of any alleged contract.

*Fourth*, since the use is alleged to be part of the contract, and that obligation lasted more than one year, the contract is subject to the Statute of Frauds.  *See* N.Y. Gen. Oblig. Law § 5-701 (McKinney) (a writing required for contracts which  are "not to be performed within one year from the making thereof").  To satisfy the Statute of Frauds, the writing "must designate all parties, identify and describe the subject matter and state all of the essential terms of a complete

27

agreement". *Carruthers v. Flaum*, 450 F. Supp. 2d 288, 308 (S.D.N.Y. 2006) (dismissing claim); *see also Vioni v. Am. Cap. Strategies Ltd.,* 2009 WL 174937, *3–4 (S.D.N.Y. 2009) (same). Plaintiffs' allegations do not do this; in fact, the alleged writings do not even allegedly identify all parties not to mention all material terms, and these claims should be dismissed.

**XI.    All Copyright Infringement Related Claims Should be Dismissed**

Plaintiffs bring three different copyright claims generally pursuant to the Copyright Act, 17 U.S.C. §101 *et seq*. (the 13th-15th Causes of Action): (a) for direct copyright infringement by Sage for alleged use of a part of one her actual copyrighted recordings (only 4 seconds – 2:14-2:18 - of the 5+ minute presentation appears to be from a Sage recording) in 2020 presentations and in videos on Lovo's YouTube channel (Cplt. ¶¶24, 286-291, 88-92); (b) for direct copyright infringement by using Lehrman's and Sage's copyrighted recordings to train the AI voice generator and to create clones of their voices (*id.* ¶302); and (c) for contributory infringement since Lovo allegedly "induced, allowed, and encouraged other third parties to infringe on Plaintiffs Lehrman and Sage's copyrighted works" (*id.* ¶310).   Plaintiffs do not identify which type of alleged Section 106 infringement occurred or which specific recordings were allegedly infringed. All Copyright claims should be dismissed as explained below.  Even so, the copyright claim here preempts all state law claims.  *Mourabit v. Klein*, 393 F. Supp. 3d 353, 359–61 (S.D.N.Y. 2019).

**1.    Lovo Had the Right to Use the Recordings Per the Fiverr Terms of Service**

Plaintiffs allege they agreed to upload sound recordings through the Fiverr platform (*e.g.,* Cplt. ¶¶44-55, 76-85).  Plaintiffs allege "Fiverr.com ("Fiverr") is an online marketplace that connects freelancers with clients looking for digital and creative services".  Fiverr, like most such platforms and websites, has its own terms of service.  The Fiverr Terms of Service in 2019 and 2020 provide Lovo (the Buyer) with a license to use any copyrighted material purchased via Fiverr

(Berg. Ex. 4, p. 14; Ex. 5, p. 13).  The general license in the Fiverr Terms of Service provides for most situations that "when the work is delivered, and subject to payment, the Buyer is granted all intellectual property rights, including but not limited to, copyrights for the work delivered from the Seller, and the Seller waives any and all moral rights therein."  *Id.*  For "Voice-Over Gigs", the Fiverr Terms of Service provide that "when the work is delivered, and subject to payment, the Buyer is purchasing basic rights, (which means the Buyer is paying a one time fee allowing them to use the work forever and for any purpose except for commercials, radio, television and internet commercial spots)" and an option is provided to purchase extra rights.  *Id.*  Thus, Lovo had the right to use Lehrman's and Sage's copyrighted sound recordings for all alleged uses.  Presenting the court with a license on a motion to dismiss is "a complete defense to a copyright infringement claim".  *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 121 (S.D.N.Y. 2015); *see also Business Casual Holdings, LLC v. YouTube, LLC,* 2022 WL 8375962022, *3 (S.D.N.Y. 2021) (dismissing claim due to terms of service license).

2.    **Plaintiffs Failed to Register All Copyrights Prior to Commencing this Action**

Plaintiffs did not register their copyrights prior to commencing an action with an infringement claim.  *See* 17 U.S.C. §411(a) (precluding suit "until preregistration or registration of the copyright claim has been made"); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) (registration is like "an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights").  Claim will be dismissed when "the allegedly infringed work, . . .  was not registered at the time the original complaint was filed." *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019); *see also Malibu Media, LLC v. Doe*, 2019 WL 1454317, *3 (S.D.N.Y. 2019) (same); *Iantosca v. Elie Tahari, Ltd.*, 2020 WL 5603538, *3 (S.D.N.Y. 2020) (not registering "in advance of filing suit cannot be cured

through amendment" and "warrants dismissal"). Plaintiffs here allege the copyrights were registered between June and August 2024 (Cplt. ¶¶56, 83), after filing the Original Complaint (ECF 1); thus, the Copyright claims should be dismissed.

### 3.    Claims Related to 2020 Uses Are Barred by the Statute of Limitations

The statute of limitations for copyright infringement claims is three-years after the claim accrued. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014) (*citing* 17 U.S.C. §507(b)). The claim accrues when the copyright holder "discovers, or with due diligence should have discovered, the infringement." *Id.* Here, Plaintiffs allege Sage's actual recording was used in 2020 at a SkyDeck investor presentation and at the 2020 CES Tech Conference and was then posted online (Cplt. ¶¶88-92, 286-289). Thus, these alleged 2020 acts of infringement occurred more than three years before May 2024 before the OC was filed. Plaintiffs allege all were posted online, and Sage should have discovered them. These infringement claims should be dismissed.

### 4.    Direct Infringement Claims Fail

Independently, Plaintiffs 13th (Sage) and 14th (Sage and Lehrman) claims for direct infringement should be dismissed. The elements of a direct infringement claim are: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991). "To satisfy the second element, a plaintiff must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work." *Abdin v. CBS Broad. Inc*., 971 F.3d 57, 66 (2d Cir. 2020) (citation omitted). "The word 'copying' is shorthand for the infringing of any of the copyright owner's ... exclusive rights ... described in § 106." *Arista Recs., LLC v. Doe 3,* 604 F.3d 110, 117 (2d Cir. 2010). A plaintiff must allege "(1) which specific original works are

the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright". *Cole v. John Wiley & Sons, Inc*., 2012 WL 3133520, *11 (S.D.N.Y. 2012) (quotation omitted) (claim dismissed).

Plaintiffs seem to allege three types of direct infringement:  (1) alleged public use of a snippet of Sage's "actual" unidentified recording in two 2020 investor presentations and two videos on YouTube (Cplt. ¶¶289-90, 86-91 (2020 SkyDeck Demo); ¶¶92, 289 (2020 CES Tech); ¶¶291, 24 (2020 Love Your Voice Video)) ("Actual Recording Claims"); (2) Using the actual sound recordings to train Lovo's AI voice generator (*id.* ¶¶58-59, 109, 133, 139, 157-58) ("Training AI Claims"); (3) the use, creation, or output of the "cloned" versions of what they claim sounds like their voices (*id.* ¶¶22-24, 63-75, 93-96, 100-109, 177-180, 302) ("AI Output Claims"). All these claims fail for the following independent reasons.

***First***, the allegations of infringement are general and conclusory.  Plaintiffs do not allege what type of copyright Lehrman and Sage obtained (the Copyright Office documents show they are registered as "sound recordings" (Berg. Ex. 1-3)) or what aspect of the recordings are copyrightable.  Statutorily, the exclusive rights for a sound recording are limited to "the right to duplicate the sound recording in the form of phonorecords or copies that directly or indirectly recapture the actual sounds fixed in the recording," "the right to prepare a derivative work in which the actual sounds fixed in the sound recording are rearranged, remixed, or otherwise altered in sequence or quality," the right "to distribute copies or phonorecords of the copyrighted work," and the right "to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 114 (a), (b); 17 U.S.C. § 106(1), (2), (3), (6).  Plaintiffs do not allege which Section 106

rights are infringed. Other than perfunctory allegations in paragraphs 292 and 303 (and descriptions of cloning), Plaintiffs do not allege with these specific words that Lovo copied, reproduced, distributed, displayed, performed, or used a digital audio transmission of any copyrighted work. *See Brought to Life Music, Inc. v. MCA Records, Inc.,* 2003 WL 2986561, *1 (S.D.N.Y. 2003) (no allegation defendant "(i) reproduced [her] work; (ii) prepared derivative works based on [her] work; (iii) distributed copies of [her] work to the public for sale; or (iv) performed [her] work publicly"); *Scroggins,* 2017 WL 1047356, at *9 (same).

Also, Plaintiffs do not identify which of the copyrighted recordings were allegedly infringed. For example, in the 2020 SkyDeck presentation, Plaintiffs allege Lovo used "a recording of her actual voice" from those provided in 2020 (Cplt. ¶86) but do not identify which one was used or how it was being used. This is another basis for dismissal. *See, e.g., Palmer Kane LLC v. Scholastic Corp*., 2014 WL 1303135, *3 (S.D.N.Y. 2014 (no allegation of which specific photograph was infringed); *Mahnke v. Munchkin Prod., Inc.,* 2001 WL 637378, *5 (S.D.N.Y. 2001) (no allegations of "what acts" of infringement occurred, and did not "identify those specific product … or particular elements of the products" are infringing").

**Second**, there is no plausible allegation of direct infringement for the Actual Recording Claims. For example, the 2020 CES Tech video itself (Cplt. ¶92 n.16) makes clear it had AI-generated voices: "Yeah, that was a Computer" (at 4:23-24 of the video), not actual recordings. Similarly, Plaintiffs allege the Love Your Voice Video contains "5 speakers whose voices have been cloned to perfection" (*id.* ¶¶291, 95). Thus, both of these are clearly AI Output Infringement Claims (discussed *infra* p. 34). The only remaining alleged example of an Actual Recording Claim is the 2020 SkyDeck presentation. But, Plaintiffs have not identified which copyrighted recording

was used, how much of it was used or whether the part used was copyrightable.  In fact, the video

(Cplt. ¶89 n.14) is 5+ minutes of a Lovo representative speaking and playing a short recording

comparing snippets of human voice recordings with snippets of cloned recordings.  Plaintiffs

allege one of these snippets (4 seconds/13 words) was from one of Sage's copyrighted recordings.

This is not a plausible allegation of sound recording infringement.  Also, the only exclusive sound

recording right for public performance is "by means of a digital audio transmission" (17 U.S.C. §

114(a)), not alleged here.  *See, e.g., Richards v. Warner Music Grp.*, 2024 WL 4307994, *4

(S.D.N.Y. 2024) (no allegation of public performance "by means of a digital audio transmission").

There is also no plausible allegation of creation of a derivative work or substantial similarity.  For

example, despite Plaintiffs' claims, a voice alone is not generally copyrightable. *See, e.g., In re

Jackson*, 972 F.3d 25, 47 (2d Cir. 2020) (even "the recognizable sound of [Jackson]'s voice . . . is

not within the subject matter of copyright."); *see also Melendez v. Sirius XM Radio, Inc.*, 50 F.4th

294, 303-04 (2d Cir. 2022); *Facenda v. N.F.L. Films, Inc.,* 542 F.3d 1007, 1027-28 (3d Cir. 2008)

("voice is not copyrightable").  Also, the words of the scripts were allegedly provided by Lovo

and are not protected.  Thus, the Actual Recording Claims should be dismissed.

*Third,* there is no plausible allegation of direct infringement for the Training AI Claims.

Using the actual recordings to train AI does not violate 17 U.S.C. §106(1), (2), (3), and (6) (the

relevant provisions for infringement of sound recordings per 17 U.S.C. §114).  There is no

allegation of copying, creating a derivative work, distributing copies to the public by sale or

performing publicly via digital audio transmission.  Nor is it reasonable to think any of those were

involved in training AI, which is an internal action.  Additionally, even if there were otherwise an

issue, training AI would constitute fair use.  *See Yang v. Mic Network, Inc.,* 405 F. Supp. 3d 537,

548 (S.D.N.Y. 2019) (dismissing infringement claim as fair use).

**Fourth,** there is no plausible allegation of direct infringement for the AI Output Claims. Section 114 provides that the rights in a sound recording "do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording." 17 U.S.C. § 114(b).  Thus, a clone or AI-generated voice imitating or simulating the sound of a voice in a sound recording is not protected and cannot support a claim of infringement.  As noted *supra* (p. 33), voices alone are not copyrightable, and replicating voices cannot be infringement. The Copyright Office has explained "Copyright does not, however, protect an individual's identity . . . A replica of their image or voice alone would not constitute copyright infringement." "Copyright and Artificial Intelligence" at https://www.copyright.gov/ai/Copyright-and-Artificial-Intelligence-Part-1-Digital-Replicas-Report.pdf.  The AI Output Claims should be dismissed.

### 5.  "Contributory" Infringement Claim Should Be Dismissed

Plaintiffs' 15th cause of action for contributory infringement must be dismissed.  As shown *supra*, the direct infringement claims fail. "Without a showing of a direct copyright infringement, secondary liability cannot be maintained".  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018); *Faulkner v. National Geographic Enterprises Inc.,* 409 F.3d 26, 40 (2d Cir. 2005) ("no contributory infringement absent actual infringement").  Also, for contributory infringement, a plaintiff must allege a party with "knowledge of the infringing activity[ ] induce[d], cause[d], or materially contribut[ed] to the infringing conduct of another." *Arista*, 604 F.3d at 117–18.  An allegation of "merely" providing "the means to accomplish an infringing activity" is insufficient. *Livnat v. Lavi*, 1998 WL 43221, *3 (S.D.N.Y. 1998) (citation omitted).  Participation "must be substantial" and he "must have acted in concert with the direct infringer.'" *Brought to*

*Life Music, Inc.,* 2003 WL 296561, at * 2 (citation omitted). Plaintiffs have not alleged this here.

**XII.    Unfair Competition Claim Should Be Dismissed**

Plaintiffs' "unfair competition" claim (16th Cause of Action) is unclear; Lovo assumes it is a claim for unfair competition under New York law.  But, "a common law unfair competition claim is identical to a Lanham Act claim, save for the additional requirement that plaintiff show defendant's bad faith".  *Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*, 2011 WL 6600267, *9 (S.D.N.Y. 2011) (dismissed); *Avon Prod., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997) (standards for claim per § 43(a) of the Lanham Act "are substantially the same as those applied to claims brought under the New York common law for unfair competition and §§ 349 and 350 of the New York General Business Law.").  "Bad faith" refers to an intent to cause confusion. *See KatiRoll Co. v. Kati Junction, Inc*., 33 F. Supp. 3d 359, 368 (S.D.N.Y. 2014).

Here, as explained *supra*, Plaintiffs claims under § 43(a) of the Lanham Act and GBL 349 and 350 should be dismissed.  For these reasons, Plaintiffs have not adequately alleged a claim for unfair competition.  Also, Plaintiffs have not adequately alleged bad faith and an intent to create confusion.  The voice clones are also not identified with any Plaintiff and are marketed under different names; it is not plausible Lovo intentionally attempted to create confusion or there was likelihood of confusion.  Plaintiffs' unfair competition claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully asks this court to grant Defendant's Motion to Dismiss the Complaint in its entirety with prejudice.

Dated: November 25, 2024                                      RIMÔN, P.C.
       New York, New York

                                        By:    */s/Michael S. Lazaroff*
                                           Michael S. Lazaroff

100 Park Avenue, 16th Floor
New York, New York 10017
646-738-4151
michael.lazaroff@rimonlaw.com

David E. Case
800 Oak Grove Avenue, Suite 250
Menlo Park, California 94025
408-512-2239
david.case@rimonlaw.com

William W. Bergesch
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479 – 6300
william.bergesch@rimonlaw.com

*Attorneys for Defendant Lovo, Inc.*