**POLLOCK | COHEN LLP**
111 BROADWAY, SUITE 1804
NEW YORK, NY 10006
(212) 337-5361

*CONTACT:*
Steve Cohen
SCohen@PollockCohen.com
(917) 364-4197

---

December 27, 2024

**VIA ECF**

Hon. J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square, Room 2101
New York, NY 10007

      Re:   *Lehrman, et.al. v. Lovo, Inc.*, Case No. 24-cv-03770-JPO
            Opposition to Defendant's Letter Motion to Stay Discovery

Dear Judge Oetken:

    We represent the plaintiffs in the above referenced matter. We submit this letter in opposition to Defendant's letter motion of December 23, 2024 seeking a stay of discovery (the "Letter").

    While it is not surprising that Defendant's counsel wants to stay discovery – or even that they assert that every single one of Plaintiffs' counts is meritless – it is disappointing that counsel seems to misunderstand both the facts and the law. The standard and burden on Defendant for staying discovery is fairly rigorous, and we will address some of the reasons why Defendant fails to meet its burden; and conversely why Plaintiffs establish a cogent case whereby discovery should move ahead.

**Legal Standard**

    "Courts consider the following factors when determining whether a stay of discovery is appropriate during the pendency of a dispositive motion: (1) "[w]hether the defendant has made a strong showing that the plaintiff's claim is unmeritorious"; (2) "[t]he breadth of discovery and the burden of responding to it"; and (3) "[t]he risk of unfair prejudice to the party opposing the stay." *Morien v. Munich Reinsurance America Inc.*, 270 F.R.D. 65, 66–67 (D.Conn. 2010).

    Further, the burden is on the moving party: "the Court follows the standard requiring the movant to establish good cause for granting a stay, which includes a showing that no prejudice will attend the party opposing the motion." *Mirra v. Jordan*, 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016).

**Discarding the Flotsam & Jetsam**

    Defendant's counsel complains that in response to Defendant's first motion to dismiss, "rather than oppose that motion to dismiss, Plaintiffs on August 7 requested

Judge Oetken
December 27, 2024
Page 2 of 5

permission to file an amended complaint (ECF 18), which was granted." Indeed. Our filing of a First Amended Complaint was in response to Your Honor's Individual Rule D(ii), and after a meet-and-confer with Defendant's counsel on August 1, 2024.

Defendant's kvetching continues to include the length of both the initial Complaint and the First Amended Complaint ("FAC"). The FAC is long, detailed, specific, and includes 16 causes of action. That is because Defendant's actions are egregious, well-documented, and cross so many legal boundaries.

### Defendant Misunderstands Multiple Facts, Laws, and Claims

**Breach of Contract Claim**. Defendant's Motion to Dismiss (MTD) the breach of contract claim and its letter seeking a stay of discovery are reminiscent of the penultimate scene in Roman Polaski's great film *Chinatown*, where Faye Dunaway exclaims, "She's my sister, she's my daughter, she's my sister…"

Defendant's letter questions whether a contract existed between the Plaintiffs and Lovo; or with Fiverr, a marketplace like AirBnb for actors, artists, and creative talent. In its MTD, Defendant goes on at great length discussing Fiverr's terms of service, and argues that Lovo thereby acquired all the rights it needed to exploit Plaintiffs' voices as it wished. On the one hand, Defendant suggests there was no contract with Lovo. But on the other hand, counsel says that Lovo somehow benefits from Fiverr's terms of service. Importantly, however, Defendant quotes from the wrong section of Fiverr's terms of service.

The FAC details what Lovo contracted for – through Fiverr – with Mr. Lehrman and Ms. Sage. Electronic messages via the Fiverr site were exchanged between the Plaintiffs and people subsequently identified as Lovo employees. The communications explicitly laid out what would be delivered, how much Mr. Lehrman and Ms. Sage would be paid upon delivery of the "audio assets" (voice recordings), and the limited uses of the recordings. The recordings were delivered and Lovo paid Mr. Lehrman and Ms. Sage. But Lovo used the recordings in ways far outside what was agreed upon. The details are well pled in the FAC, and constitute the elements of a contract. Whether Lovo breached that contract is an issue for a jury.

**Violations of New York Civil Rights Law §§ 50, 51.** Defendant's most peculiar argument in the MTD involves New York Civil Rights Law Sections 50 and 51. Section 50 states:

> A … corporation that uses for advertising purposes, or for the purposes of trade, the … **voice** of any living person without having first obtained the written consent of such person, or if a minor of such minor's parent or guardian, is guilty of a misdemeanor. (Emphasis added.)

Judge Oetken
December 27, 2024
Page 3 of 5

With the skill of a carnival contortionist, Defendant argues that "this statute does not prohibit use of digital replicas or Lovo's use of the recordings." (MTD at 2.) Defendant argues that the statute only prohibits "digital replicas" with respect to the deceased. Section 50-f of the statute carves out clear protection for deceased actors and uses the phrase "digital replicas." The legislature did not intend, nor does the law say, that the protections concerning voice in Section 50 are somehow repealed by Section 50-f – by the inclusion of a special protection for the deceased. (It is also ludicrous. Are those protections limited to analog reel-to-reel tape recordings or vinyl records?)

Defendant is also fundamentally wrong in saying that Lovo is protected from the consequences of Sections 50 and 51 because they are outside the one-year statute of limitations. (Letter and MTD at 8.) MIT Professor Simon Johnson used Lovo's Genny technology to clone Mr. Lehrman's voice in the Deadline Strike Talk podcast that first aired on or about June 13, 2023. The Complaint detailing this improper use of Mr. Lehrman's voice was filed on May 16, 2024 – within the one-year statute of limitations.

**Copyright Infringement**. There are three very different copyright infringement claims. Unlike Defendant's counsel who asserts that Your Honor "is likely to successfully dismiss all 16 causes of action" (Letter at 1, paragraph 2), I am not so sure all of our copyright infringement causes of action will not survive. At least one of them is at the cutting edge of law and technology: can a copyrighted recording be used to train an AI system that may use just a bit or a byte of the protected work? Plaintiffs will argue in their opposition brief that such usage is a copyright infringement – as will smarter lawyers representing *The New York Times*, the music industry, and The Intercept – among others.

Conversely, Ms. Sage's copyright infringement claim based on Lovo's use of her exact recording in its investor pitch – without permission – is a prima facie infringement. Defendant notes in the Letter that, "These recordings then were allegedly used by Lovo … in a few isolated instances [to]make a presentation." Those "isolated instances" were investor presentations where Lovo played Ms. Sage's actual (copyrighted) recording; and then played a Genny-created clone of Ms. Sage's voice saying the same words. Those "few isolated instances" helped Lovo raise some $14 million in investor capital. Moreover, that presentation remained up on Lovo's YouTube channel for several years.

**The Lanham Act Claims**. The purpose of the Lanham Act is to protect people – consumers, professionals, and artists – from confusion because of false or misleading descriptions or representations. Defendant asserts our Lanham Act claims will fail because there is no trademark: "voice" itself is not trademarkable outright and the voices are not identified or connected to Plaintiffs." (Letter at 3.) Among other things, we will argue Plaintiffs' professional, identifiable voice is protected by the Lanham Act.

Judge Oetken
December 27, 2024
Page 4 of 5

**The GBL §§ 349 and 350 Claims.** The FAC details <u>many</u> deceptive business practices that Lovo has engaged in over the past few years. Rather than restate them here, we will argue in our opposition papers that these are precisely the sorts of acts that the legislature had in mind when it passed §§ 349 and 350.

**The Conversion Claim.** Defendant makes a rather confusing assertion in its Letter: "the conversion fails since a "voice" is not a tangible thing which can be converted, plaintiffs never possessed their recordings or alleged that they were excluding from using them." (Letter at 3.) Are they suggesting that a crook could take a copy of Microsoft Word, clone it, and sell it as his own because it is not tangible? Or that someone could hack Bitcoin and resell it without consequence? I am equally puzzled by Defendant's statement that "Plaintiffs never possessed their recordings…" (Letter at 3.) Of course, Plaintiffs didn't possess them; Lovo did – and sold them!

## Prejudice to Plaintiffs

Plaintiffs will be prejudiced by any delay in discovery. One of the key areas of discovery is finding out to whom Lovo licensed the Plaintiffs' voices under the Kyle Snow and Sally Coleman pseudonyms; and where and how many times those voices were used. This is not just to assess damages, but a damage-control emergency. Mr. Lehrman and Ms. Sage's professional careers are in jeopardy by not knowing who used their voices. Defendants claimed they removed the Snow and Coleman voices, but the FAC details that the voices remained up and available longer. Plaintiffs need to know they were *actually* removed, and when.

Plaintiffs are also prejudiced by the continued delay in discovery because Defendant has already destroyed evidence – after being instructed by prior counsel to preserve all evidence. The electronic exchanges between Ms. Sage and "tomlsg" on the Fiverr platform were removed.

## The Discovery Requests Are Not Unduly Burdensome

As Defendant's counsel has pointed out, Plaintiffs have made 47 document requests. For a company that has raised tens-of-millions of dollars in venture capital – much of it on the backs of Plaintiffs – and as of this morning boasted more than two million customers, requesting just 47 categories of documents is a perfectly reasonable. Defendant takes issue with "request 24, 'All marketing plans.'" (Letter at 4.) Is it not appropriate to discover what role Kyle Snow and Sally Coleman had in marketing the Lovo service? Or the role of the barely-disguised celebrity voices such as Joe Rogain, Cocoon O'Brien, and Samantha OS?

Defendant protests our request for "metadata or logs associated with the audio files or voice data, including timestamps, file names, and usage data that could help identify how and when Plaintiffs' voices were incorporated into the LOVO voice

Judge Oetken
December 27, 2024
Page 5 of 5

generator." (Letter at 5.) We are not asking for source code; we are trying to find out how Defendant exploited our clients' voices. The parties are likely to narrow their respective requests during a meet and confer. Lovo, a tech company, would not be burdened by producing this digital information. Plaintiffs' requests are specific and directly tied to key issues in the case: how, when, and to what extent LOVO used Plaintiffs' voices. Seeking information about how much money Lovo made exploiting Plaintiffs' voices and brands is not a fishing expedition; it is Discovery 101.

The Court noted in *Mirra v. Jordan*: "That the plaintiff made 119 document demands, **by itself, does not demonstrate that the plaintiff's document requests are voluminous and burdensome**, since that is not an unusual number of requests in an action such as this one… The defendant's **vague and conclusory contentions** are not sufficient to establish that the plaintiff's discovery requests are voluminous and burdensome." 2016 WL 889559, at *2 (emphasis added).

## Conclusion

It is not surprising that Lovo wants to stay discovery. That is not just a standard part of Big Law's defense playbook; it is particularly telling here. Lovo has become the poster child for many of the ills and excesses of Big Tech. That is perhaps why *The New York Times* devoted more than a full page to the suit and featured it on its front page. Lovo's behavior – detailed, documented, and depressing – is spelled out in the FAC.

We do not presume that we will prevail on all counts. But we are confident many of them will survive Defendant's motion to dismiss. Plaintiffs' case is certainly not "unmeritorious." The "breadth of discovery and the burden of responding to it" is not at all disproportionate to the issues at hand. But the prejudice to the Plaintiffs of delaying discovery grows more serious every day. We respectfully request that Your Honor deny Defendant's request for a stay of discovery.

Thank you for your consideration in this matter.

Sincerely,

/s/ *Steve Cohen*

Steve Cohen

POLLOCK | COHEN LLP