**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL LEHRMAN and LINNEA SAGE, on behalf of themselves and all others similarly situated, and JOHN DOE and others similarly situated, | No. 1:24-cv-03770 |
| Plaintiffs, | |
| v. | |
| LOVO, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT......................................................................................................... 6

   I.   Standard of Review.................................................................................. 6

   II.   The New York Civil Rights claim is properly pleaded............................................ 7

   III.   Plaintiffs have adequately alleged claims under New York General Business Laws §§ 349 and 350.................................................................. 13

   IV.   Plaintiffs adequately allege claims under two distinct prongs of Lanham Act § 43(a). .................................................................................. 16

      a) Plaintiffs adequately plead their § 43(a)(1)(A) unfair competition and false affiliation claims................................................................... 17

      b) Plaintiffs sufficiently allege falsity under § 43(a)(1)(B)......................... 19

      c) Plaintiffs sufficiently allege injury under § 43(a)(1)(B). ....................... 20

   V.   Plaintiffs' unjust enrichment claim is pled in the alternative. ........................... 22

   VI.   The conversion claim is adequately pleaded. ............................................. 23

   VII.   Plaintiffs' fraud claim is adequately alleged. ........................................... 26

   VIII. The breach of contract claim is adequately pleaded. .................................... 27

   IX.   Plaintiffs adequately state their copyright infringement claims........................ 30

      a) Plaintiffs meet the elements required to plead copyright infringement............... 31

      b) Defendant fails to justify its infringing activity................................... 33

CONCLUSION ................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**

*Adson5th, Inc. v. Bluefin Media, Inc.,*
    2017 WL 2984552 (W.D.N.Y. July 13, 2017) .................................................................... 29

*Aghaeepour v. N. Leasing Sys., Inc.,*
    2015 WL 7758894 (S.D.N.Y. Dec. 1, 2015) .................................................................... 14

*Ali v. Playgirl, Inc.,*
    447 F. Supp. 723 (S.D.N.Y. 1978) .................................................................... 12

*Allen v. National Video, Inc.,*
    610 F. Supp. 612 (S.D.N.Y. 1985) .................................................................... 11

*Am. Equities Grp., Inc. v. Ahava Dairy Prods. Corp.,*
    2004 WL 870260 (S.D.N.Y. Apr. 23, 2004) .................................................................... 26

*Andrews v. 27 Red Music Publ'g, LLC,*
    2019 WL 199893 (S.D.N.Y. Jan. 15, 2019) .................................................................... 26

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,*
    598 U.S. 508 (2023) .................................................................... 34

*Arista Recs., LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010) .................................................................... 33

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................... 6

*Astroworks, Inc. v. Astroexhibit, Inc.,*
    257 F. Supp. 2d 609 (S.D.N.Y. 2003) .................................................................... 25

*Beastie Boys v. Monster Energy Co.,*
    87 F. Supp. 3d 672 (S.D.N.Y. 2015) .................................................................... 18

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................... 6

*Binns v. Vitagraph Co. of Am.,*
    210 N.Y. 51 (1913) .................................................................... 12

*Bondar v. LASplash Cosmetics,*
    2012 WL 6150859 (S.D.N.Y. 2012) .................................................................... 18

*Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.,*
    208 F. Supp. 3d 494 (E.D.N.Y. 2016) .................................................................... 9

*Casper Sleep, Inc. v. Mitcham*,
    204 F. Supp. 3d 632 (S.D.N.Y. 2016) ................................................................... 15

*CDC Newburgh Inc. v. STM Bags, LLC*,
    692 F. Supp. 3d 205 (S.D.N.Y. 2023) ................................................................... 19

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
    843 F.3d 48 (2d Cir. 2016) ................................................................................... 21

*Clark St. Wine & Spirits v. Emporos Sys. Corp.*,
    754 F. Supp. 2d 474 (E.D.N.Y. 2010) ................................................................... 24

*Cleveland Wrecking Co. v. Hercules Const. Corp.*,
    23 F. Supp. 2d 287 (E.D.N.Y. 1998) ..................................................................... 30

*Cohen v. Herbal Concepts*,
    63 N.Y.2d 379 (1984) ............................................................................................. 9

*Cohen v. Herbal Concepts, Inc.*,
    100 A.D.2d 175, *aff'd*, 63 N.Y.2d 379 (1984) ..................................................... 10

*Comolli v. Huntington Learning Ctrs., Inc.*,
    117 F. Supp. 3d 343 (S.D.N.Y. 2015). ................................................................... 8

*Conopco Inc. v. Wells Enters., Inc.*,
    2015 WL 2330115 (S.D.N.Y. May 14, 2015) ....................................................... 21

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) ................................................................................. 15

*Danone, US, LLC v. Chobani, LLC*,
    362 F. Supp. 3d 109 (S.D.N.Y. 2019) ................................................................... 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) ................................................................................................. 19

*Davis v. Dynata, LLC*,
    2023 WL 6216809 (D. Conn. Sept. 25, 2023) ....................................................... 29

*Diesel S.p.A. v. Diesel Power Gear, LLC*,
    2022 WL 956223 (S.D.N.Y. Mar. 30, 2022) ......................................................... 19

*DJ Direct, Inc. v. Margaliot*,
    512 F. Supp. 3d 396 (E.D.N.Y. 2021) ................................................................... 19

*Doctor's Assocs., Inc. v. QIP Holder LLC*,
    2010 WL 669870 (D. Conn. Feb. 19, 2010) ......................................................... 20

*Dzurenko v. Jordache, Inc.*,
  59 N.Y.2d 788  (1983) ......................................................................... 7

*Electra v. 59 Murray Enters., Inc.*,
  987 F.3d 233 (2d Cir. 2021) ............................................................... 7

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004) ............................................................. 28

*Facenda v. N.F.L. Films, Inc.*,
  542 F.3d 1007 (3d Cir. 2008) ........................................................... 17

*Flores v. Mosler Safe Co.*,
  7 N.Y.2d 276 (1959) ........................................................................... 7

*Fort Prods., Inc v. Men's Med. Clinic, LLC*,
  2016 WL 797577 (S.D.N.Y. Feb. 23, 2016) ................................... 29

*Genesee Brewing Co. v. Stroh Brewing Co.*,
  124 F.3d 137 (2d Cir. 1997) ............................................................. 17

*Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*,
  248 F. Supp. 3d 487 (S.D.N.Y. 2017). .............................................. 23

*Hardwell v. Parker*,
  2023 WL 4155402 (C.D. Cal. May 10, 2023) ................................. 34

*Hostos v. 3225 Realty Corp.*,
  2018 WL 3597516 (S.D.N.Y. July 25, 2018) .................................. 18

*Hudson Furniture, Inc. v. Mizrahi*,
  2023 WL 6214908 (S.D.N.Y. Sept. 25, 2023) ................................. 12

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
  823 F.3d 153 (2d Cir. 2016) ............................................................. 19

*Int'l Swaps & Derivatives Ass'n, Inc. v. Socratek, L.L.C.*,
  712 F. Supp. 2d 96 (S.D.N.Y. 2010) ................................... 31, 32, 33

*Kaplan v. Old Mut. PLC*,
  526 F. App'x 70 (2d Cir. 2013) ........................................................ 30

*Koch v. Acker, Merrall & Condit Co.*,
  18 N.Y.3d 940 (2012) ....................................................................... 14

*Lan Sang v. Ming Hai*,
  951 F. Supp. 2d 504 (S.D.N.Y. 2013) ............................................. 12

*Laufer Grp. Int'l, Ltd. v. Standard Furniture Mfg. Co., LLC*,
  2020 WL 4735123 (S.D.N.Y. Aug. 14, 2020) ................................................................ 29

*Leviston v. Jackson*,
  43 Misc. 3d 229 (Sup. Ct. 2013) .................................................................................. 12

*Lexmark Int'l v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ...................................................................................................... 22

*Loftus v. Greenwich Lithographing Co.*,
  182 N.Y.S. 428 (App. Div. 1920) ................................................................................ 10

*Lohan v. Take–Two Interactive Software, Inc.*,
  31 N.Y.3d 111 (2018) ................................................................................................... 11

*Marquez v. Hoffman*,
  2021 WL 1226981 (S.D.N.Y. Mar. 31, 2021) ................................................................ 6

*Marshall v. Marshall*,
  2012 WL 1079550 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 504 F. App'x 20 (2d Cir. 2012).... 13

*Media Force Music Grp., LLC v. Orchard Enterprises, Inc.*,
  2012 WL 13396875 (S.D.N.Y. June 8, 2012) ............................................................... 27

*Medtech Prods. Inc. v. Ranir, LLC*,
  596 F. Supp. 2d 778 (S.D.N.Y. 2008) .......................................................................... 35

*Midler v. Ford Motor Co.*,
  849 F.2d 460 (9th Cir. 1988) ....................................................................................... 18

*Molina v. Phoenix Sound Inc.*,
  297 A.D.2d 595 (1st Dep't 2002) ................................................................................. 13

*Morse v. Studin*,
  283 A.D.2d 622 (2001) ................................................................................................. 12

*Nakamura v. Fujii*,
  253 A.D.2d 387 (1st Dep't 1998) ................................................................................. 23

*New York Racing Ass'n v. Nassau Reg'l Off-Track Betting Corp.*,
  29 Misc. 3d 539 (Sup. Ct. 2010) ................................................................................. 24

*Nusbaum v. E-Lo Sportswear LLC*,
  2017 WL 5991787 (S.D.N.Y. Dec. 1, 2017) ................................................................ 29

*Nuss v. Sabad*,
  2016 WL 4098606 (N.D.N.Y. July 28, 2016) .............................................................. 23

*Onassis v. Christian Dior-New York, Inc.*,
    472 N.Y.S.2d 254 (Sup. Ct. 1984) *aff'd*, 110 A.D.2d 1095 (1985) ............................ 9, 12

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015) ......................................................................... 14

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ................................................................................ 14, 16

*Pearce v. Manhattan Ensemble Theater, Inc.*,
    2009 WL 3152127 (S.D.N.Y. 2009) ............................................................ 13

*PharmacyChecker.com v. National Association of Boards of Pharmacy*,
    629 F. Supp. 3d 116 (S.D.N.Y. 2022) ......................................................... 21

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120 (2d Cir. 2014) ......................................................................... 34

*Rescuecom Corp. v. Google, Inc.*,
    562 F.3d 123 (2d Cir. 2009) .................................................................. 17, 21

*Rosbach v. Indus. Trading Co.*,
    81 F. Supp. 2d 522 (S.D.N.Y. 2000) ......................................................... 30

*Securitron Magnalock Corp. v. Schnabolk*,
    5 F.3d 256 (2d Cir. 1995) ................................................................ 13, 15, 16

*Selsman v. Universal Photo Books, Inc.*,
    18 A.D.2d 151 (2d Dep't 1963). .................................................................. 13

*Shmueli v. Corcoran Grp.*,
    9 Misc.3d 589 (N.Y. Sup. Ct. N.Y. Cnty. 2005) .......................................... 25

*Sony Corp. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)..................................................................................... 34

*Souza v. Exotic Island Enters., Inc., Enterprises, Inc.*,
    68 F.4th 99 (2d Cir. 2023) .......................................................................... 22

*St. John's Univ., New York v. Bolton*,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) (citing Fed. R. Civ. P. 8) ............................ 23, 24

*Stanley v. Direct Energy Servs., LLC*,
    466 F. Supp. 3d 415 (S.D.N.Y. 2020) ......................................................... 16

*Strike 3 Holdings, LLC v. Doe*,
    2018 WL 3756453 (S.D.N.Y. July 19, 2018) ................................................. 31

*Thyroff v. Nationwide Mut. Ins. Co.*,
  8 N.Y.3d 283 (2007) ................................................................ 25

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010) ........................................................ 20

*Tin Pan Apple, Inc. v. Miller Brewing Co.*,
  737 F. Supp. 826 (S.D.N.Y. 1990) .............................................. 7

*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,
  338 F.3d 127 (2d Cir. 2003) ...................................................... 31

*VHT, Inc. v. Zillow Grp., Inc.*,
  461 F. Supp. 3d 1025 (W.D. Wash. 2020) .................................... 34

*Vitolo v. Mentor H/S, Inc.*,
  426 F. Supp. 2d 28 (E.D.N.Y. 2006), *aff'd*, 213 F. App'x 16 (2d Cir. 2007)................. 16

*Waits v. Frito–Lay, Inc.*,
  978 F.2d 1093 (9th Cir.1992) .................................................... 17

*Warner v. StarKist Co.*,
  2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019)................................ 23

*Yang Chen v. Hiko Energy, LLC*,
  2014 WL 7389011 (S.D.N.Y. Dec. 29, 2014) .......................... 15, 16

*Young v. Greneker Studios, Inc.*,
  175 Misc. 1027 (N.Y. Sup. Ct. 1941) .......................................... 9

*Zoll v. Ruder Finn, Inc.*,
  2004 WL 42260 (S.D.N.Y. Jan. 7, 2004) ...................................... 8

**Statutes and Rules**

15 U.S.C. § 1125 ............................................................passim

15 U.S.C. § 1127 ................................................................ 17

17 U.S.C. § 501 ................................................................. 31

GBL § 349 ................................................... 13, 16, 23, 35

GBL § 350 ......................................................... 13, 23, 35

N.Y. Gen. Oblig. Law § 5-701 ............................................ 30

NY Civ. Rights Law § 50............................................passim

NY Civ. Rights Law § 51 ........................................................................................... 7, 10, 25

Plaintiffs Paul Lehrman and Linnea Sage respectfully submit this Memorandum of Law in opposition to Defendant's LOVO, Inc.'s ("LOVO") Motion to Dismiss ("Def. Mot.") the First Amended Class Action Complaint ("Complaint" or "FAC").

## PRELIMINARY STATEMENT

LOVO is an artificial intelligence (AI) driven company that developed, markets, and licenses a text-to-voice software service that can clone any voice. LOVO has engaged in many of the same illegal excesses of which its bigger tech cousins have been accused. Some of the legal issues are centuries old, with a new twist. Others are questions of first impression. Defendant argues it has done nothing wrong. We disagree.

LOVO has created and licenses software it calls Genny (or the Generator) that turns text into speech using a specific voice of the customer's choosing. LOVO customers can choose the characteristics of the voices they want to use, whether male or female, young or old, British or Southern, etc. The customer can choose between real actors' voices that are part of Genny or clone someone else's voice with no real checks or balances. (Some actors have licensed their voices to LOVO; that is not the situation here.) A user can upload a written script, and Genny converts that text into, for example, a radio ad, the narration for an instructional video, or a voicemail message from a terrified "grandchild" begging a grandparent to wire money so that he can post bail. The potential of LOVO's technology is both benign-and-productive and evil-and-dangerous.

Named Plaintiffs, who represent a class of other actors, are successful New York-based actors Paul Lehrman and Linnea Sage. Until their voices were illegally

used, cloned, and marketed by LOVO, both made a good living from voice-over work. LOVO has severely damaged their careers and brands.

Despite what LOVO argues in its Motion to Dismiss, neither Mr. Lehrman nor Ms. Sage permitted LOVO to use their voices to be cloned or licensed under any circumstance, or to train, promote, or market Genny. Ms. Sage never gave LOVO permission to use a recording of her voice as the basis of a demonstration for LOVO to raise tens-of-millions-of dollars from investors.

This case is not about the potential dangers of the misuse of AI, but the actual damage to working people who have had their voices and brands hijacked, were never compensated for these thefts, and have lost control of their brands and livelihoods.

LOVO wants this Court to believe everything it did was somehow acceptable. Neither the facts nor the law support LOVO's position. This Court undoubtedly recognizes the evolving legal and ethical challenges posed by *misuse* of AI and should hold LOVO accountable.

## **STATEMENT OF FACTS**

Fiverr is a marketplace for buyers of talent to connect with skilled workers, whether graphic designers, actors, or coders. Buyers and sellers engage in agreements for services directly, and Fiverr receives a commission.

### **Plaintiff Lehrman's Contract with LOVO**

In May 2020, Plaintiff Lehrman was contacted via the Fiverr platform by someone named User25199087. LOVO's counsel subsequently confirmed that User25199087 was a LOVO employee. FAC ¶45. LOVO asked Mr. Lehrman to create and deliver some 104 voice recordings, and offered to pay him $1,200. On May 12, 2020, Mr. Lehrman asked User25199087 "[h]ow the voice overs will be used." *Id.* ¶48. That

same day the LOVO representative responded, "We are researching speech synthesis with different accents and voices. Your voiceover will be used for academic research purposes only." *Id.* ¶49. The next day, May 13, 2020, Mr. Lehrman again wrote to LOVO, "Please guarantee that these scripts will not be used for anything other than your specific research project." *Id.* ¶50. LOVO responded to Mr. Lehrman that day, "The scripts will not be used for anything else." *Id.* ¶51. Mr. Lehrman then asked yet again, "Will my voice be repurposed and used in a different order?" *Id.* ¶52. LOVO responded: "The script and your finished file will be used for research purposes only." *Id.* ¶53. Only after receiving these assurances, on May 18, 2020, Mr. Lehrman delivered 104 audio files to LOVO and LOVO paid $1,200. *Id.* ¶¶54–55. Mr. Lehrman later registered his recordings with the United States Copyright Office. *Id.* ¶56.

**Plaintiff Sage's Contract with LOVO**

On October 29, 2019, Plaintiff Sage received a message via the Fiverr platform from a user called "tomlsg," subsequently identified as LOVO co-founder Tom Lee. *Id.* ¶¶76–82. LOVO asked Ms. Sage to produce and record several audio scripts. Ms. Sage asked how her voice recordings would be used, and tomlsg responded, "These are test scripts for radio ads. They will not be disclosed externally, and will only be consumed internally, so will not require rights of any sort." *Id.* ¶78. Ms. Sage clarified that broadcast use would require "appropriate licensing." *Id.* ¶79. After receiving these assurances, Ms. Sage delivered the audio files and LOVO paid $400. *Id.* ¶81. Ms. Sage later registered the audio files with the United States Copyright Office. *Id.* ¶83.

**The Discovery of LOVO's Violations**

On July 11, 2023, Mr. Lehrman and Ms. Sage were listening to the June 20, 2023 episode of the "Deadline Strike Talk" podcast hosted by Billy Ray. Ironically, the episode was about the dangers of AI technologies. The host held a conversation with "Poe," an AI bot. It was immediately clear that the voice of Poe was, in fact, Mr. Lehrman's voice. The host asked questions of MIT Professor Simon Johnson, who typed those questions into ChatGPT. Professor Johnson entered ChatGPT's text responses into LOVO's software, which answered the questions orally—in Plaintiff Lehrman's voice. Plaintiffs learned from MIT's General Counsel that "Professor Simon's team utilized a paid subscription to LOVO as part of the creation of the project that was featured on the podcast . . . ." *Id.* ¶¶63–66.

Numerous people who heard the podcast told Plaintiffs that the Poe voice was virtually identical to Mr. Lehrman's voice. They said that the cloned voice would undoubtedly be mistaken for Mr. Lehrman's actual voice, causing real confusion and harming Mr. Lehrman's brand. *Id.* ¶70. Plaintiffs then did a deep dive to find out where, how, and when Mr. Lehrman's cloned voice had been used. Not only did they find multiple instances of LOVO using Mr. Lehrman's voice, they also found that LOVO was improperly using Ms. Sage's voice.

**LOVO's Improper Use of Ms. Sage's Copyrighted Recordings**

One of the first instances of the improper use of Ms. Sage's voice was in the spring of 2020 at the Berkeley SkyDeck Demo Day. *Id.* ¶87. To raise funds from investors, LOVO co-founder Charlie Choi presented LOVO's capabilities by first playing Ms. Sage's (copyrighted) recording that had been delivered for the "test radio ads" that

would "only be consumed internally." He then played the same script but with Ms. Sage's LOVO-generated voice, which was virtually identical to the actual recording. *Id.* ¶¶87, 89, 282. LOVO continued to use that side-by-side comparison (with Ms. Sage's copyrighted recording) for fundraising and consumer advertising, including but not limited to at the 2020 CES Tech Conference and on LOVO's YouTube channel. As of the filing of the Complaint, that video was still available on LOVO's YouTube channel. *Id.* ¶¶289–91.

**<u>LOVO's Improper Use of the Plaintiffs' Voices</u>**

LOVO created two characters, "Kyle Snow" and "Sally Coleman," which were Mr. Lehrman's and Ms. Sage's cloned voices, for its subscription service. *Id.* ¶114. LOVO's counsel admitted the Kyle Snow and Sally Coleman voices were based on the recordings Mr. Lehrman and Ms. Sage made and provided to LOVO. *Id.* ¶¶111–14. Ms. Sage's "Sally Coleman" voice was marketed at the latest as of July 5, 2020 and Mr. Lehrman's "Kyle Snow" voice was marketed at the latest as of May 5, 2021. From 2021 through at least September 2023, Mr. Lehrman's "Kyle Snow" voice was the default voice for Genny. *Id.* ¶125.

On June 21, 2023, LOVO also promoted Mr. Lehrman's Kyle Snow voice as one of "The 5 Best Male Voices For Text To Speech." *Id.* ¶124. On July 10, 2023, LOVO further used Mr. Lehrman's voice to promote its service in a published article titled "5 Best Practices for Perfect Audio Advertising." *Id.* ¶123. LOVO's counsel claims the Kyle Snow and Sally Coleman voices were removed from the LOVO service as of August 30, 2023. *Id.* ¶¶111 n.21, 118. In fact, the voices were still available in November 2023 (*id.* ¶¶111 n.21, 130), and were <u>still</u> live on LOVO's YouTube page as an advertisement for

Genny and under "Community Originals" when the Complaint was filed. *Id.* ¶141. Ms.

Sage's voice was still available on LOVO's Application Programming Interface, or

"API," as of August 2024. *Id.* ¶142.

**LOVO Promotes Celebrity Voices and the Ability to Clone Any Voice**

For several years, through the Complaint filing, LOVO promoted its service by

promising users they could clone any voice, including those of celebrities. LOVO had a

page on its website with badly disguised names and illustrations of Scarlett Johansson

(represented as "Samantha OS"), Barack Obama (crudely represented as "Barack Yo

Mama"), Conan O'Brien ("Cocoon O'Brien"), and Elton John ("Elton John Cena"). It also

compared Elton John's real and cloned voice at the Berkeley SkyDeck investor pitch –

just as it had with Ms. Sage's recorded and cloned voices. *Id.* ¶¶149–51.

**ARGUMENT**

**I.  Standard of Review**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the Court must accept the factual allegations as true and draw all reasonable

inferences in favor of the plaintiff. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007). A plaintiff must plead factual allegations "to state a claim to relief that is

plausible on its face." *Id.* A claim is facially plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]

---

[1] "The standard of review for 12(b)(1) motions is substantively identical to Rule 12(b)(6) motions." *Marquez v. Hoffman*, 2021 WL 1226981, at *8 (S.D.N.Y. Mar. 31, 2021).

## II. The New York Civil Rights claim is properly pleaded.

Sections 50 and 51 of the New York Civil Rights Law prohibit the use of a person's voice without written consent. "The primary purpose of this legislation was to protect the . . . right of an individual to be immune from commercial exploitation." *Flores v. Mosler Safe Co*., 7 N.Y.2d 276, 280–81 (1959). Section 51 is violated where limited consent is exceeded. *See Dzurenko v. Jordache, Inc.*, 59 N.Y.2d 788, 790 (1983).[2] "Whether a Section 51 plaintiff entered into a release agreement and the terms of such an agreement" are questions of fact inappropriate to resolve on a motion to dismiss. *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 250 (2d Cir. 2021). Significantly, "since its purpose is remedial to grant recognition to the newly expounded right of an individual to be immune from commercial exploitation, section 51 of the Civil Rights Law has been liberally construed." *Tin Pan Apple, Inc. v. Miller Brewing Co.*, 737 F. Supp. 826, 836 (S.D.N.Y. 1990) (claim stated where company sought out and used as close of a look-alike to a rap group as possible for a commercial).

Defendant argues that the New York Civil Rights claims are barred by the one-year statute of limitations, which runs from publication. Def. Mot. at 8–10. Defendant is wrong for two reasons. First, the Complaint was filed on May 16, 2024, within one year of June 20, 2023, the first publication of the Deadline Strike Talk podcast, where Mr. Lehrman's voice was cloned by Defendant's software without his permission. FAC ¶67; ECF No. 1. Second, republication refreshes the limitations period; when content is aired to a new audience or in a new format, it is considered republished on that date. *See Comolli v. Huntington Learning Ctrs., Inc.*, 117 F. Supp.

---

[2] Internal citations, quotation marks, and alterations are omitted.

3d 343, 349 (S.D.N.Y. 2015). Whether an event is a republication is a fact-specific inquiry, not ripe for resolution on a motion to dismiss. *See id.* at 351. And, the limitations period starts to run when a plaintiff "could have or should have known" about the use, meaning the focus is on when material "'goes public' rather than when it enters non-public distribution streams." *Zoll v. Ruder Finn, Inc.*, 2004 WL 42260, at *2 n.2 (S.D.N.Y. Jan. 7, 2004).

On July 10, 2023, LOVO published a blog post promoting its services and offering tips on audio advertising titled "5 Best Practices for Perfect Audio Advertising," using Plaintiff Lehrman's voice as Kyle Snow. FAC ¶123. On June 21, 2023, LOVO promoted Plaintiff Lehrman's voice as Kyle Snow as one of "The 5 Best Male Voices for Text to Speech." *Id.* ¶124. As of July 19, 2023, Plaintiff Lehrman's voice was the default voice for Genny, LOVO's voice-generator software. *Id.* ¶46.

Even after LOVO's counsel represented that the Kyle Snow and Sally Coleman voices were removed as of August 30, 2023, Plaintiffs' voices were still available on Genny, LOVO's YouTube, and its APIs. *Id.* ¶¶111 n.21; 129–30; 132; 142–43. Indeed, Plaintiffs' voices were still available to new customers at least through the end of October 2023. *Id.* ¶¶111 n.21, 143–44. This ongoing improper use was also within the limitations period. Each time LOVO allowed a user to manipulate Plaintiffs' voices, Defendant was creating a new public use of the material. Each of these improper uses was facilitated by and controlled by LOVO. If LOVO had not offered the unauthorized Kyle Snow and Sally Coleman voices, users could not have taken advantage of them. The statute of limitations runs from these new uses.

Moreover, because the issue of the statute of limitations is highly fact dependent, the motion to dismiss is not the appropriate stage to resolve this affirmative defense. *Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 501 (E.D.N.Y. 2016).

LOVO's argument that these were not really violations because the publications were not of Plaintiffs' "actual audio recordings" is ludicrous. LOVO cloned Plaintiffs' voices from their original recordings such that the resulting voices were essentially identical to Plaintiffs' real voices, which are protected by the Civil Rights Law. *See* N.Y. Civ. Rights Law § 50 (protecting the "voice of any living person").

For that same reason, Defendant's argument that its conduct is protected because LOVO assigned the Plaintiffs' cloned voices to the Kyle Snow and Sally Coleman pseudonyms is just silly. Def. Mot. at 12–13. It is irrelevant that LOVO did not use Plaintiffs' actual names, as the use of their names is not at issue; Plaintiffs have a viable claim so long as the voices (which are exact clones) can be identified as those of Plaintiffs. The statute protects "any representation which [is] recognizable as likeness of the complaining individual." *Onassis v. Christian Dior-New York, Inc.*, 472 N.Y.S.2d 254, 259 (Sup. Ct. 1984) *aff'd*, 110 A.D.2d 1095 (1985); *Young v. Greneker Studios, Inc.*, 175 Misc. 1027, 1028, (N.Y. Sup. Ct. 1941). Moreover, whether a voice is recognizable as that of the particular individuals is a question that should be left for the fact finder, and must be accepted as true at this stage of the litigation. *See Cohen v. Herbal Concepts*, 63 N.Y.2d 379, 384 (1984).

Defendant also argues that because LOVO used only the "synthetic," "AI-generated," or "clones" of Plaintiffs' voices, rather than actual recordings, this use is not prohibited by Section 51. Defendant's argument is wrong, and would subvert the

clear purpose of the statute. LOVO touts how close its clones are to the original voices, noting that the voices are "practically indistinguishable" from real, human voices. *See, e.g.*, FAC ¶¶23–24, 27, 94–95. "If the wholesome provisions of the Civil Rights Law, . . . can be thwarted by using a portrait or picture without consent, provided some such slight change . . . is made . . . then the statute will be of little use and the purpose for which it was enacted will be defeated." *Cohen v. Herbal Concepts, Inc.*, 100 A.D.2d 175, 181, *aff'd,* 63 N.Y.2d 379 (1984) (Kassal, J. concurring); *Loftus v. Greenwich Lithographing Co.*, 182 N.Y.S. 428, 431 (App. Div. 1920).

Defendant tries to contort an article written by Judith Bass to support its assertion that, "digital replicas of live performers are not included in ***the law's*** protections." New York's New Right of Publicity Law: Protecting Performers and Producers, N.Y. St. B.J., 36 May/June 2021 (emphasis added). But Ms. Bass's reference to the "law," was only to the limited protections for deceased persons under Section 50-f, not Sections 50, 51. The operative version of Section 50-f (signed into law in 2020), defined the term "digital replica" specifically to apply to *deceased* performers in *that particular statute*, not to exclude the term from its predecessor statutes (passed by the New York Legislature a century earlier, in 1903) for *living* persons.

In 2018, the New York Court of Appeals addressed digital avatars, stating, "[i]n view of the proliferation of information technology and digital communication, . . . a graphical representation in a video game or like media may constitute a 'portrait' within the meaning of the Civil Rights Law." *Lohan v. Take–Two Interactive Software, Inc.*, 31 N.Y.3d 111, 121–22 (2018). The court acknowledged that although the statute was "enacted in 1903 . . ., at which time digital technology was uninvented[,] . . . [t]he

10

appropriate course . . . is to employ the theory of statutory construction that general terms encompass future developments and technological advancements." *Id.* at 121.

In other words, New York law recognized that living persons have publicity rights in digital replicas. When Section 50-f was passed, the Assembly acknowledged that the "bill is balanced in protecting essential first amendment rights consistent with current law *while maintaining the current status of the right of privacy law*." Assembly Memorandum in Support of Legislation, A05605C (emphasis added).[3] Therefore, the legislation kept intact all of the rights afforded by previous legislation and caselaw, including publicity rights of living persons to their digital likeness.

Defendant's reliance on *Allen v. National Video, Inc.*, 610 F. Supp. 612 (S.D.N.Y. 1985), is misplaced. In that case, the mere "characteristics" of Woody Allen were at issue, and the actual photo in the problematic advertisement was of a similar person who was not "recognizable" as Allen. *Id.* at 617–18, 622. Here, Plaintiffs' voices were used to make *exact clones*, indecipherable from their original, human voices. The court in *Allen* emphasized that the relevant issue was whether "most persons who could identify an actual photograph of plaintiff would be likely to think that this was actually his picture." *Id.* at 624. Defendant LOVO has made such accurate copies of Plaintiffs' voices (including "tone, accent, and even mannerisms") that persons knowing their voices did and would think LOVO's copies were actually Plaintiffs' voices. FAC ¶¶24, 74, 75, 103. Indeed, the right of publicity "is intended to protect the essence of the person, his or her identity or *persona* from being unwillingly or unknowingly

---

[3] New York State Assembly Memorandum in Support of Legislation, Bill No. A5605c, https://assembly.state.ny.us/leg/?default_fld=&leg_video=&bn=A05605&term=2019&Summary=Y&Memo=Y.

misappropriated for the profit of another." *Onassis*, 472 N.Y.S.2d at 260; *see also Binns v. Vitagraph Co. of Am.*, 210 N.Y. 51, 57 (1913) (statute extends to "any representation of [a] person."); *Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 726 (S.D.N.Y. 1978) ("'[P]ortrait or picture' . . . generally comprises those representations which are recognizable as likenesses of the complaining individual.").

Defendant further argues that Plaintiffs' voices were not alleged to have been used for advertising or trade. Def. Mot. at 13. First, trade and advertising are distinct, and LOVO has improperly used Plaintiffs' voices for both. The relevant inquiry for "trade purposes" is whether the material "was promoted and made available in order to attract people . . . and/or helped . . . to make a profit[,]" or to "generate interest." *Leviston v. Jackson*, 43 Misc. 3d 229, 235 (Sup. Ct. 2013). A use is "'for advertising purposes' if it appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service." *Morse v. Studin*, 283 A.D.2d 622, 622 (2001); *Hudson Furniture, Inc. v. Mizrahi*, 2023 WL 6214908, at *11 (S.D.N.Y. Sept. 25, 2023).

LOVO markets its service using its website, blogs, and YouTube channel to sell its subscription service: to make a profit. *See Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 527 (S.D.N.Y. 2013) (blog can be an "advertisement in disguise"). LOVO's website is exactly where users can buy and use the product. Moreover, "advertising purposes" is to be "construed liberally" and includes advertising to "educate the public as to the advantages and virtues of commodities and thereby stimulate demand therefor." *Selsman v. Universal Photo Books, Inc.*, 18 A.D.2d 151, 152 (2d Dep't 1963). LOVO's

posting its investor pitches to YouTube was a separate use that was meant to educate the public about the product and convince people to subscribe.

Defendant claims that there was no advertising "within" the state of New York, as the internet is "not sufficient." Def. Mot. at 12. To the contrary: LOVO not only did not exclude New York from its marketing efforts, but publication on a website that is "on a world wide basis" is "undisputedly simultaneously exhibited . . . both globally and locally." *Molina v. Phoenix Sound Inc.*, 297 A.D.2d 595, 599 (1st Dep't 2002); *see also Marshall v. Marshall*, 2012 WL 1079550, at *20 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 504 F. App'x 20 (2d Cir. 2012) ("use of the images on the internet was 'within the state of New York'"); *and see Allen*, 610 F. Supp. at 622 n.4 ("[N]ational advertising campaign is . . . use within the state when the advertisement was actually and foreseeably distributed in the state."). Defendant's citation to *Pearce v. Manhattan Ensemble Theater, Inc.*, 2009 WL 3152127 (S.D.N.Y. 2009) is inapposite. In that case, there was "no evidence that the website was marketed or used in New York." *Id.* at *9 n.9. LOVO's outreach is geared towards potential New York customers and creators. *See, e.g.*, FAC ¶¶175–76.

## III. Plaintiffs have adequately alleged claims under New York General Business Laws §§ 349 and 350.

New York General Business Law Section 349 forbids "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." The statute is a "consumer protection device." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

To plead a claim under these statutes, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012). The deception "must be likely to mislead a reasonable consumer acting reasonably under the circumstances," *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015), and "the acts or practices [must] have a broader impact on consumers at large," *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, (1995). New York courts have construed the latter element liberally. *Aghaeepour v. N. Leasing Sys., Inc.*, 2015 WL 7758894, at *14 (S.D.N.Y. Dec. 1, 2015).

Plaintiffs have valid GBL claims for two reasons. First, LOVO's solicitation of Plaintiffs via Fiverr was a classic deceptive business act targeted at individual artists. Mr. Lehrman and Ms. Sage were independent practitioners of their craft; they were not large corporations. LOVO intentionally deceived them about the true purpose of the solicited recordings.

Second, Defendant's conduct was "consumer-oriented" and used Plaintiffs to deceive the consuming public. Defendant represented to potential customers that Plaintiffs' professional voices were affiliated with LOVO and available with all the rights and permissions that customers would need for their projects. *See, e.g.*, FAC ¶189. Defendant used Plaintiffs as vehicles to deceive consumers at large, who believed they were using voices that were legitimately sourced and compensated. *Id.* ¶171. Accordingly, Defendant's misconduct and "way of doing business" was "consumer oriented." *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 642–44 (S.D.N.Y. 2016)

(finding "consumer oriented" conduct where website was geared towards consumers and "readers of the website browse the same site and are subject to the same allegedly deceptive conduct"). The Complaint makes clear that LOVO's deceptive conduct not only harmed Plaintiffs, but "harm[s] consumers as well." *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123–24 (S.D.N.Y. 2019); *see also Securitron*, 65 F.3d at 264 (observing that consumer-oriented behavior is alleged where public is affected by private dispute).

Defendant argues that Plaintiffs do not adequately allege conduct or deception in New York. Def. Mot. at 16. As described above, Defendant deceived Plaintiffs, as well as consumers, in New York. FAC ¶¶173–76. The test in the Second Circuit is to focus on "the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013). Completing a transaction in New York is sufficient, even if the deception was not in New York. *See Yang Chen v. Hiko Energy, LLC*, 2014 WL 7389011, at *4 (S.D.N.Y. Dec. 29, 2014). Accordingly, any New York consumers who saw and used Genny in New York, and paid LOVO from New York, were harmed in New York.

Defendant argues that Plaintiffs were not consumers and did not see certain of the misstatements at issue, Def. Mot. at 16, but that is irrelevant to this claim. Defendant's actions were <u>aimed</u> at consumers. "Plaintiff . . . need not show that the defendant committed the complained-of acts repeatedly—either to the same plaintiff ***or to other consumers***—but instead must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego*, 85 N.Y.2d at 25 (emphasis added). "The critical question . . . is whether the matter affects the public interest in New York,

not whether the suit is brought by a consumer or a competitor." *Securitron*, 65 F.3d at 264; *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 34 (E.D.N.Y. 2006), *aff'd*, 213 F. App'x 16 (2d Cir. 2007). Consumers saw LOVO's misstatements and the website's false claims to own Plaintiffs' voices.

Next, Defendant argues that the allegations are not within the three-year statute of limitations. Def. Mot. at 17. Consumers faced a new misrepresentation and sustained a new injury every time they used the LOVO product and heard Plaintiffs' stolen voices, which continued through at least November 28, 2023. The continuing violations doctrine applies to Section 349 claims, such that the limitations period runs from the last wrongful act. *See Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 432 (S.D.N.Y. 2020).

Defendant also argues that there is no cognizable injury. Def. Mot. at 17. "A monetary loss is an actionable injury under Section 349," *Yang*, 2014 WL 7389011, at *5, as is harm to the public interest, *see Securitron*, 65 F.3d at 264. LOVO consumers purchased a product and did not receive a product with the full value with unlimited usage rights, which would have been a product with legitimately acquired and/or created voices. FAC ¶189.

## IV. Plaintiffs adequately allege claims under two distinct prongs of Lanham Act § 43(a).

Plaintiffs bring two distinct claims under the Lanham Act: (1) for unfair competition and false affiliation in violation of § 43(a)(1)(A), and (2) false advertising under § 43(a)(1)(B). Defendant used Plaintiffs' voices without their consent, and this unpermitted use misled and continues to mislead consumers and businesses. *See*

15 U.S.C. § 1125(a)(1)(A). By featuring Plaintiffs without consent, purporting that their voices were available under the guise of pseudonymous profiles, Defendant "misrepresent[ed] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).

### a) Plaintiffs adequately plead their § 43(a)(1)(A) unfair competition and false affiliation claims.

A false affiliation claim requires allegations of (a) "the unpermitted 'use in commerce' of another's mark," (b) "which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation . . . or as to the origin, sponsorship or approval of his or her goods or services . . . by another person." *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 128 (2d Cir. 2009); *see also* 15 U.S.C. § 1127 (defining "trademark" broadly to include "any word, name, symbol, or device, or any combination thereof"); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997).

Defendant attempts to brush aside the unfair competition and false affiliation claim, arguing that there is no such claim because Plaintiffs lack a valid mark. Def. Mot. at 17–18. Plaintiffs' voices do constitute a valid mark under the Lanham Act. *See, e.g.*, *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1014 (3d Cir. 2008) ("[C]ourts broadly interpret the terms 'name, symbol, or device' in § 43(a)(1) to include other indicia of identity, such as a person's voice"); *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1106–07 (9th Cir.1992) (allowing voice-based Lanham Act claim because legislative history "makes clear that in retaining the statute's original terms 'symbol or device' . . . Congress approved the broad judicial interpretation of these terms to include distinctive sounds") (*citing* S.Rep. No. 101–515 at 44, 1988 U.S.C.C.A.N. at 5607);

*Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 675–76 (S.D.N.Y. 2015) (jury found defendant liable under Lanham Act for using plaintiffs' voice and persona, "suggesting a false endorsement of Monster's products").

"A voice is as distinctive and personal as a face. The human voice is one of the most palpable ways identity is manifested." *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988). To paraphrase *Midler*, why would Defendant ask Plaintiffs to record scripts, or train Genny to replicate Plaintiffs' voices, if their voices were not of value?

Even the case Defendant cites (Def. Mot. at 18) does not dispute that distinctive voices can form the basis of a valid mark. In *Bondar v. LASplash Cosmetics*, 2012 WL 6150859, *7 (S.D.N.Y. 2012), defendants argued that plaintiff's mark was "too weak" to cause consumer confusion, but the court agreed that a false endorsement claim "does not require celebrity, only a likelihood of consumer confusion." *Id*. Plaintiffs' voices are *not* completely anonymous—they are recognizable by, at least, professional casting agents and others. *See, e.g.*, FAC ¶¶63–75; 85–86; 100–03.[4]

As the *Bondar* court noted in denying the motion to dismiss, "[t]he strength of a mark is normally a question of fact." 2012 WL 6150859, at *7. Since Plaintiffs allege that Defendant used Plaintiffs' mark, "[t]his suffices to support an allegation of consumer confusion at the motion to dismiss stage." *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 230 (S.D.N.Y. 2023).

---

[4] Defendant takes issue with the affidavits attached to the Complaint, but the same allegations are also pled therein, and those allegations must be accepted as true at this stage. Moreover, though Defendant refers to the allegations of the original complaint, the Amended Complaint "supersedes the original complaint." *Hostos v. 3225 Realty Corp.*, 2018 WL 3597516, at *4 (S.D.N.Y. July 25, 2018) (Oetken, J.).

Additionally, it is not just plausible but almost certain that consumers are *likely* to be confused. *See, e.g.*, *Diesel S.p.A. v. Diesel Power Gear, LLC*, 2022 WL 956223, at *11 (S.D.N.Y. Mar. 30, 2022) ("[A]ctual confusion is very difficult to prove and the Lanham Act requires only a likelihood of confusion."); *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 165 (2d Cir. 2016) ("[T]he relevant inquiry is simple: whether there is a likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused."). Not only do the professional casting agents make that clear (FAC ¶103), but LOVO brags about it on its website. *Id.* ¶¶23–24.

Plaintiffs also allege that Defendant's conduct constitutes "reverse passing off, in which A sells B's product under A's name." *DJ Direct, Inc. v. Margaliot*, 512 F. Supp. 3d 396, 414 (E.D.N.Y. 2021). Defendant sold Plaintiffs' services to consumers "under [LOVO's] name" and through its Genny product. And reverse passing off encompasses situations where a person "repackage[s]" the products of another. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 26 (2003).

As a result, Defendant used Plaintiffs' service offerings without permission, in a way likely to cause consumers to falsely affiliate Plaintiffs with LOVO.

### b) Plaintiffs sufficiently allege falsity under § 43(a)(1)(B).

"A claim of false advertising may be based on at least one of two theories: that the challenged advertisement is literally false, i.e., false on its face, or that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010).

Defendant's fake listings of Plaintiffs, with pseudonymous names ("Kyle Snow" or "Sally Coleman") are literally false and misleading representations. The marketing and advertising of Plaintiffs' voices under identities that Defendant created, is literally false; and even if not, "is nevertheless likely to mislead or confuse consumers.'" *Id*.

Additionally, Defendant wholly misrepresents Plaintiffs' false advertising claim. Defendant sets up a strawman by pointing to the communications on Fiverr as the "core allegation of falsity" and stating those were not "widely disseminated." Def. Mot. at 20–21 (citing FAC ¶¶45–55; 77–81). What transpired on Fiverr has nothing to do with the false advertising claims. Defendant then cites cases involving *oral statements* made or *letters* sent to a specific business. *See* Def. Mot. at 20–21. These are also irrelevant and not at issue here.

Plaintiffs detail the false or misleading statements in Count VII and substantiate those claims in the Complaint. *See* FAC ¶¶23, 24, 32, 33, 36, 85–95, 105–09, 246. Many of these were statements on Defendant's publicly available website and on YouTube, not letters or oral statements directed to specific individuals, as Defendant claims. *See Tiffany*, 600 F.3d at 113 (publication on the internet may give rise to false advertising liability under the Lanham Act); *Doctor's Assocs., Inc. v. QIP Holder LLC*, 2010 WL 669870, at *22 (D. Conn. Feb. 19, 2010) (finding that publication on a website meets the "widely disseminated" requirement since "Defendants made these representations available to anyone with internet access").

**c) Plaintiffs sufficiently allege injury under § 43(a)(1)(B).**

"[A]t this stage of the proceedings, Plaintiffs need not establish or prove, but must simply allege" that Defendant's false or misleading statements injured ***or are***

20

*likely to injure* Plaintiffs. *Conopco Inc. v. Wells Enters., Inc.*, 2015 WL 2330115, at *5 (S.D.N.Y. May 14, 2015); *see also Rescuecom Corp.*, 562 F.3d at 131 ("Whether [defendants'] actual practice is in fact benign or confusing is not for us to judge . . . at the 12(b)(6) stage."). Plaintiffs allege multiple reasons why these false statements are plausibly "the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016).

In addition to the harm to their reputations, Plaintiffs plead that they "are likely to suffer injury" by facing the adverse consequences of Defendant's conduct. Potential clients will not use Plaintiffs' services but instead use Defendant's cheaper service. Plaintiffs may be precluded from jobs because their voices were used by competitors, and may breach other obligations. FAC ¶¶21–37, 70–71, 182, 201–06.

Defendant cites *PharmacyChecker.com v. National Association of Boards of Pharmacy*, 629 F. Supp. 3d 116, 129 (S.D.N.Y. 2022), for the proposition that there is not a "specific pleading of loss" by Plaintiffs. Def. Mot. at 19–20. But in that case, the court found that injury "cannot be presumed because NABP has specifically alleged that [PharmacyChecker.com] and NABP are not competitors." 629 F. Supp. 3d at 129. Here, Plaintiffs have specifically alleged that Defendant *is* a competitor and *is* diverting business from Plaintiffs. FAC ¶¶21–37.

Defendant's creation of the Kyle Snow and Sally Coleman voices—and Defendant's aggressive marketing of Genny to license those cloned voices—is a direct and obvious competitor to Plaintiffs' services.

Defendant spuriously claims that Plaintiffs do not allege either named plaintiff was individually identified, or identifiable. Def. Mot. at 19. This is a bizarre and false

argument. The two named Plaintiffs found out about Defendant because their voices *were* identifiable on the "Deadline Strike Talk" podcast and LOVO's website. Friends, colleagues, and professional acquaintances heard the podcast and immediately identified the "Poe" voice as Mr. Lehrman's. FAC ¶¶63–75. As LOVO touts, the voices were near-perfect clones. *Id.* ¶¶95, 291.

Lastly, Plaintiffs also plausibly allege an actual or likely diversion of sales, "the paradigmatic direct injury." *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014). Customers want professional voiceover services but instead sign up for LOVO and use the Kyle Snow and Sally Coleman voices. This deprives the Plaintiffs of clients and revenue. Defendant cites *Souza v. Exotic Island Enters., Inc., Enterprises, Inc.*, 68 F.4th 99, 119–20 (2d Cir. 2023), to allege that Plaintiffs lack standing. Def. Mot. at 19. But the *Souza* court denied plaintiff's claim because there was no "reason to believe that [the alleged activity] would cause consumers. . .to 'withhold trade from the plaintiff.'" 68 F.4th at 118 (quoting *Lexmark*, 572 U.S. at 133). Here, the very purpose of Defendant copying Plaintiffs' voices and offering them on their platform is to unfairly benefit from Plaintiffs' talents and brands. Defendant can thus "withhold trade" from Plaintiffs.

**V.  Plaintiffs' unjust enrichment claim is pled in the alternative.**

"To state a cause of action for unjust enrichment, a plaintiff must allege that it conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff therefor." *Nakamura v. Fujii*, 253 A.D.2d 387, 390 (1st Dep't 1998). Unjust enrichment claims are not duplicative if the trier of fact could find unjust enrichment without establishing all the elements for another

claim. *See Nuss v. Sabad*, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016) ("[E]ven if the jury determines that the [plaintiffs] did not rely on the . . . allegedly fraudulent statements, the Court could still find that the [defendants] received a benefit . . . that aught to in "equity and good conscience" be turned over . . . ."); *see also Warner v. StarKist Co.*, 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019) ("The elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350."). Here, the scope of the contract and GBL claims do not cover the matters complained of in the unjust enrichment claim, and the measures of damages and statutes of limitations for the claims are different.

Plaintiffs are "explicitly permit[ted] to assert claims in the alternative," as "[a]t the pleading stage, [p]laintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) (citing Fed. R. Civ. P. 8); *see also Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 496 (S.D.N.Y. 2017).

## VI.  The conversion claim is adequately pleaded.

"The two elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *St. John's*, 757 F. Supp. 2d at 178. That is exactly what Plaintiffs have demonstrated here, as Plaintiffs undoubtedly have a right and interest in their own voices; and LOVO has taken Plaintiffs' voices, in a way that has diminished their job opportunities and control of their brand. Here, "Plaintiffs' possession of their [voices] was adversely affected and its value attenuated by [Defendant's] alleged misconduct. It seriously diluted its value and became a

disincentive rather than a reason for customers and the business to use [their services]." *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010); *see also New York Racing Ass'n v. Nassau Reg'l Off-Track Betting Corp.*, 29 Misc. 3d 539, 545–46 (Sup. Ct. 2010) (allowing conversion claim although plaintiff was not "excluded" from access to its electronic data transmission).

Defendant argues that a voice is not a specific identifiable tangible thing that is capable of conversion. Def. Mot. at 22. That is a position that is contradicted by both case law and common sense. Is Defendant really suggesting that a crook could take a copy of Microsoft Word, clone it, and sell (software as a service) as his own because it is not tangible?

Defendant engaged in conversion, very simply, by cloning Plaintiffs' voices and repackaging and reselling them as Kyle Snow and Sally Coleman. Defendant converted the money that Plaintiffs otherwise would have earned *from* their voices. Exactly how much money Defendant earned from Plaintiffs' voices is known only to Defendant at this stage. But it is an identifiable, specific amount. The cloned voices were not LOVO's to sell or profit from, and the elements of conversion are adequately pled.

In an effort to bring the "ancient common-law" claim of conversion into the modern day, courts are starting to recognize that intangible property can also be wrongfully taken. *See, e.g.*, *Shmueli v. Corcoran Grp.*, 9 Misc.3d 589, 591–95 (N.Y. Sup. Ct. N.Y. Cnty. 2005) (allowing conversion claim where defendant stole a computerized client/investor list, and citing to a case where an internet domain was converted); *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 618 (S.D.N.Y. 2003) (finding that conversion of intellectual property, i.e., idea and website, survived motion to

dismiss). As the New York Court of Appeals has stated, "the tort of conversion must keep pace with the contemporary realities of widespread computer use." *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292 (2007).

Defendant bizarrely argues that there is no allegation that Plaintiffs owned the voices of Sally Coleman or Kyle Snow. Def. Mot. at 22–23. Indeed, Plaintiffs did not own the voices of Sally Coleman and Kyle Snow; they own their *own* voices. LOVO copied and then sold near-perfect clones of Plaintiffs' voices as if they were LOVO's property. Defendant also argues that the sole remedy for a claim that a plaintiff's name has been used without consent is an action under §§ 50 and 51 of the Civil Rights Law. Def. Mot. at 23. However, Plaintiffs allege not only conversion of their voices, but also the funds made from use of their voices, job opportunities, and control of their voices. FAC ¶¶264–65.

Defendant argues that Plaintiffs did not allege that LOVO exercised unauthorized dominion over Plaintiffs' voices "to the alteration of its condition or to the exclusion of plaintiff's rights." Def. Mot. at 23. This argument too is a head-scratcher. LOVO created a copy of Plaintiffs' voices that excluded Plaintiffs from *control* over where and how their voices could be used. This deprived Plaintiffs of both job opportunities and control of their brands.

Defendant further claims the conversion claim is duplicative of the contract claim, Def. Mot. at 23, but conversion "may be alleged in addition to breach of contract claims as long as the legal duty springs from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Am. Equities Grp., Inc. v. Ahava Dairy Prods. Corp.*,

2004 WL 870260, at *16 (S.D.N.Y. Apr. 23, 2004); *see also Andrews v. 27 Red Music Publ'g, LLC*, 2019 WL 199893, at *4 (S.D.N.Y. Jan. 15, 2019) (conversion not duplicative of contract claim where punitive damages were available and "[t]he compensatory damages requested are not merely representative of breach of contract damages or a right to repayment under the contract, but specific royalty funds . . . .").

Here, the contracts covered the initial voice recordings. Defendant's creation and marketing of the Kyle Snow and Sally Coleman clones is a separate matter and textbook conversion.

## VII.  Plaintiffs' fraud claim is adequately alleged.

Defendant argues that Plaintiffs' fraud claim is about misrepresentation of future intent not to perform a contract. Def. Mot. at 23–24. However, the fraud here is about how Defendant represented Plaintiffs' voices would be used, not about the performance of their contracts.

"To state a claim of fraud under New York law, a plaintiff must allege: (1) a material misrepresentation of a fact; (2) knowledge of its falsity; (3) an intent to induce reliance; (4) justifiable reliance by the plaintiff; and (5) damages." *Media Force Music Grp., LLC v. Orchard Enterprises, Inc.*, 2012 WL 13396875, at *6 (S.D.N.Y. June 8, 2012). Each of these elements is alleged here. Defendant made material representations about how Plaintiffs' voices would be used (for academic research and test radio ads); Defendant knew that the voice recordings would be used for other purposes; Defendant intended for Plaintiffs to rely on their misrepresentations and omissions so that Plaintiffs would provide the voice recordings; Plaintiffs confirmed their understanding

of the misrepresentations and relied on Defendant's responses; and were damaged thereby. FAC ¶¶45–59; 76–81; 267–72.

"[T]o maintain a claim for fraudulent inducement that does not merge with a breach of contract claim, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Media Force*, 2012 WL 13396875, at *6.

LOVO engaged in fraud by misrepresenting its true intent. LOVO never told Plaintiffs that their voices would be used to train Genny; never told Plaintiffs their voices would be cloned; never told Plaintiffs that it would market Plaintiffs' voices under the names Kyle Snow and Sally Coleman; and never told Plaintiffs that their voices would be used for fundraising or to promote the LOVO service. FAC ¶268. These were all issues extraneous to the contract. It is unquestionable that the communications between Plaintiffs and Defendant show Plaintiffs' reliance; Plaintiffs only sent their voice recordings after they were assured about how their voices would be used. *Id.* ¶¶48–54, 76–80.

Defendant is creating a distraction: it (incorrectly) argues that the recordings were not used publicly. Def. Mot. at 25. LOVO used Plaintiffs' recordings to extract their voices, and then used them in other formats, publicly.

## VIII.  The breach of contract claim is adequately pleaded.

"To make out a viable claim for breach of contract a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the

plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob.*

*Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).

Defendant first, implausibly, argues that there was no contract. Yet, here, there was an

offer by LOVO to hire professional voice-over actors to create and deliver recordings,

clarifications as to deliverables, acceptances by Plaintiffs under certain terms, delivery

of the recordings, and payments.

Lehrman and Sage each had a contract with LOVO. They agreed to supply audio

recordings to LOVO, with certain explicit caveats, for payment. FAC ¶275. All of the

terms of the contract with Lehrman are clear: LOVO contracted for voice recordings for

research purposes or test scripts for radio ads; and the payment terms were provided in

the job requests. It is alleged that Lehrman accepted the job inquiry, and there is an

allegation that he was paid. Accordingly, the existence of a contract is properly alleged.

*Id.* ¶¶48–54.

For the same reasons, there is a binding contract between Sage and LOVO:

LOVO offered the job, Sage accepted the job, the agreed amount was paid, and there

was mutual agreement that Sage would record test scripts for radio ads, that would not

be disclosed externally and would not require any additional rights. *Id.* ¶¶76–80.

"[C]ourts have generally recognized that relatively simple allegations will suffice to

plead a breach of contract claim even post-Twombly and Iqbal." *Laufer Grp. Int'l, Ltd. v.*

*Standard Furniture Mfg. Co., LLC*, 2020 WL 4735123, at *5 (S.D.N.Y. Aug. 14, 2020)

(Oetken, J.).

That the offers were made on a freelance marketplace modernizes but does not

complicate the contracts at issue. For example, in *Davis v. Dynata, LLC*, the court

found that a market research company, which had an agreement with and hosted jobs

through an online application, had agreements with each of the call center agents. The

court acknowledged that the company made promises to pay by posting shifts with set

rates, and the offers were accepted by accepting the shifts—that the contracts were

made on an "app" was irrelevant. 2023 WL 6216809, at *22 (D. Conn. Sept. 25, 2023).

In other words, [t]hese are the makings of a contract, at least for pleading purposes."

*Id.* at 23.

There is no requirement to allege that a contract was a written agreement or an

oral agreement. *Fort Prods., Inc v. Men's Med. Clinic, LLC,* 2016 WL 797577, at *2

(S.D.N.Y. Feb. 23, 2016). Electronic messages are sufficient to constitute a binding

contract. *See, e.g.,* *Nusbaum v. E-Lo Sportswear LLC,* 2017 WL 5991787, at *4

(S.D.N.Y. Dec. 1, 2017).

Contrary to Defendant's contention, Def. Mot. at 27, there is no requirement that

the identity of a party with whom one is contracting is known; the party can be

anonymous or use an alias. *Adson5th, Inc. v. Bluefin Media, Inc.,* 2017 WL 2984552, at

*9 (W.D.N.Y. July 13, 2017) ("[A] corporation may enter into a binding contract using

an assumed or trade name . . . ."); 79 N.Y. Jurisprudence 2d Names § 52 ("Because the

name of a person serves simply as a means of identification, a party may contract under

a fictitious or assumed name . . . . It is the identity of the individual that is regarded.").

Defendant argues that any discussion of the usage of the recordings was outside

the contract. Def. Mot. at 27. To the contrary, these were terms that were important to

Plaintiffs, were incorporated in the agreement, and Plaintiffs did not perform until

LOVO agreed to these terms. Parties to a contract "may modify a contract by another

agreement, by course of performance, or by conduct amounting to waiver or estoppel," which requires "manifestation of mutual assent." *Kaplan v. Old Mut. PLC*, 526 F. App'x 70, 72 (2d Cir. 2013). Plaintiffs gave their conditions, and LOVO unequivocally agreed.

Defendant also argues that the contract is subject to the Statute of Frauds because the use was not to be performed within a year of the making of the contract Def. Mot. at 27–28. But the one-year term does not apply to the *use* of the recordings, but rather the *delivery* of the recordings. Even if the one-year term applied to Defendant's *use* of the recordings, the statute of frauds only applies to a contract which, "[b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime." N.Y. Gen. Oblig. Law § 5-701 (McKinney). That is not the case here, where the agreement (both provision of recordings and use thereof) was capable of being completed within a year. If an agreement "can fairly and reasonably be interpreted as being capable of being performed within a year, § 5–701(a)(1) does not act as a bar." *Rosbach v. Indus. Trading Co.*, 81 F. Supp. 2d 522, 526 (S.D.N.Y. 2000); *see also Cleveland Wrecking Co. v. Hercules Const. Corp.*, 23 F. Supp. 2d 287, 300 (E.D.N.Y. 1998) ("As an initial consideration, the law is clear that for a contract to fall within the Statute of Frauds, performance of the contract within one year must be virtually impossible." ), *aff'd sub nom. Cleveland Wrecking Co. v. Hercules Const. Corp.*, 198 F.3d 233 (2d Cir. 1999).

## IX.  Plaintiffs adequately state their copyright infringement claims.

Defendant used recordings by Ms. Sage in investor presentations, at a highly visible tech conference, and on its YouTube page, without permission. *See* 17 U.S.C. § 501(b) (providing a civil action against any person who violates any "exclusive right"

of the copyright owner). Plaintiffs also allege infringement since Defendant used their voices to train its voice generator, without permission. Defendant also induced, allowed, and encouraged other third parties to infringe on Plaintiffs' recordings.

### a) Plaintiffs meet the elements required to plead copyright infringement.

A *prima facie* claim of copyright infringement requires a showing of "(1) ownership of a valid copyright in the item and (2) unauthorized copying." *Strike 3 Holdings, LLC v. Doe*, 2018 WL 3756453, at *2 (S.D.N.Y. July 19, 2018). "Unauthorized copying is demonstrated by (1) actual copying of the item and (2) that the copy was substantially similar to the original copyrighted work." *Int'l Swaps & Derivatives Ass'n, Inc. v. Socratek, L.L.C.*, 712 F. Supp. 2d 96, 102 (S.D.N.Y. 2010).

First, courts in this circuit employ a "total concept and feel" analysis when examining whether a work is copied. *See Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131–34 (2d Cir. 2003) ("[T]he defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work. . .are considered in relation to one another.").

Plaintiffs' copyright claims plainly set out the copyrighted works at issue—the recordings made by Plaintiffs Lehrman and Sage and delivered to LOVO in 2019 and 2020. Defendant insists that Plaintiffs have not identified which recordings are infringed, Def. Mot. at 28, but the Complaint identifies the works in detail, and Defendant's brief admits as much. *See* FAC ¶¶54, 80, 86, 286, 299. Defendant even acknowledges that one of Plaintiff Sage's copyrighted recordings was used in an investor presentation posted to YouTube. Def. Mot. at 1, 33.

31

Second, the sound files produced by Genny constitute unauthorized copying. Defendant cites a U.S. Copyright Office report on AI to support its contention that there is no plausible allegation of infringement. Def. Mot. at 34. But Defendant fails to include the sentence directly above the one it cherry picks. It reads, "Digital replicas that are *produced by ingesting copies of preexisting copyrighted works, or by altering them*—such as superimposing someone's face onto an audiovisual work or *simulating their voice* singing the lyrics of a musical work—may implicate those exclusive rights." *Copyright and Artificial Intelligence, Part 1: Digital Replicas*, U.S. Copyright Office (July 2024), https://copyright.gov/ai/Copyright-and-Artificial-Intelligence-Part-1-Digital-Replicas-Report.pdf (hereinafter "Copyright Report"). As the Copyright Report warns, "generative AI tools that make it easy to create digital replicas of individuals' . . . voices has . . . raised concerns about the harms that can be inflicted by unauthorized uses." *Id.*

In *International Swaps*, the defendant argued that it "does not sell an exact copy" of the work. 712 F. Supp. 2d at 102. Here, too, Defendant argues it sells a "clone" of Plaintiffs' sound. Def. Mot. at 34. But a refined analysis of the copying is not required at this stage and "the substantial similarity test has been met for purposes of initial pleading." 712 F. Supp. 2d at 102. The Kyle Snow and Sally Coleman recordings are "substantially similar" to the recordings and Defendant has infringed Plaintiff Sage and Lehrman's copyrights.

To plead contributory infringement, Plaintiffs must allege that Defendant "induce[d], cause[d], or materially contribut[ed] to" another's infringing activity. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010). Defendant explicitly advertised

the Genny product and induced its customers to infringe Plaintiffs' copyright,

materially contributing to the infringement. FAC ¶¶104–09; 125; 141–42; 150.

### b) Defendant fails to justify its infringing activity.

Defendant's arguments are unavailing. First, Defendant states that it had the

"right to use" Plaintiffs' recordings, quoting the Fiverr Terms of Service and noting that

for "Voice-Over Gigs" Defendant purchased "basic rights." Def. Mot. at 28–29. But

Defendant neglects to include the next line in the Terms of Service: "If you intend to

use the Voice Over to *promote a product and/or service* . . . you will need to purchase

the Commercial Rights 'Buy-Out' package." Def. Mot. Ex. 4 at 14; Ex. 5 at 13 (emphasis

added). Use in paid marketing and commercials requires the purchase of the "Full

Broadcast Rights (Buy-Out)" package. Defendant never purchased either package.[5]

Defendant next points to the fair use doctrine to absolve itself of its

infringement. Def. Mot. at 33–34. The fair use doctrine has been coined an "equitable

rule of reason" that balances various contextual factors to determine whether an

unauthorized use of a copyrighted work is "fair." *Sony Corp. v. Universal City Studios,*

*Inc.*, 464 U.S. 417, 448 (1984). But Defendant cannot steal Plaintiffs' recordings for

commercial gain and appeal to equitable principles.

Defendant nonetheless fails the first element of the fair use test. *See Andy*

*Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 532 (2023) (finding

that "where an original work and copying use share the same or highly similar

purposes, or where wide dissemination of a secondary work would otherwise run the

---

[5] Moreover, purchasing a Voice Over Gig affords basic usage rights, but not the copyright in the audio. Even the Commercial and Broadcast Rights packages, which are necessary for any profit-making endeavor, do not transfer ownership.

risk of substitution for the original or licensed derivatives of it," the first element is likely to weigh against fair use).

Defendant also argues that the statute of limitations has run. Def. Mot. at 30. But the claim accrues when the holder discovers or should have discovered the infringement. *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014). Plaintiffs discovered the infringement on July 11, 2023, when they heard the June 20, 2023 episode of the 'Deadline Strike Talk' podcast. FAC ¶63. There is no reasonable argument that they could or should have discovered the infringement earlier.

Plaintiffs' registration of their works after filing the original complaint does not preclude a finding of infringement. *Hardwell v. Parker*, 2023 WL 4155402, at *2 (C.D. Cal. May 10, 2023) (plaintiffs can "refile an action after satisfying . . . registration requirement."); *VHT, Inc. v. Zillow Grp., Inc.*, 461 F. Supp. 3d 1025, 1039 (W.D. Wash. 2020), *opinion clarified*, 2021 WL 913034 (W.D. Wash. Mar. 10, 2021), *and aff'd*, 69 F.4th 983 (9th Cir. 2023) (denying dismissal since plaintiff subsequently obtained registrations and dismissal would waste judicial resources.).

Defendant argues copyright claims preempt the state law claims. Def. Mot. at 28. But the Copyright Act "does not preempt state laws prohibiting unauthorized voice replicas." Copyright Report at 52. As the U.S. Copyright Office notes, "nothing indicates that Congress intended . . . to deprive individuals of rights in their unique voices, whether under state right of publicity laws or a new federal statute." *Id*.

## I.    The unfair competition claim is properly alleged.

"In order to state a claim of unfair competition under New York law, a plaintiff must allege that the defendant misappropriated the plaintiffs' labors, skills,

expenditures, or good will and displayed some element of bad faith in doing so." *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 816 (S.D.N.Y. 2008).

Contrary to Defendant's contentions, Plaintiffs' unfair competition claims should survive for the same reasons as their claims under § 43(a) of the Lanham Act and GBL §§ 349, 350. Plaintiffs have alleged bad faith and an intent to create confusion. Even though the clones are "marketed under different names," there is no reason to seek out voice actors if there was no intention to create confusion with their actual voices. Moreover, there has been actual confusion in the market. FAC ¶¶70–71; 85–86; 101–03.

## CONCLUSION

For the foregoing reasons, Plaintiffs have adequately pleaded claims on behalf of Plaintiffs and the Voice Actor Class in the Complaint. Accordingly, Defendant's Motion should be denied.[6]

Dated: New York, New York
     January 10, 2025

                                  Respectfully submitted,

                                    By: */s/ Steve Cohen*
                                    Steve Cohen
                                    Anna Menkova
                                    **POLLOCK COHEN LLP**
                                    111 Broadway, Suite 1804
                                    New York, NY 10006
                                    Tel: (212) 337-5361
                                    SCohen@pollockcohen.com

                                    *Attorneys for Plaintiffs and the Proposed Classes*

---

[6] To the extent the Court finds any of Plaintiffs' allegations incomplete or inadequate, Plaintiffs request leave to replead pursuant to Federal Rule of Civil Procedure 15(a) to remedy any insufficiency the Court identified. Fed. R. Civ. P. (providing that leave to amend a complaint "shall be freely given when justice so requires."). Plaintiffs concede that "John Doe" does not exist, and so Causes of Action Four, Five, and Nine, should be dismissed. Plaintiffs request leave to amend if such a plaintiff arises.