# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL LEHRMAN and LINNEA SAGE, on behalf of themselves and all others similarly situated, and JOHN DOE and others similarly situated,<br><br>　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>LOVO, INC.,<br><br>Defendant. | Index No. 1:24-cv-03770<br><br>**UNSWORN DECLARATION OF**<br><br>**TIM FRIEDLANDER** |

Tim Friedlander, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1. I make this unsworn declaration in support of Plaintiffs' First Amended Complaint.

2. I am a resident of California.

3. I am an award-winning voice actor. I have appeared in such series as *Hunter x Hunter*, *One Punch Man*, and *Ace Combat 7*. I also own and operate a prominent sound recording studio called soundbox. I co-founded the National Association of Voice Actors (NAVA) in 2022, and currently serve as president.

4. After listening to samples of the human and synthesized voices of both Paul and Linnea, it is my opinion that the voices offered by LOVO are cloned versions and based on Paul and Linnea's real human voices.

5. When listening to the sample files, I focused on pitch, tone, timbre, and phrasing.

6. I found both Paul and Linnea to have unique, identifiable voices that I would be able to recognize from a piece of recorded audio.

7. For Paul, he has a unique placement of his recorded audio that is identifiable by where the voice sits in his mask. In Paul's instance, the placement of his voice is somewhat high in his

mask and seems to resonate low in his nasal cavities. This produces a slight "buzzy" quality to the timbre of his voice.

8. Additionally, he has a very slight vocal/speech affect that sounds as if his tongue is larger in the back than it is in front. He also has a specific pitch range that he speaks in that is very narrow and controlled.

9. All of these vocal characteristics that I heard in his human voice I also heard in the synthetic voices.

10. For Linnea, the samples played in the video demonstration by LOVO were the identical audio files that were played by Linnea in her example. This was a one-to-one match of audio that she recorded as human that was demonstrated to have been converted in a synthetic voice.

11. The negative impacts on both of them, in regards to their future business and clients, is substantial. Many clients request or require exclusivity for the use of an actor's voice. Exclusivity comes with a higher rate for the actor and if there is a cloned voice on the market that removes the ability to offer a client exclusivity. That will cause loss of money for the actor. Additionally, many clients may already have exclusivity contracts in place for these actors and, through no fault of their own, Paul and Linnea may be in violation of these agreements. At the very least, this poses a threat to their future ability to offer a client exclusivity which may result in them losing out on a job.

12. For many voice actors, the voice becomes inextricably linked to the product or service that they are voicing for. As a human voice actor, someone can refuse to record a script if they are presented with something they do not feel comfortable reading or that is different from the project they were hired to do. A synthetic voice cannot refuse to read a piece of copy. This will lead to a potential conflict between brands and clients as well as reputational harm

to the voice actor if they become the voice of misinformation/disinformation/inflammatory or racist recordings.

13. One more area of concern is brand dilution. Many voice actors have a shelf life. Meaning they can only work in a certain genre or area of voice over before their voice over saturates the market. At this point, it becomes more difficult to find and book work. With a synthetic cloned voice on the market, the over saturation could occur in a much shorter period of time thereby causing financial harm to the human voice actor who can no longer work in that genre.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on (date): __9.25.2024__

Signature: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL LEHRMAN and LINNEA SAGE, on behalf of themselves and all others similarly situated, and JOHN DOE and others similarly situated,

    Plaintiffs,

v.

LOVO, INC.,

Defendant.

Index No. 1:24-cv-03770

**UNSWORN DECLARATION OF**

**ED LEWIS**

Ed Lewis, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1. I make this unsworn declaration in support of Plaintiffs' First Amended Complaint.

2. I am a resident of California.

3. I am an Emmy-nominated professional voice-over director, casting director, and former voice-over agent with an extensive career across animation, commercials, and television. I have directed or cast projects for studios like Disney, Pixar, and Nickelodeon, and have helmed over 500 commercials for top-tier brands such as Coca-Cola, Lexus, and Google. I have done casting for numerous television shows and series including *The Wire*, *Bones*, and *House*.

4. In my profession, I regularly work with actors, producers, directors, and advertising creative people. My job, depending on the specific assignment, is either to recommend the most appropriate actors for a project, or help the actor deliver the desired performance. During my career I have worked on hundreds of projects and have met, auditioned, listened to, or watched the "reels" of thousands of actors.

5. Being able to distinguish the voices of actors – their tone, timbre, pitch, range, volume, intonation, accent, etc. – is a critical element of my profession.

6. Over the last month, I have talked with Linnea – hearing her voice "live" – and listened to both her recorded voice in news interviews and to multiple examples of the LOVO character Sally Coleman.

7. Even to my ear, who knows Linnea's voice quite well, the two voices are completely indistinguishable.

8. There is a major risk of people confusing the AI voice for the real voice. An actor's voice is who they are, it is their likeness, it is their brand. An actor should have 100% control over what their voice says and does not say.

9. This AI allows a producer to put any words in the actor's mouth as they want. Those words could put an actor in breach of contract for other projects. If an actor were to negotiate exclusivity for a product, let's say Chevrolet, then that actor is contractually barred from doing any competing products such as Ford or Toyota. This AI allows the producer to do commercials for other products that would conflict with a contract he/she signed.

10. In addition to the contractual issues, the actor's voice could be used to voice offensive statements or to perform vocal roles they might not be interested in for moral or ethical reasons.

11. If confusion occurs, it waters down the actor's product. It could make the voice ubiquitous, which would be a negative for the real actor because producers may choose not to hire the actor because their voice is not unique or special.

12. If the AI is out there advertising Coca-Cola, it might be hard for the real life actor to book a job with Pepsi.

13. Most clients – and the vast majority of the general public or people creating occasional voice-over projects – would not be able to distinguish between Ms. Sage's actual voice and LOVO's cloned version. People would undoubtedly be confused if confronted with the real version and the cloned version.

14. LOVO's use and sale of Ms. Sage's cloned voice – without her knowledge or approval – has and will cause her to lose jobs and income. It will be easier for clients to use other actors whose voices were not cloned and who have retained control over their brand.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on (date): 09-22-24

Signature: [signature]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL LEHRMAN and LINNEA SAGE, on behalf of themselves and all others similarly situated, and JOHN DOE and others similarly situated,<br><br>               Plaintiffs,<br><br>  v.<br><br>LOVO, INC.,<br><br>Defendant. | Index No. 1:24-cv-03770<br><br>**UNSWORN DECLARATION OF**<br><br>**Lauren Charkow** |

Lauren Charkow, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1. I make this unsworn declaration in support of Plaintiffs' First Amended Complaint.

2. I am a resident of New York.

3. I am a professional casting director. I have done this work for more than a dozen years. I have cast high-profile projects for brands such as Visa, Nike, and United Airlines, among others.

4. In my profession, I work with actors, producers, creative directors, advertising agencies, and clients on a daily basis. My job is to recommend the most appropriate actors for each project. During my career I have worked on scores of projects and have met, auditioned, listened to, or watched the "reels" of thousands of actors.

5. Being able to distinguish the voices of actors – their tone, timbre, pitch, range, volume, intonation, accent, etc. – is a critical element of my profession.

6. Over the last month, I have listened to both the live and recorded voices of the Plaintiffs Paul Lehrman and Linnea Sage; and to multiple examples of recordings of the LOVO characters Kyle Snow and Sally Coleman.

7. With respect to Mr. Lehrman's voice and the Kyle Snow character, I can state with a reasonable degree of professional confidence, that the two voices are remarkably similar. The similarity is striking.

8. Most clients – and the vast majority of the general public or people creating occasional voice-over projects – would not be able to distinguish between Mr. Lehrman's actual voice and LOVO's cloned version. People would undoubtedly be confused if confronted with the real version and the cloned version.

9. With respect to Ms. Sage's voice and the Sally Coleman character, I can state with a reasonable degree of professional confidence that the two voices are remarkably similar. The similarity is striking.

10. Most clients – and the vast majority of the general public or people creating occasional voice-over projects – would not be able to distinguish between Ms. Sage's actual voice and LOVO's cloned version. People would undoubtedly be confused if confronted with the real version and the cloned version.

11. As a professional casting director, I am familiar with the requirements clients typically establish before hiring a voice actor – in addition to the nature of the voice itself and the appropriateness of that voice to the project at hand.

12. Clients regularly want to know what other work the actor has done. This includes whether the actor has done work for competing companies in the same product or service category. It also includes work for products or services that the client may find offensive or might not want to be associated with. Actors typically have to disclose to prospective

clients previous clients and often have to sign non-compete or category-exclusivity agreements.

13. Because Mr. Lehrman and Ms. Sage do not know to whom – or for what projects – LOVO licensed the Kyle Snow and Sally Coleman voices, Mr. Lehrman and Ms. Sage have been significantly harmed professionally. Neither Mr. Lehrman nor Ms. Sage can honestly or completely tell a prospective client where and how their voices have been used. That inability will cause clients to lose trust in Mr. Lehrman and Ms. Sage.

14. LOVO's licensing of Mr. Lehrman's and Ms. Sage's cloned voices – without their knowledge or approval – has and will cause them to lose jobs and income. It will be easier for clients to use other actors whose voices were not cloned and who have retained control over their brand.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on (date): 9/24/24

Signature: *R Charkow*