UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL LEHRMAN and LINNEA SAGE, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>   v.<br><br>LOVO, INC.,<br><br>     Defendant. | Case No.: 1:24-cv-03770<br><br>Hon. J. Paul Oetken |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS THE SIXTH CAUSE OF ACTION FROM
THE SECOND AMENDED CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.     Plaintiffs Fail to Make Adequate Information and Belief Allegations ......................... 2

    II.    Plaintiffs' Training Claim is Conclusory ..................................................................... 4

    III.   Converting Sound to a Spectrograph Is Not Actionable Copying ............................... 4

    IV.   The Training Claim is Barred by The Output Dismissal .............................................. 6

    V.    Plaintiffs Have Not Alleged Substantial Similarity and More than *De Minimis* Copying ........................................................................................................................ 7

    VI.   The Alleged "Copying" is a Permissible Fair Use ....................................................... 8

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABS Ent. Inc. v. CBS Corp.*,
  908 F.3d 405 (9th Cir. 2018) ...................................................................................................6

*Agee v. Paramount Commc'ns, Inc.*,
  59 F.3d 317 (2d Cir. 1995)......................................................................................................6

*Bartz v. Anthropic PBC*
  787 F. Supp. 3d 1007 (N.D. Cal. 2025) .......................................................................9, 10, 11

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006).................................................................................................9, 10

*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018)....................................................................................................2

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
  206 F. Supp. 3d 869 (S.D.N.Y. 2016).....................................................................................3

*Kadrey v. Meta Platforms, Inc.*,
  788 F. Supp. 3d 1026 (N.D. Cal. 2025) ................................................................................11

*Kelley v. Morning Bee, Inc.*,
  2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023).........................................................................9

*Lehrman v. Lovo, Inc.*,
  790 F. Supp. 3d 348 (S.D.N.Y. 2025)............................................................................ *passim*

*Lopez v. Bonanza.com, Inc.*,
  2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019).........................................................................3

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010)......................................................................................................6

*Ratermann v. Pierre Fabre USA, Inc.*,
  651 F. Supp. 3d 657 (S.D.N.Y. 2023).....................................................................................2

*Richards v. Warner Music Group*,
  2024 WL 4307994 (S.D.N.Y. Sept. 26, 2024).........................................................................3

*Santos v. Kimmel*,
  745 F. Supp. 3d 153 (S.D.N.Y. 2024), *aff'd,* 154 F. 4th 30 (2d Cir. 2025) ........................8, 9

*Schwartzwald v. Oath Inc.*,
  2020 WL 5441291 (S.D.N.Y. Sept. 10, 2020)..........................................................................9

*Sony Computer Ent., Inc. v. Connectix Corp.*,
  203 F.3d 596 (9th Cir. 2000) ...............................................................................................10

*Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*,
  765 F. Supp. 3d 382 (D. Del. 2025), appeal docketed, No. 25-8018 (3d Cir.
  Apr. 14, 2025) .....................................................................................................................10

*UMG Recordings, Inc. v. MP3.Com, Inc.*,
  92 F. Supp. 2d 349 (S.D.N.Y. 2000)................................................................................6, 10

*VMG Salsoul, LLC v. Ciccone*,
  824 F.3d 871 (9th Cir. 2016) .................................................................................................6

*White v. W. Pub. Corp.*,
  29 F. Supp. 3d 396 (S.D.N.Y. 2014)....................................................................................10

**Statutes**

17 U.S.C. § 106..............................................................................................................................4

17 U.S.C. § 114(b) .........................................................................................................................5

Defendant LOVO, INC. ("Defendant" or "Lovo") submits this Reply Memorandum of Law in support of Defendant's Motion to Dismiss ("Motion") the Sixth Cause of Action From the Second Amended Class Action Complaint ("Cplt." or "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **INTRODUCTION**

Plaintiffs have failed to adequately replead their "training-based infringement claims" (the "Training Claim"), which remains conclusory, speculative, and factually unmoored from generally available information. The Court still cannot "ascertain or reasonably infer which exclusive rights Lovo allegedly infringed, or how." *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 377 (S.D.N.Y. 2025). Plaintiffs in their unsigned Opposition to the Motion ("Opposition" or "Opp.") use vague and shifting arguments which fail to explain how their word salad of various conclusory terms found in the copyright statute or related to artificial intelligence adequately state a claim.

Plaintiffs do not address most of Defendant's arguments or cases. Instead, they argue the bare additional allegations that Lovo purportedly "actually copied" the copyrighted sound recordings "hundreds of thousands of times" as part of the alleged training process is enough. But, while repeating this mantra seven times in the Opposition, it is not stated clearly even once in the Complaint (alleging only certain processes "involves duplicating those sound recordings tens *or* hundreds of thousands of times" (Cplt. ¶121)). The question for this Motion is what is alleged in the Complaint not what Plaintiffs state in the Opposition. Even if alleged, those statements are, at best, conclusory and not supported by generally available information including the two blog posts cited in the Complaint ("Complaint Blog Posts").

Plaintiffs further argue what they call "copying" is actually the creation of a spectrograph: a chart or graph depicting "energy of different frequencies" which change "over time mapped to a

particular scale" and which records raw "individual soundwave[]" data in "their corresponding phoneme, the smallest unit of a sound in a language". Cplt. ¶121. This is not copying "actual sounds" and not prohibited for a sound recording. It is also implausible that Lovo recreated any purported spectrogram of the same sound recordings more than once (and certainly not 100,000+ times).

While this Court dismissed with prejudice the "AI outputs" infringement claim, *Lovo,* 790 F. Supp. 3d at 379 (the "Output Dismissal"), Plaintiffs have tried to reassert such a claim as the Training Claim (output including that created from the spectrographs) arguing that the Court's decision would not reach "intermediate" output. Opp. 13. But, this Court's dismissal does not exclude "intermediate" output.

Plaintiffs' arguments plainly fail as detailed herein and in Defendant's Memorandum of Law ("MOL"). The Training Claim should be dismissed with prejudice.

## ARGUMENT

### I.    Plaintiffs Fail to Make Adequate Information and Belief Allegations

The Court dismissed Plaintiffs' initial training claim for not providing sufficient detail and suggested "it may be possible" for Plaintiffs to replead using "information-and-belief pleading". *Lovo,* 790 F. Supp. 3d at 377. However, the Court was not suggesting Plaintiffs plead conclusory unsubstantiated suspicions, without corroboration, preceded by the words "upon information and belief"; even when pleading "upon information and belief", standards exist. *See* MOL 12-14; *See, e.g., Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 671 (S.D.N.Y. 2023) ("cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.") (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018)). Yet, Plaintiffs have not met that standard.

Plaintiffs neither respond to these arguments or cases in the MOL (Opp. 8-11). Plaintiffs

2

do not explain how their allegations are based upon the Complaint Blog Posts or any publicly available information. They do not address the "information and belief" standard or explain why inconsistent alternative factual pleading (GAN or likelihood training) is permitted. They provide only conclusory statements that the original sound recording was copied during training. Failure to address an issue in response to a motion to dismiss is "a concession or waiver of the argument." *Richards v. Warner Music Group,* 2024 WL 4307994, at *4 (S.D.N.Y. Sept. 26, 2024) (dismissing claim).

Instead, Plaintiffs declare they "followed the Court's instruction" and alleged "actual copying" of the copyrighted works, "hundreds of thousands of times". Opp. 11. This is not accurate, but even if accurate, it is insufficient. First, simply alleging that something was copied hundreds of thousands of times is paradigmatically conclusory. *See, e.g., Lopez v. Bonanza.com, Inc.,* 2019 WL 5199431, at *23 (S.D.N.Y. Sept. 30, 2019) (allegations of copying were nothing more than "legal conclusions"); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 895 (S.D.N.Y. 2016) (allegations of making "unauthorized copies" of "all or significant portions" of copyrighted work are conclusory). Second, the phrase "actual[ly] copying" does not appear in the Complaint. Nor is there a specific claim Lovo copied any or all of the copyrighted recordings "hundreds of thousands of times". Plaintiffs cite paragraphs 124 and 126, which speak generally about two processes that allegedly involve in some fashion "duplicating those sound recordings tens or hundreds of thousands of times". This does not allege Lovo itself copied anything. Third, there is no factual basis supporting any such statement (even generally) in the Complaint Blog Posts or any publicly available information. There certainly is nothing indicating Lovo did this. Plaintiffs simply made it up. Fourth, any alleged "duplicating" or "copying" is the conversion into spectrographs which, as explained *infra* 4-6 (and in the MOL), is not actionable

3

"copying" (any audio created from this would be a non-actionable output). The "information-and-belief" pleading is insufficient; the Training Claim should be dismissed.

## II. Plaintiffs' Training Claim is Conclusory

Even if crediting the information and belief allegations, the Training Claim remains conclusory because Plaintiffs do not allege the type of copyright at issue, the protectible material purportedly improperly infringed/copied, and which Section 106 rights are being violated. MOL 15. Plaintiffs do not respond to these arguments or the supporting cases.

Plaintiffs argue they alleged both "direct" infringement and creation of a "derivative", citing paragraphs 119-134, 249-262. Opp. 8. But, the Complaint shows otherwise; those paragraphs do not even conclusorily mention the word derivative or direct copying or identify any Section 106 right. These paragraphs certainly provide no factual explanation or non-conclusory allegation of either direct copying (that "recaptured the actual sounds fixed in the recordings"), direct distribution, or derivative creation ("derivative work in which the actual sounds fixed in the sound recording" are arranged). There is no non-conclusory allegation of capturing actual sounds (only converting to spectrographs and phonemes) nor do the Complaint Blog Posts describe processes which claim any such copying. Even if there were any allegation of purported derivative works, they are barred by the Output Dismissal (*see infra* 6-7). Nor does the Complaint discuss what protectible (i.e., not functional) aspects were purportedly copied. The Training Claim is conclusory and should be dismissed.

## III. Converting Sound to a Spectrograph Is Not Actionable Copying

The Training Claim fails because the Complaint pleads all alleged copying involved the conversion of Plaintiffs' sound recordings into what Plaintiffs call "spectrogram representations" (Cplt. ¶¶121, 122, 125, 129), alleged as "visual representations of audio that show how the energy of different frequencies changes over time mapped to a particular scale designed to match how

4

humans perceive sound" (*id.* ¶121). Converting actual sounds to graphs/charts is not a copying of "actual sounds fixed in the sound recordings" constituting infringement. Visual or graphic representations are not "actual sounds" nor "fixation" of sounds themselves. MOL 16.

Section 114(b) explains that "exclusive rights of the owner of copyright in a sound recording... do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording." 17 U.S.C. § 114(b). Thus, any subsequent, different sounds (or charts/graphs) independently generated from data on a chart/graph is not the "actual sound" originally "fixed" in the sound recordings. This Court already found actual audio recordings that "mimic attributes of voices like "pitch, loudness, tone, timbre, cadence, inflection, breathiness, roughness, strain, jitter, (variation in pitch), shimmer (variation in amplitude), spectral tilt, and overall intelligibility, and other qualities" are not an "identical fixations of sound within the meaning of the Copyright Act." *See Lovo*, 790 F. Supp. 3d at 378, n.21. MOL 16-17. This then is certainly true for charts.

Plaintiffs respond that converting a recording into a spectrograph is comparable to digitizing analog recordings or converting WAV files into MP3s, a change of audio medium or format. Op. 12. This is wrong. A spectrograph as alleged (and as in other sources), or any chart/graph, is not an audio medium or format; visual representations are not actual sounds. MP3 is an audio format in which actual sounds persist. Even if Plaintiffs alleged a spectrograph could be used to re-engineer the exact same recording (they have not) that still would not be a fixation of actual sounds. As Plaintiffs allege, the process breaks down sounds into a soundwave for a "corresponding phoneme, the smallest unit of a sound in language". Cplt. ¶121. The datapoints describing the "smallest unit" of a sound are not the actual sounds themselves.

5

No case cited by Plaintiffs supports them or deals with converting copyrighted sound recordings into visual or chart representations. Two of the cases do not deal with direct copying of sound recordings at all. In *Agee v. Paramount Commc'ns, Inc.*, 59 F.3d 317, 322 (2d Cir. 1995), defendant admitted actual copying via the "use of Agee's sound recordings… with visual images"; namely, actual copying of actual sounds from a sound recording into an audiovisual work. This is unrelated to converting a recording into a spectrograph. *See also UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 350 (S.D.N.Y. 2000) ("re-playing" actual sounds of the recordings in another audio format, MP3, constituted infringement); *ABS Ent. Inc. v. CBS Corp.*, 908 F.3d 405, 418 (9th Cir. 2018) (conversion from audio analog to audio digital format, standing alone, did not constitute a protectible original derivative). Plaintiffs' allegations based upon creation of a graph/chart breaking down sound recordings into phonemes do not constitute prohibited copying.

**IV.    The Training Claim is Barred by The Output Dismissal**

The Training Claim is essentially that Lovo converted sound recordings to spectrographs (at the phoneme level) and used those spectrographs to create new phoneme-based outputs, all via either a GAN or "likelihood" process to train its AI. However, this "copying", creating new output, even if properly alleged in a non-conclusory fashion, is barred by the Output Dismissal (MOL 17-19) as the Court held that characteristics like "pitch, pacing, accent, and tone" are unprotectible "functional elements" of a recording and protection does not apply to "imperfect mimicry" or "voice qua voice". *Lovo*, 790 F. Supp. 3d. at 378-379; *see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 68 (2d Cir. 2010) (citation omitted); *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 883 (9th Cir. 2016) (no infringement "even if the mimicking is very well done, so long as there was no actual copying.").

Plaintiffs now argue (a) spectrographic representations are not truly outputs; and (b) the

6

Output Dismissal does not bar undefined "intermediate" outputs. Opp. 13. Plaintiffs are wrong. First, the spectrograph (the audiovisual representation of the phonemes of the original recording) is not a copy of actual sounds (*supra* 4-6). Second, as alleged, the creation of any new sound from a spectrograph (even an intermediate sound used only to train) is an output and it is not a reproduction of the actual sound in the sound recording. Third, the Court explicitly held that output claims "are barred by the relevant statutory language, which excludes from protection the 'independent fixation of other sounds' to 'imitate or simulate' those in the protected recording." *Lovo*, 790 F. Supp. 3d at 378. Here, any alleged "intermediate" audio output is, at most, an imitation of a sound recording (if similar at all) occurring via phonemes (smallest unit of sound) capturing characteristics like "pitch, pacing, accent, and tone". These are unprotectible "functional elements", *id.*, but which Plaintiffs maintain were "learned" as the "particular aspects" of Plaintiffs' voices (Cplt. ¶131). This "intermediate output", if any, is allegedly achieved via spectrographic conversion, using spectrograms to create "nascent clones" and other outputs (based on phonemes, or other attributes from the spectrogram), where the only things captured by the spectrogram are the non-protectible components of sound. Thus, the Training Claim is the "output" claim in another guise and should be dismissed.

### V. Plaintiffs Have Not Alleged Substantial Similarity and More than *De Minimis* Copying

Plaintiffs have not alleged substantial similarity as (a) Plaintiffs have not identified any protected material in the sound recordings and certainly not such material "standing alone" (*Lovo*, 790 F. Supp. 3d at 376)(citation omitted); and (b) Plaintiffs have alleged copying via spectrograph, itself only a visual/graphic representation of elements this Court has deemed not protected. MOL 19-21. Plaintiffs address substantial similarity in three lines ignoring these arguments and cited cases; Plaintiffs claim simply that paragraphs 122-123 allege unidentified copies were "exact

7

duplicates of the Copyrighted works". Opp. 9. However, those paragraphs do not contain this allegation; the closest Plaintiffs come is when they state Lovo "convert[ed] the Copyrighted Works into spectrogram representations that duplicated every aspect of them". This is only about spectrographs and does not even claim any exact duplicate ("every aspect" does not equal an exact duplicate). As explained *infra* 6-7, a spectrograph is neither an "exact duplicate" of any actual sound nor does it "recapture" actual sounds "fixed in the recording". There is no adequate allegation of substantial similarity.

Plaintiffs also have not alleged copying of protected material beyond a *de minimis* amount, because the allegations focus on spectrographs and phonemes (the "smallest unit of a sound in language"). MOL 21-22. Plaintiffs again respond in three sentences not addressing the arguments or cases but assert that the allegation of creating a neural network for each plaintiff is more than *de minimis*. Op. 9. This too is wrong. Plaintiffs allege the "neural network incorporates all the phenomes of the recordings of the human voice it was trained on—its pitch, pacing, accent, tone, and expressive choices—and replicates them when prompted." Cplt. ¶127. These attributes copied into the neural network are not protectible (*infra* 6-7). Moreover, phonemes are the smallest unit of sound and *de minimis* even if protected. Thus, the Training Claim, at most, alleges only *de minimis* copying.

## VI. The Alleged "Copying" is a Permissible Fair Use

Even if Plaintiffs alleged infringing copying, any such alleged copying would clearly constitute permissible fair use as all four factors weigh in favor of fair use. MOL 22-27. Plaintiffs barely address Defendant's arguments and the supporting cases; their own arguments are mistaken and unfounded.

***First,*** fair use dismissals are commonplace. *See, e.g., Santos v. Kimmel*, 745 F. Supp. 3d 153, 162-67 (S.D.N.Y. 2024), *aff'd,* 154 F. 4th 30 (2d Cir. 2025) ("clearly establishes … fair use"

8

"on the face of the complaint"); *Kelley v. Morning Bee, Inc.*, 2023 WL 6276690, at \*11, \*15 (S.D.N.Y. Sept. 26, 2023) (fair use "clearly established by [the] complaint"). The Court itself said "Lovo is free" to raise fair use in a motion after repleading. *Lovo*, 790 F. Supp. 3d at 377, n.19. The allegations on the face of the Complaint together with the determinations already made by the Court clearly establish fair use. *See, e.g., Schwartzwald v. Oath Inc.*, 2020 WL 5441291, at \*3 (S.D.N.Y. Sept. 10, 2020) (dismissing complaint based on fair use).

*Second,* the purpose and character of the alleged training is different from the original purpose for which the sound recordings were created (first factor). Plaintiffs allege they did not intend their sound recordings to be used for training or any commercial purpose. *Lovo*, 790 F. Supp. 3d at 377, n.19. This alone demonstrates a different purpose than training AI. Moreover, the court in *Bartz v. Anthropic PBC,* found that using copyrighted works for training purposes was "quintessentially transformative." 787 F. Supp. 3d 1007, 1022 (N.D. Cal. 2025). Here too the character and purpose of training and the original recordings are different. MOL 23-24.

Plaintiffs ignore this and incredibly claim now that the original recordings were created for commercial use. Opp. 17. But, the heart of Plaintiffs' claims are that they created recordings and gave permission for **non**-commercial use (academic research and test radio ads) and Defendant allegedly used them commercially (including by training AI). Plaintiffs cannot now claim that they created the sound recordings for commercial purposes. Opp. 18. Moreover, the mere fact Plaintiffs sold the recordings to Lovo (*id.*) does not make the purpose commercial when Plaintiffs explicitly allege they did not intend Lovo to use the recordings commercially. *See, e.g.*, Cplt. ¶¶229, 232, 234. Thus, Lovo' alleged use for training its commercial generative AI is "plainly different from the original purpose for which they [the recordings] were created". *Kelley,* 2023 WL 6276690, at \*12 (dismissing claim) (quoting *Bill Graham Archives v. Dorling Kindersley Ltd.*,

9

448 F.3d 605, 609 (2d Cir. 2006)).

Plaintiffs ignore that in *Anthropic*, the Court found that "training" (not creation of output) is "quintessentially transformative", 787 F. Supp. 3d at 1022. This is not mere "wishful thinking" (as Plaintiffs claim) (Op. 18), but rather a direct holding from *Anthropic,* applied to this case – and to which Plaintiffs have no response beyond mischaracterizing it as dealing with "output". *Id.*

The cases cited by Plaintiffs do not help them. *Thomson Reuters* deals with the actual copying of Westlaw headnotes from Westlaw's database to create a non-generative AI product that directly competed with the Westlaw headnotes themselves. *Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, 765 F. Supp. 3d 382, 399 (D. Del. 2025) (Defendant "took the headnotes" to "develop a competing legal research tool"), appeal docketed, No. 25-8018 (3d Cir. Apr. 14, 2025). Here, the alleged copying is to train AI, not to compete with the original sound recordings. Also, the *Anthropic* court emphasized that *Thomson* was limited to **non-generative** AI; for generative AI (like Lovo's), training is "quintessentially transformative". *Anthropic*, 787 F. Supp. 3d at 1022 (citing *White v. W. Pub. Corp.,* 29 F. Supp. 3d 396, 400 (S.D.N.Y. 2014)). *UMG* (decided pre-*Warhol*) deals with a commercial competitor copying actual songs into a different audio format (not training AI) (*see supra* 6) and specifically distinguishes even that circumstance from copying to develop a permissible "new product" (like the consumer output here). 92 F. Supp. 2d at 351 n.2; *cf. Sony Computer Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000) (intermediate copying necessary to reverse engineer constitutes fair use). The first factor strongly favors fair use.

**Third,** the second factor also favors Defendant as the sound recordings are allegedly unpublished, not intended for commercial use, and contain limited, if any, expressive or creative content. MOL 25-26. Plaintiffs do not respond to these arguments, but again assert the purpose

of their sound recordings was "to sell professional sound recordings to consumers". Opp. 19. But, the allegations are that the recordings were bespoke, never to be published, created via a Fiverr private transaction as work-for-hire for a specific buyer (not consumers) for non-commercial use. Cplt. ¶¶229, 232, 234.

*Fourth,* the amount and substantiality of copying (third factor), also favors fair use as the alleged copied material is not substantially similar (phonemes and charts are not words) and nothing allegedly copied for training was accessible to the public. MOL 26. Defendants do not address these arguments but assert they alleged "all of the Copyrighted Works" were "actually" copied "hundreds of thousands of times". Opp. 19. As discussed *supra* 3, there are no such allegations; nor is it plausible that Lovo "copied" the entirety of the exact same recording over and over again. Regardless, "intermediate" copies, if any, for training were not intended for the public.

*Finally,* the fourth factor (market effect) also favors Defendant. There is no impact on any market from any copies used for training and there is no market for the original recordings either. MOL 26-27. Plaintiffs ignore this, and argue the relevant market is not the market for the original recordings, but a purported market for any recording Plaintiffs might ever make (and the comparative market is the market for the consumer Genny/AI output). This is nonsense. The Output Dismissal means the "market" for output cannot be relevant. And no case considers the market for anything other than the actual copyrighted material. The *Kadrey* case does not help Plaintiffs as there the Court found the fourth factor **favored** fair use, and the analyses compared the impact of training the AI to the market for the copied work itself, not others, even in the *dicta* discussing dilution. See *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1036 (N.D. Cal. 2025). The fourth factor also favors fair use (like *Anthropic* and *Kadrey*).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's Motion and dismiss the Training Claim with prejudice.

Dated: October 31, 2025
       New York, New York

                          RIMÔN, P.C.

By:    /s/Michael S. Lazaroff
       Michael S. Lazaroff
       400 Madison Ave, Suite 11D
       New York NY 10017
       646-738-4151
       michael.lazaroff@rimonlaw.com

       David E. Case
       800 Oak Grove Avenue, Suite 250
       Menlo Park, California 94025
       408-512-2239
       david.case@rimonlaw.com

       William W. Bergesch
       100 Jericho Quadrangle, Suite 300
       Jericho, New York 11753
       516-479-6300
       william.bergesch@rimonlaw.com

*Attorneys for Defendant Lovo, Inc.*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum of law complies with Rule 4(C) of the Individual Practices of the Honorable J. Paul Oetken and contains **3,498** words, inclusive of footnotes and endnotes, and exclusive of the caption, table of contents, table of authorities, signature blocks, and this certificate, based on the word count tool of the word processing program used to prepare this document, and otherwise complies with Southern District of New York Local Civil Rule 7.1(c).

                /s/ *Michael S. Lazaroff*
                Michael S. Lazaroff